UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                    )<br>)<br>SEAN MICHAEL MCHUGH,     )<br>)<br>            Defendant.            )<br>_____) | No. 21-MJ-436 (BAH) |

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO REVIEW
MAGISTRATE JUDGE'S DETENTION DECISION**

COMES now the defendant, Sean McHugh, by and through undersigned counsel, and submits this reply to the government's response filed on June 17, 2021.  *See* ECF Dkt. No. 16. The government, in its response, argues (1) the nature and circumstances of the alleged offense support a finding of detention as well as (2) Mr. McHugh's history and characteristics, and (3) that he is a flight risk.  The government still has not shown by clear and convincing evidence that there are no conditions to assure the safety of the community and by a preponderance of the evidence that there are no conditions that would assure his appearance at future proceedings. Based on the reasons discussed below, release with stringent conditions is appropriate.

I.  **The Government's Video Exhibits Do Not Support its Argument that the Nature and Circumstances of the Charged Offense Weigh in Favor of Detention**

The Government provided a series of video exhibits that are short clips of the larger videos.[1]  Through these clips, the government attempts to portray Mr. McHugh as a dangerous

---

[1] These videos were not referenced in the Motion to Review Magistrate Judge's Detention Order because they were not provided to the defense until June 17, 2021.

1

person who lead other protesters and attempted to injure officers. However, the video evidence simply does not support this claim. Firstly, Mr. McHugh was not the only individual chanting to the crowd, and in fact, he was just one out of many people who were chanting common phrases in unison. The videos do not show that any particular person is following Mr. McHugh but rather he is joining the others in chanting towards the crowd using the same phrases that multiple individuals are yelling. The "leadership" role that the government believes he had appears to be an attempt by Mr. McHugh to follow others. There are clearly more aggressive individuals who were at the front of the line using their body language to intimidate and were screaming at the officers. Next, the government argued that Mr. McHugh's alleged use of the bear spray clearly hit the officers. When reviewing the video footage, that does not seem to be clear as there is only one officer who moved out of the way and the distance between them allowed the spray to dissipate. Furthermore, there is no video footage that shows any other attempt to use spray.[2] The government claimed that Mr. McHugh "scuffled" with an officer to get past a barricade, however that is also not the case when reviewing the video footage. The individual in the video appears to have attempted to pull back a barricade and as soon as the officer grabs it away from him, the individual backs off. Lastly, the video footage of the sign being pushed over the barricade does not show Mr. McHugh aggressively pushing the sign and just shows an individual grab the sign for less than a second and then he is pushed away by the crowd. It is notable that the sign was being carried by others in the crowd and moved to the front by people other than Mr. McHugh.

      There is no video footage showing that Mr. McHugh ever stepped foot inside the Capitol

---

[2] The government mentioned in their response that the search warrant of the defendant's residence revealed the bear spray that was allegedly taken to the Capitol. *See* Government Response at pg. 10. Defense counsel did not have any search warrant returns or applications prior to filing its Motion to Review Magistrate Judge's Detention Order.

building. This distinction is important because it shows that all of his alleged words were merely words and that he had no intention of following through with entering the Capitol and stopping an election confirmation vote. In fact, when the government quotes Mr. McHugh in their response allegedly saying, "There is a second amendment behind us, what are you going to do then?" it is notable that Mr. McHugh was not carrying a firearm and no firearm was found in his possession or residence. *See* Government Response at pg. 19. The photograph the government provided showing Mr. McHugh with a firearm appears to be taken while he was at a shooting range and there is absolutely no way to determine when that photograph was taken. *See* Government Response at pg. 21.

      The government cites to a few different cases to support its argument that detention is warranted. First, the government points to *United States v. Chrestman*, where the Court held that detention was appropriate. 2021 WL 765662 (D.D.C. February 26, 2021) (Howell, C.J.). In analyzing the "six guideposts" developed by the Court, it decided that the defendant's conduct favored detention because he assembled with other members of the Proud Boys, threatened to injure police officers at the Capitol, brandished his axe handle, and used it to break through a barrier. *Id*. at *9. Mr. McHugh was not a part of the Proud Boys or any other group and, as discussed above, did not have a leadership role. Most importantly, an axe is significantly more dangerous than bear spray and if used would undoubtedly cause grave injury. Furthermore, it was important to the Court that Mr. Chrestman may have been obstructing or concealing evidence when he returned home. *Id*. at * 14. Unlike Mr. Chrestman, Mr. McHugh did not attempt to conceal or hide evidence and did not coordinate with any groups prior to coming to Washington, D.C.

      The government also pointed to *United States v. Owens* when arguing that Mr. McHugh's

alleged use of bear spray supported one of the "six guideposts" as the Court mentioned that having chemical spray was a factor to be considered. 1-21-cr-00286, ECF No. 26 (D.D.C. May 28, 2021) (Howell, C.J.). However, the Court released Mr. Owens on conditions after weighing all of the factors and considering the totality of the alleged conduct. Mr. Owens was alleged to have used his skateboard to hit an officer on the head during the course of scuffling with them and forcing his way into the Capitol building. That officer suffered injury and was hospitalized. *Id*. Despite that conduct, it was important to the Court that the defendant was (1) not a part of any organized group that planned for a riot, (2) dressed casually and did not wear body armor or tactical gear, and (3) made no threats of violence in person or in social media before, during or after the January 6th riot at the Capitol. *Id*. at pp. 15-16. Similarly, Mr. McHugh also was not part of an organized group that pre-planned the riot, did not come to D.C. dressed in body armor or tactical gear, and although some of his words may potentially be construed as "threats," he had no ability to carry out any of them.[3] The Court in *Owens* concluded that the government did not show by clear and convincing evidence that the defendant posed an "ongoing danger to the community out of the context of January 6, 2021." *Id*. at pg. 21. Although the defendant in *Owens* did not have much of a criminal history, Mr. McHugh's history is comprised of misdemeanor convictions with any suggestion of prior violence being a decade old. The government still has not met their burden to show why Mr. McHugh presents a danger enough to justify pretrial detention "now that the specific circumstances of January 6 have passed." *Id*. (citing *Munchel*, 991 F.3d at 1284).

Lastly, the government cited *United States v. Caldwell* to argue that Mr. McHugh should be detained. 2021 WL 2036667. That case is also distinguishable as the defendant in that matter

---

[3] The social media profile page the government provided is not time stamped and there is no way to determine when that page was created/updated. *See* Government Response at pg. 17.

was alleged to have used bear spray multiple times and later admitted he sprayed approximately 15 officers. *Id.* at *7. The Court was concerned that Caldwell did not have any remorse for his actions after he participated in a ProPublica interview. *Id.* Unlike Mr. Caldwell, Mr. McHugh is only alleged to have sprayed in the direction of officers one time and there is no indication that he does not have remorse as he returned home and focused on his employment and his family rather than participating in public interviews.

## II.     Mr. McHugh's History and Characteristics Do Not Favor Detention

The government is incorrect when it argues that Mr. McHugh has a long and violent history. As already mentioned, most of his criminal history is old and consists of misdemeanor offenses. Pre-trial services recently updated the criminal history section of the Pre-Trial Services Report and it shows that many of the unknown dispositions were either dismissed, never existed, or were just part of a related case. *See* Prior Record Update. Also, the government incorrectly stated that there are three prior rape offenses. *See* Government Response at pg. 20. There is *one* from 2010 where he was convicted of a misdemeanor and the other reference to it is related to that matter. The arrest from 2003 did not result in a conviction and the 2015 reference is unclear as no information is available. It was likely also related to the prior 2010 offense. *See* Prior Record Update, Pre-Trial Services Report. Furthermore, the government has not provided any facts or circumstances surrounding any of those prior offenses to support its argument that there was violence involved. There are many instances in state court where the ultimate disposition may not necessarily reflect the facts and circumstances surrounding the incident. No contest pleas occur frequently and a "fictitious" plea might occur in order to reach a more common understanding of what happened and/or for the parties to reach a "meeting of the minds.[4]"

---

[4] For example, his misdemeanor conviction from 2011 began as a charge for Burglary but resulted in a misdemeanor conviction to Vandalism and Trespass. *See* Pre-Trial Services Report.

Without the facts and circumstances surrounding each incident, there is no way to determine if those prior offenses involved violence. Furthermore, Mr. McHugh has addressed his failure to comply with his misdemeanor domestic battery charge from 2009. Undersigned counsel recently learned that he has begun the process to complete the remaining classes required to close that case. The Reno Justice Court recently ordered completion of a program due by October 13, 2021. Mr. McHugh has already enrolled in the program through American Comprehensive Counseling Services on February 19, 2021. *See* Defense Exhibit A. He was attending classes bi-weekly up until the instant arrest.

### III.     Mr. McHugh Is Not a Risk of Flight

The government argues Mr. McHugh is a flight risk because of his prior probation violations and prior failures to appear. Again, the most recent failure to appear was from 2011, an entire decade ago. His last probation violation was in 2014, seven years ago. That history has little bearing on whether he would comply with the Court's conditions in the present day, especially after he has changed his life for the better. Mr. McHugh now has a stable residence, a supportive girlfriend, steady employment, and has reconnected with his son. He is an entirely different person than the individual he was years ago. The government claims that he is currently in violation of his informal probation. *See* Government Response at pg. 21. That allegation seems to be learned through an FBI agent who spoke to a probation officer. There has been no actual violation on file to undersigned counsel's knowledge. The only potential violation that was confirmed was Mr. McHugh admitting to his officer that he used alcohol. While Mr. McHugh has rehabilitated himself in many ways, alcoholism is still a real issue for him that needs to be addressed. As already stated, he wants treatment and only wishes to continue rehabilitating.

The government further undermined Ms. Hunt's appropriateness as a third party custodian by criticizing her inability to stop Mr. McHugh from going to Washington, D.C. *See* Government Response at pg. 26. Ms. Hunt's appropriateness as a third party custodian is demonstrated through her attempts to stop him from traveling there as it shows she did not agree with his desire to participate in the protest. A third party custodian is not tasked with preventing someone from engaging in a particular act as that can be impossible. Rather, their responsibility is to be a good influence and to alert the Court when an individual violates a condition. She was not a third party custodian at that time and it is unfair for the government to undermine her appropriateness based on her inability to prevent an adult from traveling to a protest when she had absolutely no responsibility to alert anyone to that fact. Ms. Hunt is the reason that Mr. McHugh has rehabilitated himself in the last few years and she will continue to be a good influence on him.

Mr. McHugh is willing to abide by any conditions that the Court believes are appropriate, including in-patient drug treatment. In the past five months, he has shown that he has disengaged from politics and has focused on his employment and his family. He has also made efforts to comply with old obligations by attending treatment from a conviction over 10 years ago. He wishes to be on the "straight and narrow" moving forward and respectfully requests that the Court set conditions that will assure the safety of the community and his future appearance.

## **CONCLUSION**

For the above reasons, Mr. McHugh respectfully requests that the Court revoke the order of detention in this matter and release him on strict conditions of pre-trial release.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
D.C. Bar No. 1031486
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500
Maria_Jacob@fd.org