UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 21-453 (JDB) |
| ) | |
| SEAN MICHAEL MCHUGH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**SEAN MCHUGH'S REPLY IN FURTHER SUPPORT OF HIS MOTION TO TRANSFER VENUE**

Sean McHugh, files this reply in further support of his motion to transfer venue to a district that will ensure him a fair jury trial. Nowhere in its opposition to Mr. McHugh's motion to transfer venue *see* ECF No. 58 ("Gov. Opp."), does the government address the many compelling reasons to transfer venue, which would protect Mr. McHugh's constitutional right to a fair trial. Instead, the government attacks the objective jury survey that provides statistical data which suggests that it would be near impossible to impanel a fair jury in this case.

The government then suggests a novel solution – it encourages the Court to spend time and resources, empanel a veniere, and undertake a time consuming voir dire and then decide if the objective data in the jury survey is in fact accurate.

For the reasons discussed below, the government's arguments are without merit and do not address the main issue before the court: the irreparable bias that exists if venue were deemed to be proper in Washington, D.C. (herein after "D.C.").

**I.    The Government Fails to Undermine the Jury Survey that Exposes the Clear Bias that Exists in the D.C. Jury Pool**

The government first tries to undermine Mr. McHugh's use of the jury survey, claiming

1

that he did not "develop any argument based on the results" and "may have waived any reliance on the survey entirely." *See* Gov. Opp. at 7. That assertion is incorrect, as is the case it cites to for that proposition. Mr. McHugh provided the jury survey results as support for the arguments he made throughout the motion. *See* Defense Motion, ECF No. 55 ("Def. Mot."). Equally misplaced is the case on which the government relies; *U.S. v. Johnson*, No. 02-310, 2021 WL 3737681, at *4 (D.D.C. Aug. 24, 2021) (JDB), which is inapplicable here as the defendant there cited to legal authority as the basis for its argument while not actually making the argument. *See* Gov. Opp. at 7. Here, it is the jury survey that is the data that provides credibility to the many arguments asserted by Mr. McHugh, the survey is not *the argument* as *Winstead* was in the *Johnson* matter. It is the basis for the argument. *Id*.

To elucidate, McHugh argues that one reason the jury pool shows bias is the continuous negative media coverage that the January 6 defendants, their defense lawyers and their cases have received. *See* Def. Mot. at 10-16. The data that supports this argument is found in the jury survey attached to the motion that explains that after potential jurors were polled, 90% of them were exposed to media coverage and that most of them say the media coverage implied that the defendants are "guilty of the charges brought against them." *See* Def. Mot., Exhibit 1, Jury Survey at pg. 3. Mr. McHugh has not waived any parts of the jury survey as it was cited to and attached to his motion as support for his arguments.

The government then tries to undermine the jury survey itself by suggesting that the Court should not consider the data because (1) courts have "commonly rejected such polls" and (2) based on only one critique as to the methodology employed. *See* Gov. Opp. at 7-11.

    a. **The Government selects past cases where the polls were distinguishable from the instant one.**

2

In its opposition, the government cites cases that found survey results could not support a finding of presumed prejudice. *Id*. However, in many of those cases, the survey participants were asked entirely different questions than the ones asked here. Most notably, in many of those cases, the participants were not asked to opinion on the "guilt" of the defendants. *See, e.g., United States v. Campa*, 459 F.3d 1121 (2006) (survey in support of transfer motion in Miami district were not asked to opine on anyone's guilt).

Furthermore, the government's reliance on *U.S. v. Haldeman*, 559 F. 2d 31, 64 n. 43 (D.C.C. 1976), relegated to a footnote is misplaced for two reasons. First, the government generalizes that polls can be open to errors and should be viewed as suspect because appellants pay the expert to conduct the poll. *Id*. But, the government routinely pays the expert it hires, and surely the rules for the DOJ are no different than those for a defendant. All experts are paid and that goes to weight not admissibility. Also relevant is that the *Haldeman* court does not address why the specific expert hired in *Haldeman* was not be trusted and why or how that poll was flawed.

Secondly, in *Haldeman*, the Court reviewed the media coverage and the overwhelming pre-trial publicity was found to consist of "straightforward, unemotional factual accounts of events" rather than the inflammatory nature of the media coverage in this case.[1] *Id*. at 61, *See also U.S. v. Rodriquez*, No. 07-1316 (8th Cir.), 2008 WL 194877, at *19 (cited by the government but where court also found the poll did not demonstrate the media coverage being "inflammatory"). Therefore, *Haldeman* is entirely different than the instant matter and provides no support or basis

---

[1] *See* Alleged US Capitol rioter who heckled police for 'protecting pedophiles' served jail time for statutory rape of 14-year-old girl - CNNPolitics; Accused Capitol rioter who yelled at police for 'protecting pedophiles' served jail time for statutory rape of a 14-year-old girl, report says (yahoo.com); New video from Capitol riot shows Trump supporter convicted of statutory rape heckling police - CNNPolitics (quoting Chief Judge Howell during his detention hearing saying, "actions like this have blemished the reputation of American democracy").

for rejecting the poll results here.

    **b. The critique that the poll does not provide an option of "unsure" about guilty is unavailing.**

The government's only critique of the questions asked by the expert in conducting the poll is that the expert did not instruct the participants that they could answer by saying they were "unsure" about the guilt of January 6 defendants. *See* Gov. Opp. at 11-12. However, the government relies only on a single source, without further argument, that opined that respondents must be made aware of this option. *Id*. The government offers no evidence such an option is widely adopted by other experts in the area. That comes as no surprise as peer-reviewed research published four years after the government's citation explains precisely why offering an option of "don't know" (or unsure) may ultimately discourage people to "generate a meaningful answer from expressing it." Jon A. Krosnick & Stanley Presser, "Question and Questionnaire Design," in *Handbook of Survey Research* (2d. ed. 2010, Peter V. Marsdean & James D. Wright, eds.) at 263, 282.[2] Lastly, as the government points out, the jury survey results here reveal that about a quarter of respondents did not respond concretely and rather said they did not know or that it depends or refused to answer all together. *See* Def. Mot., Exhibit 1, Jury Survey at pg. 14. Clearly people know even when not specifically not instructed, that "unsure" is always an available response.

    **II.**    **The Government Ignores the Impact of the Constant Pre-trial Publicity in January 6 Cases whose Uniqueness is conceded by Attorney General Garland and the DOJ.**

The government attempts to compare the pre-trial publicity of January 6, 2021, to other high profile cases such as the Boston Marathon bomber prosecution, the fraud trial of CEO of Enron, the Watergate prosecutions, and the 9-11 prosecutions. *See* Gov. Opp. at 16-17. And yet

---

[2] Emerald_HSR-V017_9 263..313 (stanford.edu)

4

it ignores the biggest difference between those cases and the January 6 prosecutions. Unlike any other case, the January 6 prosecutions involves over 700 individuals so far with the DOJ being on the record as saying that 1000 more arrests are to be expected. Below is what the Attorney General proclaimed about the January 6 prosecutions:

### Extraordinary resources devoted to the Jan. 6 probe

> Every FBI office, almost every U.S. attorney's office in the country is working on this matter. We've issued thousands of subpoenas, seized and examined thousands of electronic devices, examined terabytes of data, thousands of hours of videos. People are working every day, 24/7, and are fully aware of how important this is. This had to do with the interference with the peaceful transfer of power from one administration to another. And it doesn't get more important than that.[3]

Media coverage has been relentless. As the jury survey points out, 93% of the D.C. jury pool is aware that "several hundred people were arrested on charges related" to January 6, 2021. *See* Def. Mot., Exhibit 1, Jury Survey at pg. 2. The almost daily reporting of capitol protest prosecutions makes this case more like *Rideau v. Louisiana*, 373 U.S. 723, 727 (1963), where the Supreme Court found the people of Calcasieu Parish saw and heard Rideau's confession too many times and as a result a fair trial was not possible there. Similarly, the people of D.C. have been exposed to the January 6 prosecutions almost on a daily basis and have read too many articles depicting defendants in a negative and inflammatory fashion. We are hard pressed to find a single newspaper article that casts a January 6 defendant in a positive light. McHugh is depicted as a sex offender in mainstream outlets as the media has not only focused on his "guilt" in allegedly assaulting police officers on January 6, 2021, but also his prior sex offense in 2010.[4] Not only is

---

[3] *See* https://www.npr.org/2022/03/10/1085016383/garland-says-the-jan-6-investigation-wont-end-until-everyone-is-held-to-account.
[4] Alleged US Capitol rioter who heckled police for 'protecting pedophiles' served jail time for statutory rape of 14-year-old girl - CNNPolitics; Accused Capitol rioter who yelled at police for 'protecting pedophiles' served jail time for statutory rape of a 14-year-old girl, report says (yahoo.com); New video

the jury pool pre-judging his guilt in this matter, they see him as someone who is a criminal and therefore preordained to be found a criminal now.

Lastly, the government contends that McHugh must explain why he requests transfer to the Eastern District of Michigan saying he has "no apparent connection to that District, nor has he explained how that District would be appropriate under the Federal Rules of Criminal Procedure." *See* Gov. Opp. at 10-11.  However, Federal Rule 21(a) does not require the defendant to have a connection to a certain district and does not mandate an explanation as to why another district is chosen.  Rather, the rule mandates the transfer of a proceeding to *another district* if prejudice exists in that district such that the "defendant cannot obtain a fair and impartial trial there." F.R.C.P. 21(a).  McHugh has shown that he cannot receive a fair and impartial trial in D.C. because the constant media coverage affects D.C. residents in a way that does not affect other parts of the country.  D.C. residents were present in the city during a national disaster that directly affected them, making them alleged "victims" in a sense.  As a result, D.C. residents would be more afraid of a January 6 recurrence than anyone else in the country.

## CONCLUSION

For all the reasons discussed above, and those in his moving papers, the Court should grant Mr. McHugh's motion to transfer venue.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

---

from Capitol riot shows Trump supporter convicted of statutory rape heckling police - CNNPolitics

                                            Maria N. Jacob
                                            Sabrina Shroff
                                            Assistant Federal Public Defenders
                                            625 Indiana Avenue, N.W., Suite 550
                                            Washington, D.C.  20004
                                            (202) 208-7500