UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.      ) | Case No. 21-CR-453 (JDB) |
| ) | |
| SEAN MICHAEL MCHUGH, ) | |
| ) | |
| Defendant.  ) | |
| ) | |

## DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICMENT AS DEFECTIVE

The Defendant, Sean McHugh, by and through his Counsel, tenders this motion to dismiss all charges within the Superseding Indictment as defective for lack of specificity and failure to state an offense, pursuant to Federal Rules of Criminal Procedure Rule 12b. A brief in support is being submitted simultaneously with this Motion.

Respectfully submitted,

*/s/ Gall*

_____
Joseph W. Allen, MO BAR #57669
1015 W. State Hwy. 248 Ste. I
Branson, MO 65616
Telephone:  417/334-6818
Facsimile:  417/612-7081
joe@mybransonattorney.com
**Attorney for Defendant**

1

## CERTIFICATE OF SERVICE

      I hereby certify that on the third (3) day of October 2022, I filed the foregoing Motion to Dismiss the Superseding Indictment as Defective and a proposed Order by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

_____
Joseph W. Allen

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 21-CR-453 (JDB) |
| ) | |
| SEAN MICHAEL MCHUGH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT AS DEFECTIVE**

The Defendant, Sean McHugh (Mr. McHugh), by and through Counsel, pursuant to Rule 12(b)(ii), (iii), and (v), requests that this Court dismiss all the charges against Mr. McHugh as they lack sufficient specificity. Mr. McHugh moves the Court to dismiss the Superseding Indictment as to Counts Three, Four, Six, Seven, Eight, and Nine for failure to state an offense as pepper spray[1], as a matter of law, is not a deadly or dangerous weapon, neither is a metal sign within the scope of the alleged facts herein. Finally, Mr. McHugh moves the Court to dismiss at least Counts Seven and Nine as they are multiplicitous of Count Five. Also Counts Three, Four, Eight, and Ten as they are multiplicitous of Count One.

**I.     FACTUAL BACKGROUND**

On March 27, 2021, Mr. McHugh was arrested in Sacramento, CA on a complaint alleging charges arising out of events on January 6, 2021. (*See* ECF Dkt. Nos. at 1 , 22, and 39) including

---

[1] The Superseding Indictment utterly fails to specify or clarify what substance, item, or action is being referred to as "bear spray". Therefore, the undersigned is forced to assume that the aforementioned item, substance, or action is not in fact the act of spraying bears, or a substance manufactured from a bear but rather an unidentified brand of pepper spray and will, for the purposes of all proceeding argument, refer to said "bear spray" interchangeably as pepper spray. This assumption must not be construed to be an acquiescence or concession in identifying the "bear spray" on the part of Mr. McHugh or Counsel but is merely a placeholder for the sake of making an argument.

the allegation of using a substance or item identified as "bear spray" and the use of a "metal sign" as a weapon. Mr. McHugh has, since that time, remained held in the D.C. Correctional Treatment Facility.

The full charges alleged against Mr. McHugh are:

1. **(Assaulting, Resisting, or Impeding Certain Officers, Aiding and Abetting,** in violation of Title 18, United States Code, Sections 11 l(a)(I), 2)
2. **(Civil Disorder,** in violation of Title 18, United States Code, Section 231(a)(3))
3. **(Assaulting, Resisting,** or **Impeding Certain Officers Using a Dangerous Weapon,** in violation of Title 18, United States Code, Sections 111(a)(I) and (b))
4. **(Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon,** in violation of Title 18, United States Code, Sections I I l(a)(l) and (b))
5. **(Obstruction of an Official Proceeding and Aiding and Abetting,** in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)
6. **(Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon,** in violation of Title 18, United States Code, Section I 752(a)( I) and (b)(l)(A))
7. **(Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon,** in violation of Title 18, United States Code, Section 1752(a)(2) and (b)(l)(A)
8. **(Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon,** in violation of Title 18, United States Code, Section l 752(a)(4) and (b)(l)(A)
9. **(Disorderly Conduct in the Capitol Grounds or Buildings,** in violation of Title 40, United States Code, Section 5104(c)(2)(D))
10. **(Act of Physical Violence in the Capitol Grounds or Buildings,** in violation of Title 40, United States Code, Section 5104(e)(2)(F))

## II.    LEGAL STANDARD

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," including for "lack of specificity" and "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). "[A] pretrial motion to dismiss an indictment … allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015) (citation and internal quotation marks omitted). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to

reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). The notice requirement "is established in the Sixth Amendment, which provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]'" *United States v. Hillie,* 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (quoting U.S. Const. Amend. VI). "A valid indictment also preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, it guarantees that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense.
>
> *Id.*

For an indictment to have sufficient specificity, "the indictment may use the language of the statute, but that language **must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged**." *Id.* at 72 (emphasis added). An indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the alleged acts of the defendant that constitute the offenses charged as insufficient to notify a defendant of the nature of the accusations against him. *Id.* at 73. An indictment must be viewed as a whole, and the allegations must be accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d. 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* Further, "The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge **as stated in the indictment**[,]" *United States v. Conlon*, 628 F.2d 150, 155, 202 U.S. App. D.C. 150 (D.C. Cir. 1980) (emphasis added).

5

In regard to multiplicity, the law protects defendants against multiplicitous indictments to avoid multiple sentences for a single offense and prevent prejudice which such overbearing indictments may generate in the eyes of a jury. *United States v. Phillips*, 962 F. Supp. 200, 202 (1997). When an indictment charges multiple offenses arising from the same conduct it" [ma]y falsely suggest[] to a jury that a defendant has committed not one but several crimes" and falsely suggest the defendant must be guilty of at least some of them. *Id*. This prejudicial practice threatens to pose significant threats to the proper functioning of the jury system. *Id*. An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Brown*, No. 07-cr-75, 2007 WL 2007513, at *6 (D.D.C. July 9, 2007).

### III.     ARGUMENT

The Superseding Indictment against Mr. McHugh is defective for multiple reasons. (*See* Superseding Indictment as to Sean McHugh at ECF 39.) The Superseding Indictment is entirely deficient in regard to specificity, lacking almost any details specific to the allegations against Mr. McHugh apart from restating the language of the statute. Critically, the Superseding Indictment lacks specificity in the key area of describing Mr. McHugh's conduct that would satisfy the elements of the offenses charged, failing to give Mr. McHugh fair notice.  The Superseding Indictment is also defective with regard to any enhancements for the use or carrying of a deadly or dangerous weapon because as a matter of law, pepper spray[2] is not a deadly or dangerous weapon; further, the item referred to as a "metal sign" lacks any explanation, contextualization,

---

[2] As previously mentioned, Mr. McHugh and Counsel remain at a loss to specifically identify the substance, item, or action described as "bear spray" so as to formulate any kind of relevant defense or argument, leaving them with only the assumption that it is some form of pepper spray, though said assumption is in no way an acquiescence or concession as to the unknown substance, item or action's identification.

6

or identification which would lend itself to qualifying the same as a deadly or dangerous weapon. Finally, the Superseding Indictment is defective because it has multiplicitous charges for the same offense, and the Government must choose which charges to bring or else risk unconstitutionally biasing the jury.

For these reasons, when considering the four corners of the Superseding Indictment, the face of the Superseding Indictment, and the language of the charges, the Superseding Indictment is defective in violation of the Federal Rules of Criminal Procedure Rule 7, and Mr. McHugh's Fifth and Six Amendment rights. This Superseding Indictment, therefore, must be dismissed.

### A.  Mr. McHugh's Superseding Indictment Charges Lack Specificity to Such a Degree as to Render the Superseding Indictment Impermissibly Vague

Pretrial motions to dismiss for lack of specificity in the indictment are appropriate under the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 12(b)(3)(B)(iii). An indictment is sufficient if it, "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117. The indictment may use the language of the statute but must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged. *Hillie*, 227 F. Supp. 3d at 72. An indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the acts of the defendant that constitute the offenses charged, is insufficient to notify a defendant of the nature of the accusations against him. *Id.* at 73.

The Superseding Indictment against Mr. McHugh fails to describe in any meaningful way the acts that constitute the offenses charged. (*See* Superseding Indictment as to Sean McHugh at

7

ECF 39). The language in the Superseding Indictment mirrors the language of the statute but is not "supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *See id.*; *see also*, *Hillie*, 227 F. Supp. 3d at 72. This lack of fair notice fails to meet the burden posed to the government and, without correction by the Court, would deprive Mr. McHugh of fair notice of the charges alleged.

The Superseding Indictment does not describe the "who, what, where, or how" of Mr. McHugh's conduct that led to the charges. *See id*.

To wit:

**Count One** simply restates the wording of the Statute and fails to state with any specificity or clarity what alleged actions were committed by Mr. McHugh that would qualify as forcible assault, resistance, opposition, impediment, intimidation, or interference with an officer or employee of the United States Government and fails to describe or identify the alleged victim. Further still, said count fails entirely to qualify or explain how with such certainty it is asserted that Mr. McHugh committed the alleged actions with the intent to commit another felony.

**Count Two** simply restates the wording of the Statute and fails to state with any specificity or clarity what alleged actions were committed by Mr. McHugh, fails to describe the manner in which the element of civil disorder is met, and fails to describe or identify the alleged victim in any fashion.

**Count Three** simply restates the wording of the Statute, with the exception of vaguely identifying "a large metal sign", but does not discuss with any specificity the alleged actions committed by Mr. McHugh, his relation to or with the "metal sign", the manner in which the "metal sign" qualifies or was used as a dangerous or deadly weapon, does not identify the

official duties of the officers or employees which they are alleged to have been engaged in, nor does it describe or identify the officers or employees themselves.

**Count Four** simply restates the wording of the Statute, with the exception of vaguely referring to an item or substance called "bear spray" and without explanation or clarification identifying said item or substance as a dangerous or deadly weapon. Further, said count fails to describe or identify the alleged actions of Mr. McHugh, his relation to or with the item or substance referred to as "bear spray", or to describe or identify the alleged victim.

**Count Five** simply restates the wording of the Statute and does not discuss with any specificity the alleged actions of Mr. McHugh which would have obstructed, influenced, or impeded an official proceeding, and further does not explain nor establish how Mr. McHugh "corruptly" engaged in any alleged action(s).

**Count Six** simply restates the wording of the Statute and does not identify with any specificity the restricted buildings or grounds, the manner in which Mr. McHugh is alleged to have entered and remained in the aforementioned ambiguous "buildings or grounds", fails to specify if the Vice President in fact was or would be visiting at the time of the alleged offense, and fails to provide any explanation that would qualify a "metal sign" and a substance or item called "bear spray" as dangerous or deadly weapons. Further still, said count fails entirely to qualify or explain how with such certainty it is asserted that Mr. McHugh "knowingly" committed the alleged offense.

**Count Seven** simply restates the wording of the Statute and does not with any specificity identify any of the alleged actions or conduct of Mr. McHugh, does not identify the buildings, grounds, or area wherein the alleged offense is to have occurred, does not clarify if in fact the

Vice President was visiting the exact area of the alleged offense at the time it is to have occurred, fails to explain how the vaguely alleged actions of Mr. McHugh impeded or disrupted any Governmental proceeding, fails to identify the specific proceeding Mr. McHugh is alleged to have disrupted, and fails to provide any explanation that would qualify a "metal sign" and a substance or item called "bear spray" as dangerous or deadly weapons. Further still, said count fails entirely to qualify or explain how with such certainty it is asserted that Mr. McHugh "knowingly and with intent" committed the alleged offense.

**Count Eight** simply restates the wording of the Statute and does not with any specificity identify the alleged violent action, fails to identify the alleged victim, instead leaving it so vaguely ambiguous that the alleged act is perpetrated against a noun, fails to identify the restricted building, grounds, or otherwise restricted area, fails to specify if the Vice President in fact was or would be visiting the exact area of the alleged offense at the time the alleged offense is to have occurred, and fails to provide any explanation that would qualify a "metal sign" and a substance or item called "bear spray" as dangerous or deadly weapons. Further still, said count fails entirely to qualify or explain how with such certainty it is asserted that Mr. McHugh "knowingly" committed the alleged offense.

**Count Nine** simply restates the wording of the Statute and does not with any specificity identify the alleged actions or conduct of Mr. McHugh, fails to identify the location wherein this alleged offense is to have occurred, fails to identify in what way Mr. McHugh's actions or conduct impeded, disrupted, or disturbed a Governmental proceeding, and fails to identify with any specificity what hearing or deliberation Mr. McHugh is alleged to have disrupted. Further still, said count fails entirely to qualify or explain how with such certainty it is asserted that Mr. McHugh "willfully and knowingly" and with "intent" committed the alleged offense.

**Count Ten** simply restates the wording of the Statute and does not with any specificity identify the alleged act of violence, fails to identify an alleged victim, and fails to specifically identify where the alleged offense is to have occurred. Further still, said count fails entirely to qualify or explain how with such certainty it is asserted that Mr. McHugh "willfully and knowingly" committed the alleged offense.

The charges in the Superseding Indictment lack any specificity with which Mr. McHugh could be aware of his conduct which led to the charge and formulate a defense. The Superseding Indictment is Constitutionally deficient due to its lack of specificity on all counts and must be dismissed[3]. *See* Hillie, 227 F. Supp. 3d at 71.

> **B.    The Superseding Indictment Is Defective as Counts, Four, Six, Seven, and Eight Fail to State an Offense as a Metal Sign and Pepper Spray are Not Dangerous Weapons Under Law.**

Counts Four, Six, Seven, and Eight should also be dismissed with regard to their enhancement for the carrying or use of a deadly or dangerous weapon. As a matter of law, pepper spray is not a dangerous weapon under the statute. *See* Fed. R. Crim. P. 12(b)(3)(B)(v).

---

[3] While the Honorable Judge Bates has examined at length the issue of "the vagueness doctrine" (*See* ECF at 51 pp 33-34) as previously disputed by Mr. McHugh (*See* ECF at 41), the argument here differs dramatically in that the challenge is not that the wording of the Statutes themselves are impermissibly vague, so as to raise a Constitutional challenge to the Statutes as they exist as law, but rather that the Superseding Indictment fails to specifically apply the Statutes to Mr. McHugh's alleged conduct. While it may be true that a reasonable person can understand what is meant by, say "impeding", the Superseding Indictment and the contents thereof are not held to a reasonable person's comprehension standard, but rather if the Statutes under which the alleged offenses charged are "…supplemented with enough <u>detail</u> to apprise the accused of the <u>particular</u> offense with which he is charged." *United States v. Sunia*, 643 F. Supp. 2d, 72 (D.D.C. 2009) (emphasis added). In this case, there exists no specific detail in the Superseding Indictment at all, let alone "enough detail" by which to be informed of the "particular offense". *Id*. This is especially true when, taking for example 18 U.S.C. § 111, the possible types of conduct or action are listed as "assault, resist, oppose, impede, intimidate, and interfere". While any one of these verbs can readily be understood as concepts by the reasonable person, they fail utterly to describe a specific action of the defendant. At that point, with a lack of any sufficient detail or contextual specificity, the charges become mere subjective speculation. Thus, as a matter of law, are impermissibly vague.

1. **Pepper Spray**

"Pepper spray" is used by thousands of police departments, prisons, and for personal self-defense as a non-lethal, non-dangerous method of seeking arrest compliance or deterrence of an action. Interestingly, the United States Capitol Police discuss what is prohibited on the grounds and in Capitol buildings. The website states "pursuant to the United States and district of Columbia Criminal Codes, firearms, dangerous weapons, explosives, or incendiary devices are prohibited on *U.S. Capitol Grounds (*emphasis added). Prohibited items in the U.S. Capitol & Capitol Visitor Center (i.e., the buildings) include "weapons," and specifically itemizes "mace and pepper spray." This language is mirrored on the United States Capitol website as well. Clearly, had United States and District of Columbia Codes, as well as the United States Capitol Police wished to prevent the carrying of pepper spray or mace on Capitol grounds, they would have specifically stated it as such. Mace and pepper spray, therefore, are permitted to be carried on Capitol grounds, just not inside any Capitol buildings. Prohibited Items | United States Capitol Police.[4]

2. **Metal Sign**

Signs, regardless of their material, are not inherently dangerous or deadly items. Indeed, the intrinsic function and purpose of a sign is to inform or convey some information. Given the absence of any specificity in the Superseding Indictment that might lend some

---

[4] The undersigned has found no information that in anticipation of January 6, 2021, the United States Capitol Police or any other party with authority to do so, banned the carrying of mace on Capitol GROUNDS. Which also begets the question, is the discharge of the same lawful? The rhetorical question clearly would be "Why would it be lawful to carry on the grounds, but unlawful to discharge the same?"

clue as to what is implied by assigning the adjective values of "dangerous or deadly" to the unspecified noun of "metal sign", and what specifically renders it a weapon, Mr. McHugh is at a loss to even begin to formulate a response, let alone a defense. Referring again to the lists provided on the Capitol Police and United States Capitol Visitor's webpages, signs and signage do not appear as either a restricted or prohibited item. It strains all credulity under the wording of the charges as set forth in the Superseding Indictment that a metal sign even remotely qualifies as a dangerous or deadly weapon. Therefore, the remaining argument will be devoted to the issue of pepper spray specifically.

### 3. The United States Sentencing Guidelines provide the only guidance for a definition of whether mace is a deadly or dangerous weapon.

Neither 18 U.S.C. § 1752 nor 18 U.S.C § 111 contains any definition for deadly or dangerous weapon. *See* 18 U.S.C. § 1752 and 18 U.S.C. § 111. As such, the definition should come from the most commonly understood definition, which appears in the Sentencing Guidelines. *See* U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(E) (U.S. Sentencing Commission 2018); *see also id* § 2A2.2 cmt. N.1.

A dangerous weapon is defined as an object or weapon that must be likely to cause "serious bodily injury" such as "*extreme* physical pain or the *protracted impairment* of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such as *surgery, hospitalization*, or *physical rehabilitation*." *United States v. Perez*, 519 F. App'x 525, 528 (11th

Cir. 2013) (citing U.S.S.G. § 1B1.1, comment. (n.1(L)) (emphasis in original). Pepper spray does not meet this statutory definition of a dangerous weapon[5].

Finding pepper spray to be a dangerous weapon requires a case-specific factual showing by the Government. *Perez*, 519 F. App'x at 529. The Eleventh Circuit held that the Government's reliance on the pepper spray's label and marketing materials was insufficient to show the spray was a dangerous weapon. *Id* at 528. The Court rejected the Government's reliance of the pepper spray's label holding "a label created by the manufacturer of a substance is not particularly reliable evidence given its self-serving nature." *Perez*, 519 F. App'x at 528 (citing *United States v. Harris*, 44 F.3d 1206, 1216 (3rd Cir. 1995) (concluding that promotional pamphlet provided an inadequate basis for concluding that the pepper spray in question was a dangerous weapon)). In this case, the Government relied on statements on the product website which make broad claims about the product's power. Just as in *Perez* the government has based their findings on self-serving advertising material that fails to act as reliable evidence. *See id*. The Government has failed to make any assertion within the Superseding Indictment that the spray at issue meets the statutory definition of a dangerous weapon. (*See* Superseding Indictment as to Sean McHugh at ECF 39). Without a case specific factual showing, the pepper spray at issue in this case cannot be considered a dangerous weapon.

The Eleventh Circuit further held that:

> Neither a brand name nor a warning label, alone or taken together, establish[es] that a weapon is a "dangerous weapon"... the warning on the canister's label does not establish that the contents of the canister are capable of inflicting a serious bodily injury. The fact that someone may have to wash an affected area for 15 minutes or seek medical attention does not establish that the spray could cause "extreme physical pain or the protracted

---

[5] By this standard, a metal sign is also not definable or classifiable as a dangerous or deadly weapon.

14

>impairment of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such as surgery, hospitalization, or physical rehabilitation."

*Perez*, 519 F. App'x at 528." *Id.* (emphasis in original).

The Eleventh Circuit identified pepper spray by its very nature is not designed to function as a dangerous weapon in its typical use. The District of Columbia Court should follow the holding of the Eleventh Circuit. Pepper spray is designed not to cause protracted impairment or require surgery, hospitalization, or physical rehabilitation. *How Dangerous Is Pepper Spray?*, National Capital Poison Center, https://www.poison.org/articles/how-dangerous-is-pepper-spray-201. Pepper spray can indeed irritate the eyes, nose, or mouth but these symptoms are usually mild and temporary, typically lasting minutes to hours. *Id.* Pepper spray generally requires washing the affected area with water to alleviate the effects but does not generally require surgery, hospitalization, or physical rehabilitation. *Id.* The effects of pepper spray do not rise to the level of requiring medical intervention such as surgery, hospitalization, or physical rehabilitation in their ordinary use and therefore are properly classified outside the statutory definition of a "dangerous weapon." *Perez*, 519 F. App'x at 528.

The Government will no doubt rely on other circuits, such as the Sixth and Ninth Circuits, which have concluded, based on the individualized facts of those cases, that pepper spray was a dangerous weapon in those cases. *See United States v. Neill*, 166 F.3d 943, 949 (9th Cir. 1999) (discussing the effects on those with an underlying condition); *United States v. Melton*, 233 F. App'x 545, 547 (6th Cir. 2007) (unpublished) ("[B]ased on the severe and probable effects that pepper spray has on the human body, the district court's determination that pepper spray constitutes a 'dangerous weapon' was not erroneous.") However, Sixth and Ninth Circuit have not adopted sweeping decisions designating pepper spray a "dangerous weapon" in

all cases. *See Neill*, 166 F.3d at 949, *Melton*, 233 F. App'x at 547. Even if the Court agrees with the reasoning in the Sixth and Ninth Circuit's cases, the Court should still reject the Government's enhancements in this Indictment as the Government failed to make a specific factual allegation as to how pepper spray in this case constitutes a dangerous weapon.

The 6th Circuit's holding in *Neill* was supported by "[e]vidence presented to the district court demonstrat[ing] that pepper spray is 'capable of inflicting death or serious bodily injury' and therefore satisfies the requirements of a dangerous weapon as defined in § 2B3.1(b)(2)(D)." 166 F.3d 943, 949. Specifically, the use of pepper spray in that case was shown to cause extreme pain based on the victim's testimony. *Id.* The court also heard evidence that the victim suffered protracted impairment of bodily functions or organs because the victim testified that she had difficulty breathing for weeks. *Id.* at 950. In this case the Government has not offered any evidence that the alleged victim suffered a protracted impairment of bodily function. Further, the Government has failed even to produce an alleged victim.

Similarly, the Fifth Circuit found pepper spray to be a dangerous weapon only where the victim complained of protracted effects of the pepper spray, including sustained blindness in one eye requiring multiple follow-up visits to doctors. *United States v. Douglas*, 957 F.3d 602, 604 (5th Cir. 2020). Again, there is no victim identified in Mr. McHugh's case and no allegation the pepper spray caused any abnormal injuries other than potential irritation of the eyes that could be tended to without medical personal.

Further, the Government's argument and assertion as to pepper spray being a deadly or dangerous weapon strains credulity at best. As previously mentioned, pepper spray is a common, nigh universal law enforcement compliance and deterrent tool. So much so that it is common

practice in a vast majority of academies, including federal law enforcement academies, to purposefully spray cadets with pepper spray and other similar irritants[6]. Such would hardly be common practice were pepper spray considered a deadly or dangerous weapon.

Pepper spray is undoubtedly painful, designed deter attackers temporarily. However, it is not capable of, nor likely to cause the kind of extreme pain or serious bodily injury required to be classified as a deadly or dangerous weapon. *Perez*, 519 F. App'x at 528. The Government has failed to offer evidence that the pepper spray could or did cause serious bodily injury. There is nothing in the Superseding Indictment which indicates that the pepper spray can or did cause extreme physical pain or protracted impairment of a bodily function or require medical intervention such as surgery, hospitalization, or physical rehabilitation. Therefore, this Court should find that, as a matter of law, pepper spray is not a deadly or dangerous weapon and dismiss the counts in the Superseding Indictment which contain this enhancement.

### C. THE INDICTMENT IS DEFECTIVE BECAUSE THERE ARE MULTIPLICITOUS CHARGES AIMED AT PREJUDICING MR. McHUGH BEFORE THE JURY.

The law guards against multiplicitous charges as bringing multiple charges for the same action threaten to improperly bias the jury and can also implicate double jeopardy concerns. *See Phillips*, 962 F. Supp. at 202. Mr. McHugh moves to dismiss the multiplicitous charges in the Superseding Indictment pursuant to Federal Rules of Criminal Procedure Rule 12(b)(3)(B)(ii). An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number

---

[6] https://www.youtube.com/watch?v=TQqY-4MYwQc
https://www.youtube.com/watch?v=VnIVhsyZDig
https://www.youtube.com/watch?v=vFcQVYVVGHw

of counts, unfairly increasing a defendant's exposure to criminal sanctions." *Brown*, No. 07-cr-75, 2007 WL 2007513, at *6.

In the present case, the Superseding Indictment's Counts Five, Seven and Nine, all seemingly refer to the same offense and are, therefore, multiplicitous. All of these charges seemingly allege to Mr. McHugh's actions and presence at an unspecified restricted location or locations directly having some effect on an official proceeding, though the allegations in all three counts are so vague as to make any determination impossible as to what Mr. McHugh is alleged to have actually done. As a result, the Government must now choose between these three charges, amend said charge to state with specificity the alleged crime, and select one to proceed with the prosecution or risk unfairly prejudicing Mr. McHugh before the jury.

Similarly, Counts One, Three, Four, Eight and Ten all seem to refer to the same alleged conduct, however nothing in any of the five counts gives the remotest clarification of what exactly Mr. McHugh is alleged to have specifically done. Five charges for the same single offense are unconscionable, multiplicitous, grossly and dangerously prejudicial and acutely violative of Mr. McHugh's rights.

These multiplicitous charges make the Superseding Indictment Constitutionally defective, and thus dismissal is warranted.

### IV. CONCLUSION

Viewing the Superseding Indictment, considering all the facts alleged to be true, and considering the document as a whole, the Superseding Indictment is categorically defective. The Superseding Indictment lacks specificity throughout, fails to state an offense with regard to the

deadly or dangerous weapon enhancements, and has multiple charges for the same offense. As a result of these defects, the Superseding Indictment is Constitutionally deficient and dismissal by this Court is warranted, and indeed, a necessary remedy.

Respectfully submitted,

*/s/ Joseph W. Allen*

_____
Joseph W. Allen, MO BAR #57669
1015 W. State Hwy. 248 Ste. I
Branson, MO 65616
Telephone:  417/334-6818
Facsimile:  417/612-7081
joe@mybransonattorney.com
**Attorney for Defendant**

**CERTIFICATE OF SERVICE**

I hereby certify that on the third (3) day of October 2022, I filed the foregoing Motion to Dismiss the Superseding Indictment as Defective, and a proposed Order by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

*/s/ Joseph W. Allen*

_____
Joseph W. Allen