UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 21-CR-453 (JDB) |
| ) | |
| SEAN MICHAEL MCHUGH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT SEAN MCHUGH'S MOTION FOR
TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(i)**

Defendant Sean McHugh, through counsel, moves the Court to grant him temporary release pursuant to 18 U.S.C. § 3142(i). His release is necessary so he may properly prepare for trial, as well as for other compelling reasons.

## BACKGROUND

On March 27, 2021, Mr. McHugh was arrested in Sacramento, CA on a complaint alleging charges arising out of events on January 6, 2021. *See* ECF Dkt. Nos. 1, 5. On June 1, 2021, a detention hearing was held, and Mr. McHugh was ordered detained by Magistrate Judge Kendall J. Newman. *Id*. at 43. On June 25, 2021, Mr. McHugh requested Chief Judge Howell review Magistrate Judge Newman's detention order, which request was denied. That same day, he was ordered transported from Sacramento to D.C (*id*. at 21), and he has been detained at the Correctional Treatment Facility ("CTF") ever since.

On July 7, 2021, Mr. McHugh was indicted. On July 28, 2021, he entered a plea of not guilty to all ten counts of the Indictment and a jury trial is scheduled for April 17, 2023. Since Mr. McHugh's arrival at CTF, his access to counsel has been limited; he has been unable to meaningfully review discovery in this case; and his mental health has precipitously declined due to CTF's inhumane conditions.

## **LEGAL STANDARD**

The Court may temporarily release a detained defendant to the custody of an "appropriate person" if the Court "determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. §3142(i); *United States v. Lee*, 451 F.Supp.3d 1, 5-6 (D.D.C. Mar. 30, 2020) (recognizing that § 3142(i) of the Bail Reform Act "provides a distinct mechanism for temporarily releasing a detained defendant"); *United States v. Stephens*, 447 F.Supp.3d 63 (S.D.N.Y. March 19, 2020); *United States v. Harris*, No. 19-CR-300 (VSB), 2020 U.S. Dist. LEXIS 125807, at *15 (S.D.N.Y. July 16, 2020) (recognizing that a compelling reason for temporary release exists where release is necessary for the preparation of the defendant's defense);

## **ARGUMENT**

Upon his temporary release from pretrial detention, either Mr. McHugh's life partner, his father, or both are prepared to accept the responsibility as his third-party custodian(s) and ensure Mr. McHugh honors any conditions of release and appears before the Court as required. As both are family and have experienced the trauma of being separated from their loved one for nearly a year and a half, they are uniquely motivated to ensure Mr. McHugh's adherence to his conditions of temporary release. Further, such release is necessary for both the preparation of his defense and for other compelling reasons. Accordingly, the statutory requirements for release under 18 U.S.C. §3142(i) are met and the Court should grant the instant motion.

I.  **The Court Should Temporarily Release Mr. McHugh Under § 3142(i) Because Such Release Is Necessary To Prepare His Defense**

By this time, the Court is well-aware of the overwhelming logistical challenges that materially hinder, or even prevent, incarcerated defendants from having any real opportunity to review discovery and assist counsel in their own defense. The obstacles are particularly acute here,

2

given the large amount of electronic evidence in this case and the logjam created by all the other January 6 cases.

For Mr. McHugh to review his discovery, CTF requires that Counsel send over a thumb drive loaded with discovery materials. Mr. McHugh is then placed on a waiting list and must wait his turn to be provided a laptop, so he can finally review what is provided on the thumb drive. Even if this process worked smoothly, and there is usually some issue or delay, it takes at least a month for the laptop even to get to Mr. McHugh. Further, Mr. McHugh reports that each time he is given a laptop, it is provided without a charger, meaning that he usually is only able to view an hour or so worth of discovery before the laptop must be returned and the whole waiting period begins again.

There have now been at least four specific case productions and nineteen global productions of discovery in this case that total hundreds, if not thousands of hours of material. As a matter of simple math and common sense, it is readily apparent that Mr. McHugh will be unable to meaningfully review the discovery in this case, or meaningfully assist in his own defense, if he remains in detention.

Nor is there any workable alternative to release. Even when inmates will be permitted to view evidence on evidence.com, the unpredictability of lockdowns taking place at CTF will prevent Mr. McHugh from being able to review the hundreds of hours of video evidence and discuss what he sees and what he thinks with counsel, prior to his trial date. These lockdowns typically involve 22-hour periods where inmates cannot leave their cells. Even with the easing in conditions related to COVID-19, the continued rising of new variants and other diseases such as the Monkey Pox which make certain drastic lockdown and quarantine measures necessary, makes any kind of reasonable assurance of consistent access to discovery or counsel untenable at best.

Further, at this time and under the current conditions of incarceration, Mr. McHugh's contribution to his defense is severely curtailed as the communication between counsel and Mr. McHugh is at the mercy of the scheduling of the CTF. This prevents timely communication, which in turn can only lead to frustrating the efforts of both the Government and the Defense in adjudicating this matter, as indeed has already been the case (*See* Docket Entries dated 09/14/2022 and 09/26/2022). In light of due process and the now pending trial date of April 17th, 2022, such obstacles and frustrations to the timely review, response, and consultation necessitate a temporary release of the defendant.

Nor can these due process concerns be resolved by moving Mr. McHugh to a different facility, because the problems that are materially hindering Mr. McHugh are present in every jail. Indeed, in *United States v. Ethan Nordean*, 1:21-CR-175 (TJK), the court tried just that, denying a § 3142(i) motion in favor of the "less drastic" alternative of transporting defendant from his then-facility to the D.C. Department of Corrections. Thus, *Nordean* amply demonstrates the futility of transfer in this case.

Further, Mr. McHugh has demonstrated the seriousness with which he takes his defense in this matter and has, without any assurance of the ability to resume work or generate income, personally found the funds to retain private counsel. As a defendant has a right to counsel of his or her own choosing, said choice must not be bootstrapped to a geographically restricted area. This Constitutionally guaranteed choice of counsel becomes an unreasonable burden to the defense when the defendant is incarcerated states away and is without the means to communicate with his counsel without the impediments of dependence on the scheduling availability of the CTF for attorney-client calls, monitored phone lines, lockdowns, and cripplingly slow access to discovery. This juxtaposed with the counsel for the Government's unlimited, unfettered, and immediate

access to all information related to this case and supported by the weight and resources of the Federal Prosecutor's Office. Such disparity in the ability to adequately litigate this case and mount an effective defense not only exacerbates the aforementioned crushing strain and decline in regard to Mr. McHugh's mental health, but also raises considerable due process questions.

Plainly, releasing Mr. McHugh is necessary to permit him to help prepare his defense at trial. Accordingly, the Court should grant the instant motion.

## II. The Court Also Should Temporarily Release Mr. McHugh Under § 3142(i) For Other Compelling Reasons

Mr. McHugh's mental health has declined significantly since he has been incarcerated at CTF. He has suffered inhumane conditions, poor nutrition, and has been specifically targeted by staff. The D.C. Department of Corrections has been under investigation for its ill treatment of inmates for the past several months. Hundreds of inmates housed at the Central Detention Facility were forced to transfer to another facility for unspeakable evidence of systematic failures.[1] While the Marshal Service has found conditions at CTF to be "largely appropriate and consistent with federal prisoner detention standards," the reports from several inmates have contradicted this finding. *See U.S. v. Robert Gieswein*, 1:21-CR-024 (EGS) Dkt No. 94-1, Declaration of Marvin Bickham (only inspecting conditions at unit C2B at CTF).

Furthermore, a letter dated November 1, 2021, from the US Marshal Service promised a more formal summary that has not yet been released. *See* Exhibit 1, Letter from Lamont Ruffin. It is notable that although this letter focused on the inhumane conditions at CTF, it provided examples of a broken culture among staff. *Id*. It is not difficult to imagine that staff hired by the

---

[1] Jenny Gathright, *After Inspection Finds 'Systemic Failures' At D.C. Jail, 400 Residents Will Be Moved*, DCIST (Nov. 3, 2021, 3:48 PM), https://dcist.com/story/21/11/03/400-dc-jail-residents-will-be-moved-to-pennsylvania/

same agency would also have the same corrupt and "uninterested" culture. Further still, these conditions have alarmed not only the US Marshal Service, but also members of the Senate Judiciary Committee[2]. U.S. Senate Majority Whip Dick Durbin (D-IL), Chair of the Senate Judiciary Committee; U.S. Senator Chuck Grassley (R-IA), Ranking Member of the Senate Judiciary Committee; and U.S. Senator Ben Cardin (D-MD) jointly composed a letter to The Honorable Attorney General Merrick Garland dated May 6, 2022, urging the Department of Justice to launch a full investigation into "civil and criminal violations of federal law at CDF…" *Id*. *See* Exhibit 2, Joint Letter to the Attorney General.

Another district court in this jurisdiction released an inmate at CTF despite the lack of formalized findings of poor conditions, and by finding so, sparked the investigation into both facilities. *U.S. v. Christopher Worrell*, 1:21-CR-292 (RCL). In Worrell, the Court noted that after the findings on the conditions at CDF were released, it had "zero confidence" that D.C. corrections officials would ensure that Worrell would receive the medical care he needed and was also worried guards would "retaliate" against Worrell given his cooperation against the D.O.C.[3]

This theme of "retaliation" has been corroborated by Mr. McHugh who reports he has been specifically targeted for filing grievances about his mistreatment. Furthermore, his grievances show the same kind of inhumane conditions found at CDF. *See* Exhibit 3, McHugh Grievances and Staff Response.[4]  By way of example from the myriad of grievances filed, in a grievance dated November 11, 2021, McHugh wrote that he was sprayed by a chemical irritant and had trouble

---

[2] https://www.judiciary.senate.gov/press/dem/releases/durbin-grassley-cardin-press-doj-on-egregious-conditions-at-prison-facility-in-nations-capitol
[3] Judge releases Proud Boy over fear DC Jail might 'retaliate' | wusa9.com
[4] The office of the Federal Public Defender has requested an updated institutional record to reflect the time period between December 2021 to the present day.  To this day, no response has been received.

breathing because of existing mold. *Id*. The DOC response to that grievance acknowledged that he had chemical exposure that was consistent with "DOC policy." *Id*. On November 17, 2021, McHugh submitted a few deeply concerning grievances, one of which reports that a staff member "wished he was in general population so he could be taught a lesson that he would be stabbed and beat" in addition to other inappropriate and retaliatory type remarks. *Id*. Other grievances submitted by McHugh often resulted in staff responses that show the similar "indifference" that was reported by US Marshal Service with regards to CDF staff. *Id*.

Lastly, his access to counsel has been severely limited throughout the pendency of this case to the present. While in quarantine for weeks at a time, the jail failed to arrange attorney-client privileged calls as per their policy when inmates are in quarantine. As a result, he had to call the Federal Public Defender's Office through his own personal monitored account. More recently, after retaining private counsel and his entry being announced on August 10, 2022, Mr. McHugh was forced to wait until August 26, 2022, sixteen days, before being able to speak with his attorney on a secure line due to the time and scheduling constraints of the CTF. Further, the CTF expressly indicated that such delays were to be expected for the foreseeable future.

Mr. McHugh's mental health has not only declined because of the mistreatment by DOC staff. Due to grave danger of being placed in general population, all January 6 defendants have been placed in the same unit. This has led to a concern by experts that the men in CTF are vulnerable to radicalization due to the circumstances of their incarceration.[5] This pressure to conform to certain ideologies is preventing Mr. McHugh from meaningfully contributing to his defense in this case. Mr. McHugh is a young man who is impressionable and whose mental health

---

[5] Capitol Rioters in Jail's 'Patriot Wing' Have Their Own Rituals and a Growing Fan Base (vice.com)

has significantly declined in the past year given the conditions at the jail and the pressure he has been facing in his surroundings from every angle. This is further exacerbated by the distrust among the January 6 defendants themselves where whispers of conspiracy and "traitors" places an enormous strain on any defendant simply seeking to address their charges for what they are. Mr. McHugh is no exception and has expressed his fears that speaking with his counsel under the scheduling conditions afforded by the CTF will lead to him being blacklisted among his fellow defendants as conspiring with the Federal Bureau of Investigation or some other Federal entity against the other January 6 defendants, thus placing Mr. McHugh personally at risk from fear and conspiracy driven retaliation. Thus Mr. McHugh faces not only the mistreatment aforementioned at the hands of the CTF Staff, but now also among the inmates with whom he is housed. The consequences of this will be dire, either to Mr. McHugh's health and safety or his defense.

Counsel for the Government will no doubt raise objection based on the nature of the alleged crimes in Mr. McHugh's case. However, Defense respectfully requests this Court take judicial notice of case numbers 1:21-CR-00178 (APM), 1:22-CR-00148 (RCL), 1:21-CR-00483 (DLF), 1:21-CR-00292 (RCL), 1:22-CR-00034 (RBW), 1:21-CR-00040 (TNM), 1:22-CR-00011 (RJL), 1:21-CR-00035 (EGS), and 1:21-CR-00537 (JMC). All these cases have in common defendants charged with the same or more severe charges than Mr. McHugh and who were granted release from incarceration. Specifically, Defense would draw this Court's attention to case numbers 1:21-CR-00178 (APM) and 1:22-CR-00148 (RCL) where defendants charged with both use of a chemical irritant on law enforcement and having a criminal history were granted release. The interests of justice require that the same standard of clemency be applied to Mr. McHugh as to these other defendants.

Counsel for the Government will also no doubt raise again the issue of Mr. McHugh's prior criminal history. While Mr. McHugh takes responsibility for what is on his record, he disputes that his record has been accurately conveyed to this Court as the Government has listed certain crimes for which Mr. McHugh was never convicted. Furthermore, the Government has failed to demonstrate in their recounting of Mr. McHugh's past what possible compelling reason currently exists that supersedes the fact that, "[i]n our society liberty is the norm, and detention prior to trial … is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Indeed, "it is only a 'limited group of offenders' who should be detained pending trial*.*" *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992).

While prior actions may be considered, they are not conclusive of any current fact, nor can they demonstrate any certainty of what will happen. Mr. McHugh has had ample time, over a year and a half, to reflect on the kind of response he can expect from the Government and this Court should he fail to comply with its process and dictates. Further still, Mr. McHugh, in preparing for his defense, is acutely aware of the fact that his compliance with this Court's constraints and mandates regarding his release will have a direct influence at trial, thus there exists every possible motivation on the part of Mr. McHugh to comply to the letter. Further still, it is within the power of this Court to impose whatever conditions of temporary release it deems necessary to satisfy itself of Mr. McHugh's compliance and continued participation.

Mr. McHugh has now been incarcerated for almost a year and a half, thousands of miles away from his home and family. He has a teenage son who desperately needs him and for whom Mr. McHugh has devoted many years to maintaining and increasing the time he is able to spend

with him. Mr. McHugh was, until the date of his incarceration, heavily invested in bonding with his son, including such activities as gymnastics and Parkour. Further still, the declining health of Mr. McHugh's father as a result of multiple back and knee surgeries, and the recent diagnosis of macular degeneration, had made him dependent on Mr. McHugh for the majority of any physical or manual aid up to the time of Mr. McHugh's incarceration. This, combined with the declining health of his grandmother due to a stroke and with whom he shares a deep bond of love and affection and the daily inability to be with, assist, or enjoy the company of his family compounds exponentially the mental and emotional strain which has and will continue to erode Mr. McHugh's ability to assist meaningfully in his own defense.

Further still, with the impending trial, Mr. McHugh faces the possibility of the consequences of a guilty verdict. Such consequences could see him separated from his family for decades. A temporary release is necessary for this compelling reason, as Mr. McHugh has been denied any meaningful contact with his family for over a year and a half and it is unconscionable that Mr. McHugh, who is by law innocent until proven guilty, should be denied the time prior to trial to spend with his loved ones.

## CONCLUSION

Mr. McHugh's mental health is the lowest it can be due to the foregoing myriad of reasons. If he remains incarcerated, he will not only be prevented from meaningfully reviewing his discovery, but he will not be able to assist defense counsel in properly defending him. Further, the daily and genuine risks to his health and safety, both from the conditions and staff at CTF as well fellow defendants as long as he remains incarcerated, and the very real and irreparable dangers that such continued incarceration poses to his defense due to external pressures exacerbated by the

inability to provide for his family only grows with the passage of time. For these reasons, release under U.S.C 18 § 3142(i) is appropriate.

                                                                               Respectfully submitted,

                                                                               Joseph W. Allen, MO BAR #57669
                                                                               1015 W. State Hwy. 248 Ste. I
                                                                               Branson, MO 65616
                                                                               Telephone:  417/334-6818
                                                                               Facsimile:  417/612-7081
                                                                               joe@mybransonattorney.com
                                                                               **Attorney for Defendant**

## CERTIFICATE OF SERVICE

     I hereby certify that on the fifth (5) day of October, 2022, I filed the foregoing Motion For Temporary Release with Exhibits 1-3, and a proposed Order by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

                                                                                     Joseph W. Allen