UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | No. 21-CR-453 (JDB) |
| : | |
| **SEAN MICHAEL MCHUGH,** : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO TRANSFER VENUE

Defendant Sean McHugh, who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved to transfer venue in this case to another district (the Eastern District of California) pursuant to 18 U.S.C. § 3237(a). *See* ECF No. 73. However, the Defendant merely posits that the Eastern District of California is a viable place of venue. He does not explain why this Court *should* transfer the case away from the location where, *inter alia*, the Defendant participated in a riot and attacked law enforcement officers. As all of the essential elements of the Defendant's offenses occurred in Washington D.C., this Court should deny the Defendant's motion.

### FACTUAL BACKGROUND

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the

U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to – and did – evacuate the chambers.

During the riot on January 6, 2021, the Defendant entered the restricted area on the west side of the U.S. Capitol Building, where he antagonized law enforcement officers attempting to establish and hold a protective police line, used a megaphone to encourage the mob, and attacked law enforcement officers using dangerous weapons including a large metal sign and bear spray. Based on his actions on January 6, 2021, the Defendant was charged with violations of 18 U.S.C. § 111(a) (Assault on a Federal Officer), 18 U.S.C. § 111(a) and (b) (2 counts – Assault on a Federal Officer with a Deadly or Dangerous Weapon); 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstructing an Official Proceeding); 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) ((Entering and Remaining in Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(2) and (b)(1)(A) (Disorderly Conduct in a Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(4) and (b)(1)(A) (Physical Violence in Restricted Area with a Deadly or Dangerous Weapon); 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct on Grounds), 5104(e)(2)(F) (Physical Violence on Grounds). *See* Superseding Indictment, ECF No. 39.

## ARGUMENT

The Constitution provides that "[t]he trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment similarly guarantees the right to be tried "by an impartial jury of the State and district wherein the

2

crime shall have been committed." U.S. Const. amend. VI.  These provisions provide "a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 (1958).  Transfer to another venue is constitutionally required only where "extraordinary local prejudice will prevent a fair trial."  *Skilling v. United States*, 561 U.S. 358, 378 (2010); *see* Fed. R. Crim. P. 21(a) (requiring transfer to another district if "so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there").  Additionally, a court may transfer the proceeding "to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).

Here, the Defendant does not argue that a change of venue is required to ensure a fair trial, as this Court has already considered and rejected that argument in an oral order issued on May 4, 2022.  Nor does the Defendant argue that the Court should, in its discretion, transfer the case pursuant to Fed. R. Crim. P. 21(b).  The Defendant does not even claim that Washington D.C. is not proper place of venue.  Instead, the Defendant asserts his offenses "began and were concluded" in California which would permit this Court to transfer venue under 18 U.S.C. § 3237(a) ("Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.").

The Defendant is correct that "venue may be proper in more than one district" if the acts and nature of the charge implicate more than one location.  *United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991); *see also United States v. Chin*, 981 F.2d 1275, 1278 (D.C. Cir. 1992) ("It is well established that continuing offenses may be prosecuted in any district in which

3

they 'continued.'"). However, assuming *arguendo* that the Defendant's criminal acts implicate California, Fed. R. Crim. P. 21 does not contemplate transferring venue solely because there are multiple locations where a crime could be charged, nor does the Defendant cite a single case where a Court changed venue under § 3237(a) merely because the Government could have brought a criminal proceeding in another district. To the contrary, where venue is appropriate in multiple locations, the Government then has its choice of forum. *See United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017) ("The Government has a choice of forum in which to prosecute but still ultimately bears the burden of establishing proper venue by a preponderance of the evidence."). As discussed *infra*, Washington D.C. is where all of the essential elements of the Defendant's criminal acts occurred, and where the effects of his crimes were felt. Accordingly, Washington, D.C., is the most appropriate, if not the only, place of venue for the Defendant's prosecution. *See United States v. Quinn*, 401 F. Supp. 2d 80, 87 (D.D.C. 2005) ("the constitutional provisions addressing venue speak only in terms of the public's interest in trying criminals in the vicinity where the criminal acts or omissions occurred (i.e., where the effects of the crime were felt)").

**I.     The Defendant's Crimes Were Committed in Washington D.C.**

As this Court has noted, "[c]riminal trials generally occur in the state and district where the offense was committed." *United States v. Nassif*, No. CR 21-421 (JDB), 2022 WL 4130841, at *8 (D.D.C. Sept. 12, 2022) (citing U.S. Const. art. III, § 2; Fed. R. Crim. P. 18.) When determining whether venue is proper, the Court looks to "'the *locus delicti'* (that is, the scene of the crime), which 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. El-Saadi*, 549 F. Supp. 3d 148, 156–57 (D.D.C. 2021) (quoting *United States v. Morgan*, 393 F.3d 192, 196 (D.C. Cir. 2004)).

4

As set forth in the Superseding Indictment, the scene of the crime in this case is Washington D.C. *See* ECF No. 39 (each count specifies that the offense occurred within the "District of Columbia."). Specifically, Counts One, Three and Four charge the defendant with three separate acts of assaulting, resisting, opposing, impeding, intimidating, or interfering with law enforcement officers while on Capitol Grounds. *Id*. at 1-3. Count Two charges the Defendant with obstructing, impeding, or interfering with an officer during a civil disorder, namely the January 6 riot at the Capitol. *Id*. at 2. Count Five charges the defendant with obstructing, influencing, or impeding a proceeding before Congress. *Id*. at 3. Counts Six, Seven, Eight, Nine, and Ten specifically relate to the Defendant's conduct while on the Capitol Grounds. *Id*. at 4-6. While the Defendant may have resided in California both before and after the events that took place on January 6, Defendant has not identified an essential element of any of the charged offenses that relate to conduct that occurred in California. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 119 S. Ct. 1239, 1241, 143 L. Ed. 2d 388 (1999) (finding venue is appropriate where in any district where "essential conduct elements" occur).

**II.     The Defendant's Discussion of Intent is a Red Herring.**

Instead of addressing the essential elements of the charged offenses, the Defendant argues that "location wherein the intent was formulated and initiated" was California, and that by returning home to California following the riot, "California becomes the district wherein the alleged offenses were completed." ECF No. 73 at at 7-8. Of course, it is completely irrelevant to the charged offenses that the Defendant eventually returned home following the riot. Moreover, while it is certainly possible that the Defendant's intent to commit his crimes began in California, the formation of intent in California is neither alleged in the indictment nor essential to the Government's case. Indeed, while the Statement of Facts touched briefly on the Defendant's travel

plans, proof of how the Defendant travelled is not a part of any of the charged offenses. And while the Defendant finds it important that he obtained one of the dangerous weapons used during the riot (bear spray) while still in California, the Defendant is not charged with illegally transporting bear spray. Moreover, Count Four of the superseding indictment does not allege that the Defendant intended to use bear spray against law enforcement officers at the time the bear spray was procured. ECF 39 at 3. It is enough for Count Four that on January 6 the Defendant had in his possession bear spray and used that spray to assault law enforcement officers. Put simply, none of the charges brought in the superseding indictment require that the Defendant travelled with "planning and forethought" to participate in the January 6 riot. *See* ECF No. 73 at 11 (arguing that the entirety of every charge is based on "planning and forethought" to travel from California).

Even if the Defendant's conduct in California ultimately has some relevance to this prosecution, it is notable that the Defendant cited no authority for the proposition that venue is proper where a criminal act is first contemplated but where the Defendant did not actually engage in criminal conduct or where the effects of that conduct were felt. As the Defendant conceded, the normal course is that "criminal venue is informed by where physical *conduct* occurred, and not where criminal intent was formed." ECF No. 73 at 9; citing *United States v. Wright*, No. 2:16-CR-46, 2016 WL 5864783, at *2 (D. Vt. Oct. 6, 2016) (quoting *United States v. Miller,* 808 F.3d 607, 615 (2d Cir. 2015); *see also United States v. Holcombe*, 883 F.3d 12, 15–16 (2d Cir. 2018) ("The offense begins where the interstate journey begins, regardless of whether the defendant had already formed an intent to violate the statute when the interstate travel began.").

Had the Government actually tried to prosecute the Defendant in California based on the argument that his intent to participate in a riot originated there, it is likely the Defendant would have moved for the dismissal of some if not all of the charges. First, the Defendant could have

6

argued that he travelled to Washington D.C. to exercise his constitutional rights at the "Stop the Steal" political rally that was held earlier on January 6, and did not intend to commit any criminal acts that day. Indeed, the Defendant appears to be expressly reserving this argument for trial. *See* ECF No. 72 at n.1 (noting that the Defendant is not admitting to "any action or sequence of actions" by filing this motion). Second, the Defendant could have argued that even if he developed the intent to march on the Capitol before leaving California, it would not mean he intended to commit any specific assaults while at the Capitol. For example, the elements of Count Three (18 U.S.C. § 111(a)(1) and (b)), which alleges assault with a large metal sign, has the following elements:

1) The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with a person as specified below;
2) The defendant did such acts forcibly;
3) The defendant did such acts voluntarily and intentionally;
4) The person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties, or was assisting officers of the United States who were then engaged in the performance of their official duties; and
5) In doing such acts, the defendant used a deadly or dangerous weapon or inflicted bodily injury.

Neither the intent element, essential conduct element, or the dangerous weapon element bare any relation to California, and the Defendant would likely have been successful in having the count dismissed. *See*, *e.g.*, *United States v. Montgomery*, 441 F. Supp. 2d 58, 59–60 (D.D.C. 2006) (where a crime occurs in more than one district "venue is proper in any district in which an essential element of the crime has occurred" but "'must be proper for each count of the indictment'") (quoting *United States v. Crop Growers Corp., et al.*, 954 F.Supp. 335, 351 (D.D.C.1997)).

Ultimately, while this Court need not decide whether the Government could have charged the Defendant in California, the Defendant certainly has not demonstrated that his criminal conduct was begun or completed in California. *See*, *e.g.*, *United States v. Cabrales*, 524 U.S. 1, 5, 118 S.

7

Ct. 1772, 1775, 141 L. Ed. 2d 1 (1998) (finding that Missouri was not a place of proper venue for money laundering offenses which were begun, conducted and completed in Florida). Meanwhile, there is no question about whether Washington D.C. is a proper place of venue, as it is the location of the essential conduct committed by the Defendant. *See United States v. Bowens*, 224 F.3d 302, 308–09 (4th Cir. 2000) (venue is limited to where "the essential conduct elements occur"). Frankly, the Defendant's contention that venue should be changed from where he allegedly physically assaulted law enforcement officers, and where those victims are located, borders on the absurd.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to transfer venue should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    /s/ *Lynnett M. Wagner*
        LYNNETT M. WAGNER
        Nebraska Bar No. 21606
        Assistant U.S. Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        Tel: (402) 661-3700
        Fax: (402) 661-3081
        E-mail:lynnett.m.wagner@usdoj.gov

        */s/ Benjamin Kringer*
        BENJAMIN E. KRINGER
        Detailed to the U.S. Attorney's Office
        for the District of Columbia
        D.C. Bar No. 482852
        601 D Street, N.W.
        Washington, DC 20001
        benjamin.kringer2@usdoj.gov
        (202) 598-0687