**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 21-CR-453 (JDB)** |
| | : | |
| **SEAN MICHAEL MCHUGH,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS SUPERSEDING INDICTMENT AS DEFECTIVE**

The United States of America respectfully submits this opposition to defendant Sean McHugh's Motion to Dismiss the Superseding Indictment as Defective.  ECF No. 70.

McHugh raises three arguments with respect to the Superseding Indictment (hereafter "the indictment").  First, he contends that every count of the indictment is impermissibly vague.  ECF No. 70 at 7-11.  Second, he contends that pepper spray and a large metal sign are, as a matter of law and irrespective of the evidence the government puts on at trial, not "dangerous weapons" under Section 1752(b)(1)(A) or Section 111(b) of Title 18.  ECF No. 70 at 11-17.  Finally, he argues that the Counts are multiplicitous.  ECF No. 70 at 17-18.  These arguments—many of which have been considered and rejected by other courts in this district—are meritless.

**BACKGROUND**

The defendant, who traveled to Washington D.C. from his home in California to participate in the events of January 6, 2021, entered the restricted area on the west side of the U.S. Capitol Building, where he antagonized law enforcement officers attempting to establish and hold a protective police line, used a megaphone to encourage the mob, and attacked law enforcement

officers using dangerous weapons including a large metal sign and bear spray.  Based on his actions on January 6, 2021, the defendant was charged with violations of 18 U.S.C. § 111(a) (Assault on a Federal Officer), 18 U.S.C. § 111(a) and (b) (2 counts – Assault on a Federal Officer with a Deadly or Dangerous Weapon); 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstructing an Official Proceeding); 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) ((Entering and Remaining in Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(2) and (b)(1)(A) (Disorderly Conduct in a Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(4) and (b)(1)(A) (Physical Violence in Restricted Area with a Deadly or Dangerous Weapon); 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct on Grounds), 5104(e)(2)(F) (Physical Violence on Grounds).  *See* Superseding Indictment, ECF No. 39.

## ARGUMENT

When considering a defendant's motion to dismiss an indictment, the court "is limited to reviewing the face of the indictment." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (quoting *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)) (emphasis in original). "[T]he indictment must be viewed as a whole and the allegations must be accepted as true at this stage of the proceedings." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011).

**I.      The Indictment Does Not Lack Specificity.**

McHugh first argues that the indictment generally "fails to describe in any meaningful way the acts that constitute the offense charged."  ECF No. 70 at 7.  According to McHugh, the indictment does not provide "fair notice of the charges alleged" as it does not identify the exact acts that McHugh engaged in that violate those statutes.  *Id.*at 8.

McHugh misunderstands the purpose of an indictment and the low bar an indictment must clear to satisfy the Federal Rules of Criminal Procedure and the Constitution.  As the D.C. Circuit

explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id.* at 124.  Indeed, "the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  "While detailed allegations might well have been required under common-law pleading rules, . . .  they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 110.  As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established.").  Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient.  *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Applying these principles, courts in this District have upheld the sufficiency of indictments far less specific than the Defendant's.  For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c).  The indictments provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id.* at 154.  As to the "when" of the offenses, the

indictments alleged that the offenses had occurred over a two- and nine-year period. *Id.* Finally, the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id.* Nonetheless, the indictments were sufficient.

Courts in this District have also upheld against specificity challenges indictments that arose out of the January 6, 2021 riot at the U.S. Capitol and were nearly identical to the indictment in this case. For example, in *United States v. Sargent*, Judge Hogan rejected a similar specificity challenge to nearly every charge included in McHugh's indictment: violations of Sections 111(a)(1), 231, 1752(a)(1), 1752(a)(2), and 1752(a)(4) of Title 18, as well as Section 5104(e)(2)(F) of Title 40. No. 21-CR-258, 2022 WL 1124817, at *3 (D.D.C. Apr. 14, 2022). In a careful and deliberate opinion, Judge Hogan concluded that every one of those six counts was properly alleged because each count stated the elements of the offense and, though the charging language closely mirrored the statute, no further factual allegations were required to provide notice or protect against double jeopardy concerns. *Id.* at *2-*10.

In *United States v. Williams,* Judge Berman Jackson similarly found that language charging a violation of 18 U.S.C. § 231(a)(3) that largely tracked the statute was sufficiently specific. No. 21-CR-618, 2022 WL 2237301, at *8 (D.D.C. June 22, 2022). She observed: "[T]he first paragraph of the indictment comprising Count I sets forth all of the elements of section 231(a)(3). . . . It thereby enables Williams to prepare a defense and plead that an acquittal or conviction is a bar to future prosecutions." *Id.* Judge Berman Jackson further noted, "There has been extensive discovery in this case, but in the event there is any lingering confusion about the particular facts underlying the charged offense, the remedy would be a request for a bill of particulars, not dismissal." *Id.*

The Section 231(a)(3) charging language and Section 1512(c)(2) charging language that passed muster in *Williams*, *see* No. 21-CR-618, ECF No. 27 at 1-2 (Count One and Two), is nearly identical to Count Two and Five of the indictment here, *see* ECF No. 39.  Likewise, the Section 111(a)(1) charging language, the Section 1752(a)(1), (a)(2), and (a)(4) charging language, and the Section 5104(e)(2)(F) charging language that all passed muster in *Sargent* are nearly identical to the charging language used in this case, with the primary exception being that McHugh's indictment is *more* specific because for several of those offenses it also includes the particular deadly and dangerous weapons allegedly used by McHugh, *see* ECF No. 39 at 2-6 (Counts Three, Four, Six, Seven, and Eight).

McHugh does not dispute that all of the elements of each offense are properly alleged in the indictment.  That, by itself, identifies the criminal conduct with which McHugh is charged.  As in *Sargent* and *Williams*, the indictment provides sufficient information to fairly inform McHugh of those offenses.  McHugh knows the day on which the alleged crimes occurred: January 6, 2021, which is alleged in all counts.  *See* ECF No. 39.  He knows that all charged conduct occurred in this District from the indictment's allegation.  *Id.*  Several of the Counts specifically refer to conduct on U.S. Capitol grounds, further narrowing the "where" of the charged crimes, and at a time when the Vice President was temporarily visiting.  Counts Three, Four, Six, Seven, and Eight refer to the specific type of "deadly or dangerous weapon" that McHugh allegedly used or carried: bear spray and a large metal sign.  *Id.*  The statutes charged are not so unusually vague that they require allegations beyond the elements of the offenses.  As this Court has noted, if a charging document "'echoes the operative statutory text while also specifying the time and place of the offense,' then it is generally sufficient."  *See United States v. Nassif*, No. CR 21-421 (JDB), 2022

WL 4130841, at *7 (D.D.C. Sept. 12, 2022) (quoting *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018)).

McHugh complains that the indictment does not provide the names of his victims, describe *how* his conduct was disorderly, disruptive, or violent, nor how a metal sign or bear spray constitute dangerous weapons, nor "how Mr. McHugh 'corruptly' engaged in any alleged offenses" or "'willfully, knowingly' and with 'intent' committed" the alleged offenses.  ECF No. 70 at 8-10. But McHugh's "complaint seems to result . . . from a general misunderstanding of the purpose of the indictment and, especially, from an inflated notion of what must be included therein." *Haldeman*, 559 F.2d at 124.   As the D.C. Circuit concisely explained in rejecting an identical argument in *Verrusio*:

> Verrusio contends that Count Two of the indictment failed to allege an official act because it failed to say "how Mr. Verrusio was going to use his position" to help United Rentals . . . .   The indictment certainly need not allege precisely how Verrusio contemplated [committing the crime].   Would he do it by himself or ask someone else to do it? Would that someone else be Colonel Mustard or Professor Plum? With a candlestick or a rope, in the library or the study? Answering those questions is not required at the indictment stage.

762 F.3d at 14-15.  For that reason, Judge Hogan rejected an argument just like McHugh's in *Sargent*, concluding that the indictment need not allege the specific facts detailing precisely how the government believes the defendant violated the statute.  *See* 2022 WL 1124817 at *3, *4, *7, and *10.  Instead, as noted above, an allegation of fact beyond the statute's elements is required only if "guilt depends so crucially upon such a specific identification of fact." *Id.* at *10 (quoting *Russell*, 369 U.S. at 764).  McHugh identifies no required factual allegation that is missing from any of the charged offenses.  Accordingly, his specificity argument fails.

## II.    The Government is Entitled to Prove that Bear Spray and a Metal Sign are Dangerous Weapons Under Sections 1752(b)(1)(A) and 111(b) of Title 18.

McHugh is charged in Counts Three and Four with "using a deadly or dangerous weapon, that is, a large metal sign" and "bear spray" to assault, oppose, impede, intimidate, or interfere with a law enforcement officer under Section 111(a)(1) and (b).  ECF No. 39 at 2-3.  McHugh is charged in Counts Six, Seven, and Eight with violating paragraphs (1), (2), and (4) of Section 1752(a); each of those Counts also alleges that McHugh "did use and carry a deadly and dangerous weapon, that is, bear spray and a metal sign," bringing the offense under 18 U.S.C. § 1752(b)(1)(A).  ECF No. 39 at 4-5.  McHugh contends that neither bear spray (referred to as pepper spray in Defendant's Motion), which he carried and discharged on U.S. Capitol grounds on January 6, 2021, nor the large metal sign that he helped to shove into a line of law enforcement officers, constitute a "dangerous weapon" under Section 1752(b)(1)(A) or Section 111(b), and insists that the Counts be dismissed before the government has put on evidence of their dangerousness.

A "dangerous weapon" for purposes of Sections 111 and 1752—neither of which define the term—is "an object capable of causing serious bodily injury or death to another person," where the defendant uses the object "in that manner."  *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002) (citation omitted).[1]  Courts have fleshed out the meaning of that phrase in those and other statutes by looking to the definition of that phrase contained in the U.S. Sentencing Guidelines, which defines the term in part as "an instrument capable of inflicting death or serious

---

[1] Looking at precedent outside of the Circuit, Chief Judge Howell held last year that a "deadly or dangerous weapon" under Section 111(b) of Title 18 means "any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person."  *United States v. Klein*, No. CR 21-236 (JDB), 2021 WL 1377128, at *6 (D.D.C. Apr. 12, 2021) (quoting *United States v. Bullock*, 970 F.3d 210, 215 (3d Cir. 2020) (citing *United States v. Sanchez*, 914 F.2d 1355, 1358-59 (9th Cir. 1990) (collecting cases))).  The government views that definition as essentially identical to that used in *Arrington* and the Sentencing Guidelines.

bodily injury." U.S.S.G. § 1B1.1 n.1(E). "Serious bodily injury" is defined in the Sentencing Guidelines to mean "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 n.1(M). McHugh agrees that the Sentencing Guidelines provide the appropriate definition of "dangerous weapon" under Sections 1752 and 111. ECF No. 70 at 13.

Courts in this District have concluded that pepper spray constitutes a "dangerous weapon" for purposes of the Bail Reform Act. *See United States v. Worrell,* No. 21-CR-292-1, Dkt. 51-1 (Tr. of March 19, 2021 Hr'g) at 62-63 ("For purposes of this hearing, the Court does view pepper spray gel, particularly—if the marketing can be believed, a particularly powerful pepper spray gel as a dangerous weapon; it can cause serious bodily injury not only to people who suffer from preexisting conditions, like asthma to make it difficult for them to breathe, but it can cause people who get it in their mouth, their nose, and their eyes to feel very serious stinging and be very uncomfortable unless they can promptly wash it out.").[2]   Judge Sullivan reached a similar conclusion in another case arising from a defendant's use of pepper spray against law enforcement at the U.S. Capitol on January 6, 2021. *United States v. Gieswein*, 2021 WL 3168148, at *14 (D.D.C. July 27, 2021), *aff'd*, 2021 WL 5263635 (D.C. Cir. Oct. 19, 2021).   In evaluating the defendant's motion to revoke pretrial detention, Judge Sullivan considered concluded that pepper spray was a dangerous weapon in part because it "is generally understood to be capable of causing 'extreme physical pain' and 'protracted' impairment of a bodily organ, such as coughing, choking, burning sensations of the eyes and nose, and exacerbation of pre-existing conditions such as

---

[2] Chief Judge Howell's ruling was also affirmed by the D.C. Circuit, though the holding that pepper spray gel constituted a dangerous weapon was reviewed only for plain error because Worrell failed to preserve the issue for appeal. *United States v. Worrell*, 848 F. App'x 5, *5 (D.C. Cir. 2021).

asthma." *Id.* (citing *United States v. Neill*, 166 F.3d 943, 949-50 (9th Cir. 1999) and *United States v. Bartolotta*, 153 F.3d 875, 879 (8th Cir. 1998)).

Numerous courts have likewise concluded that pepper spray (or "mace") is a dangerous weapon under the Sentencing Guidelines definition noted above.  In *Neill*, 166 F.3d at 949, the victim "suffered from exercise-induced asthma controllable with a inhaler after exercising," and a pepper-spray attack caused "severe asthma attacks for a week after the incident" and thereafter. *Id.*  The Ninth Circuit concluded that pepper spray was a "dangerous weapon" under the Guidelines because, as those facts showed, it was capable of causing "serious bodily injury":

> Initially, evidence at trial proved that pepper spray is capable of causing "extreme pain." [The victim] testified that after being sprayed she felt "like somebody took a match and stuck it up both sides of [her] nostrils ... it was like I was on fire." Additionally, [the victim's] testimony proves that pepper spray is capable of causing "protracted impairment of a function of a bodily organ." [The victim] testified that "I was not able to breath, you know, no air in. A lot of coughing mucus in—in my lungs. Its like your lungs are just being filled up slowly with liquid and you're not able to breathe in because there's no way for the air to come in." According to [the victim], this condition lasted for days and did not completely abate for two weeks. [The victim] testified that she is currently required to take five asthma relief pills a day for the rest of her life. Such lifelong severe asthma is surely a protracted impairment of a bodily organ, the lungs.

*Id.* at 949-50.

Similarly, in *United States v. Bartolotta*, 153 F.3d 875 (8th Cir. 1998), the Eighth Circuit concluded that "mace" is a dangerous weapon under the Sentencing Guidelines.[3]  The victim in that case "testified that she developed chemical pneumonia as a result of the [mace attack], and that she missed almost two weeks of work. [The victim] had to take daily steroid shots for over four months and steroid pills for one year to cleanse the mace from her system."  *Id.*  In *United*

---

[3] Mace is another term for pepper spray or OC spray.  *See, e.g., United States v. Dautovic,* 763 F.3d 927, 930 (5th Cir. 2014).

*States v. Melton*, 233 F. App'x 545 (6th Cir. 2007), the court affirmed the district court's classification of pepper spray as a "dangerous weapon" based on the following effects:

> The spray burns the face, nostrils, restricts breathing passages, and causes blindness. Most persons recover from its effects within 20 to 30 minutes, sooner with aid. However, persons with medical problems such as asthma have experienced damage to lungs when exposed to pepper spray.

*Id.* at 547; *see also United States v. Douglas*, 957 F.3d 602, 607 (5th Cir. 2020) (finding that pepper spray is a "dangerous weapon" and noting that "[t]wo victims were treated in a hospital after initial treatment in the prison infirmary, and one victim suffered protracted impairment in his right eye"); *Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1199-1200 (9th Cir. 2000) ("pepper spray is designed to cause intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx"), *cert. granted, judgment vacated*, 534 U.S. 801 (2001); *cf. United States v. Dukovich*, 11 F.3d 140, 142 (11th Cir. 1994) (tear gas was "dangerous weapon" under Sentencing Guidelines because it can cause "eye pain and a severe headache," and can cause vomiting, a rash, the loss of breath, or temporary damage to the eyes).

District courts have come to the same conclusion. *See United States v. Krueger*, No. 13-20242, 2013 WL 8584873, at *2 (E.D. Mich. July 10, 2013) (concluding that pepper spray was dangerous weapon under Sentencing Guidelines); *Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1261 (E.D. Wash. 2005). Others have similarly concluded that pepper spray is a "dangerous weapon" under similarly worded state statutes. For example, in *Norris v. Lafler*, No. 04-CV-72176, 2008 WL 786661 (E.D. Mich. Mar. 20, 2008), the district court found reasonable a state court's conclusion that a combination of tear gas and pepper spray was a "dangerous weapon" under a state statute requiring a "serious injury," because that combination had caused victims' "extreme eye pain and burning sensations that required two of them to seek medical treatment,"

one victim "need[ed] glasses to read and ha[d] blurred vision in his left eye" and cornea defects as a "result of being sprayed," and another could not wear contact lenses for a month.  *Id.* at *8-9.

Several of these cases, in concluding that pepper spray is a dangerous weapon, noted that pepper spray had in fact caused serious bodily injury to the victims in those cases.  McHugh, reviewing these cases, complains that the government, in the indictment, "failed to make a specific factual allegation as to how pepper spray in this case constitutes a dangerous weapon".  ECF No. 70 at 16.

But that complaint illustrates McHugh's misunderstanding of the definition of a "dangerous weapon," which infects his motion.  It is true that some cases have emphasized the actual serious injuries suffered by victims of pepper-spray attacks, for those actual injuries are plainly *sufficient* to show that pepper spray is a dangerous weapon.  But such injuries are not *necessary*.  As the Sentencing Guidelines, D.C. Circuit case law, and text of Sections 1752(b)(1)(A) and 111(b) make clear, the government need not show serious bodily injury—or even that the victim was touched by the dangerous weapon—in a particular case.  The Guidelines and this Circuit's *Arrington* case make this point obvious by stating that a weapon is dangerous if it is merely "*capable*" of inflicting "serious bodily injury" in the way it was used, even if it did not in fact do so.  U.S.S.G. § 1B1.1 n.1(E) (emphasis added); *Arrington*, 309 F.3d at 45.  Section 1752(b), meanwhile, applies an enhancement to anyone who "uses *or carries* a . . . dangerous weapon" during and in relation to the offense.  18 U.S.C. § 1752(b)(1)(A) (emphasis added).  By separately criminalizing the mere carrying of a "dangerous weapon," the statute makes abundantly clear that a weapon can be dangerous under Section 1752 without ever having been used at all in

the charged offense, much less without having hit a victim or caused serious bodily injury.[4] Finally, Section 111(b) states that a defendant will receive that subsection's enhanced penalty if he "uses a . . . dangerous weapon . . . *or* inflicts bodily injury," which presupposes that a defendant can use a dangerous weapon without causing bodily injury.  18 U.S.C. § 111(b).[5]  That the government need not show contact with a victim is even more apparent in other contexts.  A court would have no trouble concluding that a defendant used a dangerous weapon if a defendant drove a car directly at a law enforcement officer, even if the officer jumped away with just a few scratches (or if a defendant shot at a victim, but missed).  McHugh's case is logically indistinguishable. Thus, as long as the chemical spray used by McHugh *can* cause serious bodily injury when deployed in the manner used by McHugh, it is a dangerous weapon.

The cases cited earlier make clear that pepper spray can do so, and so is a dangerous weapon, for three reasons.  First, it is capable of causing an "injury involving extreme physical pain"—typically extreme burning pain in the eyes, nose, throat, or lungs—as the Ninth Circuit held in *Neill*.  166 F.3d at 949 ("pepper spray is capable of causing 'extreme pain'").  Second, pepper spray can cause "protracted impairment of a function of a bodily member [or] organ," as evidenced by the "lifelong severe asthma" suffered by the victim in *Neill*, 166 F.3d at 950 (finding that to be "surely a protracted impairment of a bodily organ, the lungs"), the "chemical pneumonia"

---

[4] Unlike Section 1752(b)(1)(A), Section 111(b) only applies if the defendant "uses" the dangerous weapon.  18 U.S.C. § 111(b).  Thus, while a canister of pepper spray (like a firearm) may be a "dangerous weapon" under Section 1752(b)(1)(A) and Section 111(b) even if never used, the defendant could only be convicted of the latter Section 111(b) charge if he used the pepper spray in a way that is dangerous (e.g., by discharging it).

[5] The enhanced penalty provision in Section 1752(b) operates similarly: it applies to the defendant's use or carrying of a dangerous weapon *or* where the "the offense results in significant bodily injury."  18 U.S.C. § 1752(b)(1)(B).  That further makes clear that significant bodily injury is not required to show that the defendant used or carried a dangerous weapon, because otherwise the significant bodily injury provision would be superfluous.

that forced the victim in *Bartolotta* to miss two weeks of work and receive treatment for a year, 153 F.3d at 879, the "blurred vision" and cornea defects suffered by the victim in *Norris*, 2008 WL 786661 at *8, or the sustained vision impairment in *Douglas*, 957 F.3d at 604.  Finally, pepper spray can require "medical intervention," such as the doctor's visit and prescriptions in *Neill*, the steroid shots and pills in *Bartolotta*, or the medical treatment in *Norris* and *Douglas*.

McHugh complains that these cases did not hold that pepper spray is *always* a dangerous weapon as a matter of law, and instead "have concluded, based on the individualized facts of those cases, that pepper spray was a dangerous weapon in those cases." ECF No. 70 at 15.  But it is not the government's burden at this stage to prove that pepper spray is dangerous as a matter of law; it is McHugh's burden to prove that pepper spray is *not* dangerous as a matter of law—that is, that it cannot be deemed dangerous regardless of the testimony at trial.  At the motion to dismiss stage, the question for the Court is narrow—whether the government *could* prove, "based on the individualized facts" elicited at trial, that pepper spray is a dangerous weapon.  *United States v. Yakou*, 428 F.3d 241, 246–47 (D.C. Cir. 2005) (stating that dismissing an indictment pretrial based on alleged insufficiency of the evidence is unwarranted unless "material facts are undisputed and only an issue of law is presented"); *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ( "Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment").  As a result, McHugh's concession that the government *has* proven in numerous cases at trial that pepper spray is a dangerous weapon dooms McHugh's argument that the government categorically could not do so here.

As McHugh notes, two courts have held that mace or pepper spray does not constitute a "dangerous weapon," but those cases again underscore why McHugh's argument cannot succeed

at this stage.  Those courts' holdings were specifically tied to the *evidence* of dangerousness put on by the government in those cases.  Thus, in *United States v. Harris*, 44 F.3d 1206 (3d Cir. 1995), the Court concluded that, by sentencing, some of the government's evidence of dangerousness—a competitor's pamphlet describing a different type of mace—"lacked sufficient indicia of reliability," and that the government otherwise had offered only the product's promotional literature, which was insufficient to establish that mace was a dangerous weapon.  *Id.* at 1216.  Similarly, in *United States v. Perez*, the case on which McHugh primarily relies, the Court noted that "the evidentiary record is silent as to the form or nature of the pepper spray, its chemical composition, the strength or concentration of the active agent, the size of the can, whether the spray mechanism was functional, or the distance or velocity the mechanism was designed to achieve" and that the government did not "present any evidence on the dangerousness of pepper spray generally" before the district court.  519 F. App'x 525, 527-28 (11th Cir. 2013).  The government had relied exclusively on the brand name of the canister and a warning on its label.  *Id.* at 528.

But neither of those cases was decided on a motion to dismiss the indictment before trial, and neither suggests that the government was required to allege detailed, extensive facts about a dangerous weapon in the charging instrument.  Those cases instead hold only that if the government offers essentially no *evidence* of pepper spray's dangerousness other than marketing materials, it may fail to qualify as a dangerous weapon.  But that can only be determined after the government puts on its evidence.  McHugh seems to agree, stating that "[f]inding pepper spray to be a dangerous weapon requires a case-specific factual showing by the Government."  ECF No. 70 at 14.  Thus, to the extent they are relevant at all, *Harris* and *Perez* imply that the dangerousness question should be evaluated by the jury or judge after the government puts on its evidence.

Neither *Harris* nor *Perez* (nor any other case cited by McHugh) provides any support for the idea McHugh espouses in his motion: that the Court can dismiss, at the indictment stage, a charge with a dangerous-weapon enhancement on the ground that the government has not alleged in the indictment all of the detailed evidence of that weapon's dangerousness.

Finally, the additional "facts" McHugh includes in his motion relating to pepper spray should be disregarded at this procedural stage. McHugh mentions, for example, U.S. Capitol rules relating to pepper spray, and other factual assertions related to pepper spray's use and efficacy that have no source.[6] But "[i]n resolving a motion to dismiss an indictment, the truth of the factual allegations proffered by the government may be assumed," *United States v. Pettaway*, 297 F. Supp. 3d 137, 142 (D.D.C. 2018), and the Court cannot dismiss an indictment based on competing evidence proffered by a defendant, *see United States v. Safavian*, 429 F. Supp. 2d 156, 163 (D.D.C. 2006) (stating that the court could not "properly consider" evidence submitted by the defendant "in evaluating a motion to dismiss the indictment" because material facts remain in dispute). Instead, at the motion to dismiss stage, the Court is limited to determining whether the government's indictment's allegations *could* be proven at trial. Here, as the numerous cases cited above show, the government at least could establish pepper spray's dangerousness at trial. It is entitled to the opportunity to do so.

That same reasoning applies to McHugh's unsupported claim that "signs, regardless of their material, are not inherently dangerous or deadly items." ECF No. 70 at 12. It is not the government's burden at this stage to prove that a large metal sign is dangerous as a matter of law; it is McHugh's burden to prove that a large, metal sign could never be dangerous as a matter of

---

[6] *E.g.*, ECF No. 70 at 12 ("Pepper Spray is used by thousands of police departments, prisons and for personal self-defense as a non-lethal, non-dangerous method of seeking arrest compliance or deterrence of an action.")

law.  *See Yakou*, 428 F.3d at 246-47.  Of course, numerous courts have, based on the particularized facts of the case, found that large, heavy, or metal objects are, or at least could be, dangerous weapons.  Indeed, this Court has specifically noted that the assault with the same large metal sign used by McHugh created a significant risk of injury.  *See United States v. Padilla*, No. 1:21-cr-00214, ECF No. 24 at 12 (D.D.C. May 4, 2021) (Bates, J.) ("[Padilla] forcefully … helped to successfully knock down that barricade with a large metal sign.  Those actions were violent, persistent, and created a real risk of injury to others."); *see also United States v. Whitton*, 534 F. Supp. 3d 32, 41 (D.D.C. 2021) (defendant "carried and used a metal crutch as a dangerous weapon during the riot"); *United States v. Dunnaway*, 88 F.3d 617, 619 (8th Cir.1996) (affirming dangerous weapon enhancement for use of bottle and boots); *United States v. Sorensen*, 58 F.3d 1154, 1161 (7th Cir.1995) (affirming dangerous weapon enhancement for use of concrete block); *United States v. Reese*, 2 F.3d 870, 894-96 (9th Cir.1993); *United States v. Williams*, 954 F.2d 204, 206-08 (4th Cir.1992) (affirming dangerous weapon enhancement for use of metal chair); *United States v. Musser*, 873 F.2d 1513, 1518 (D.C. Cir. 1989) (approving "the requirement that a demonstrator maintain physical contact with his or her sign" as a "means of ensuring that signs are not turned into weapons" during demonstrations); *United States v. Johnson*, 324 F.2d 264, 266 (4th Cir. 1963) (a metal and plastic chair qualifies as a dangerous weapon when "wielded from an upright (overhead) position and brought down upon the victim's head"). [7]

---

[7] In *United States v. Marshall Neefe et al*, 21-cr-567 (RCL), defendants Marshall Neefe and Charles Bradford Smith both pleaded guilty to violations of, among other charges, 18 U.S.C. § 111(a).  As part of their plea agreements, both Smith and Neefe agreed that the large metal billboard they shoved at police officers on January 6, 2021 was a dangerous weapon for the purposes of U.S.S.G § 2A2.2(b)(2)(B).  ECF 66 at 3; ECF 78 at 3.  Judge Lamberth adopted this position when calculating the appropriate offense category for each defendant, finding that the billboard was a dangerous weapon and assessing three additional points pursuant to U.S.S.G § 2A2.2(b)(2)(B).  The defendant here is charged with the utilizing the same item in effectively the same manner.

**III.**   **The Indictment's Counts Are Not Multiplicitous.**

McHugh also briefly asserts that the indictment's counts are multiplicitous.  ECF No. 70

at 18.  Specifically, McHugh argues that Five, Seven and Nine refer to the same offense, while

Counts One, Three Four Eight and Ten refer to the same conduct, and are therefore multiplicitous

of one another.  *Id.*  McHugh is wrong, and obviously so.

A defendant may be convicted of and sentenced under different statutory provisions for

multiple offenses arising out of the same single act or course of conduct so long as Congress

authorized the imposition of such multiple punishments.  *See United States v. McLaughlin*, 164

F.3d 1, 8 (D.C. Cir. 1998) ("If the legislature intends to impose multiple punishment, imposition

of such sentences does not violate Double Jeopardy.").  "To determine multiplicity vel non, courts

generally apply the *Blockburger* test: '[W]here the same act or transaction constitutes a violation

of two distinct statutory provisions, the test to be applied to determine whether there are two

offenses or only one, is whether each provision requires proof of a fact which the other does not,'

i.e., whether either is a lesser included offense of the other."  *United States v. Mahdi*, 598 F.3d

883, 888 (D.C. Cir. 2010) (quoting *United States v. Weathers*, 186 F.3d 948, 951 (D.C. Cir. 1999),

and *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  If the two offenses each require

proof of a fact the other does not, then the charges are not multiplicitous.  *Id.* at 890.[8]  The

*Blockburger* "test focuses on the statutory elements of the offense, not on the proof offered in a

---

[8] On the other hand, if two offenses fail the *Blockburger* test—because one is a lesser-included
offense of the other—that is not the end of the inquiry.  In that scenario, the "*Blockburger* test . . .
provides only a canon of construction, not a 'conclusive presumption of law,' *id.* at 888 (quoting
*Garrett v. United States*, 471 U.S. 773, 779 (1985)), because there "'is nothing in the Constitution
which prevents Congress from punishing separately each step leading to the consummation of a
transaction which it has power to prohibit and *punishing also the completed transaction.*'"  *Id.*
(quoting *Garrett*, 471 U.S. at 779) (emphasis in original).  Here, the offenses clearly each require
proof of a fact the others do not, so it is not necessary to conduct this further analysis.

given case." *United States v. McLaughlin*, 164 F.3d 1, 8 (D.C. Cir. 1998).  Thus, it is irrelevant whether there is significant overlap in the factual proof of each count at trial, or even whether two counts "are based upon the exact same set of facts and circumstances," as long as each count's elements require proof of a fact that the others do not.  *United States v. Manafort*, 313 F. Supp. 3d 311, 314 (D.D.C. 2018); *see id.* ("[T]he test for multiplicity is not whether two counts are based on the same set of facts; rather, it is whether the statutory elements of the two offenses are the same.").

Here, McHugh's multiplicity arguments fail because each of the offenses charged in the indictment "requires proof of a fact which the other does not."  *Blockburger*, 284 U.S. at 304. Indeed, these are not close questions—which is likely why McHugh spends but a page on the argument, does not even attempt to evaluate or analyze the statutes' elements, and cites nothing to support his claim.  Many of the Counts require proof of multiple facts not required by the other Counts, and all require proof of at least one.  Thus, the indictment satisfies *Blockburger*.

First, Count Six charges a violation of Sections 1752(a)(1) and (b)(1)(A) of Title 18, which applies to a defendant who "knowingly enters or remains in any restricted building or grounds without lawful authority to do so" while "us[ing] or carr[ying] a deadly or dangerous weapon."  18 U.S.C. § 1752(a)(1), (b)(1)(A).  The elements of that offense, as charged here with the dangerous weapon enhancement, are:

1) The defendant entered or remained in a restricted building or grounds without lawful authority to do so;
2) The defendant did so knowingly;
3) The defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Seven charges a violation of Sections 1752(a)(2) and (b)(1)(A), which applies to a defendant who "knowingly, and with intent to impede or disrupt the orderly conduct of

Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions," while "us[ing] or carr[ying] a deadly or dangerous weapon."  18 U.S.C. § 1752(a)(2), (b)(1)(A).  The elements of that offense, as charged here with the dangerous weapon enhancement, are:

1) The defendant engaged in disorderly or disruptive conduct;
2) The defendant did so knowingly and with intent to impede or disrupt the orderly conduct of government business or official functions;
3) The conduct was in, or within such proximity to, a restricted building or grounds;
4) The defendant's conduct in fact impeded or disrupted the orderly conduct of government business or official functions;
5) The defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Eight charges a violation of Sections 1752(a)(4) and (b)(1)(A) of Title 18, which applies to a defendant who "knowingly engages in any act of physical violence against any person or property in any restricted building or grounds" while "us[ing] or carr[ying] a deadly or dangerous weapon."  18 U.S.C. § 1752(a)(4), (b)(1)(A).  The elements of that offense, as charged here with the dangerous weapon enhancement, are:

1) The defendant engaged in an act of physical violence against any person or property;
2) The defendant did so knowingly;
3) The defendant did so in a restricted building or grounds;
4) The defendant used or carried a deadly or dangerous weapon during and in relation to the offense.

Count Nine charges a violation of Section 5104(e)(2)(D) of Title 40, which applies to a defendant who "willfully and knowingly … engage[s] in disorderly and disruptive conduct … in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress."  The elements of the offense are:

1) The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;

2)     The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

3)     The defendant did so willfully and knowingly.

Count Ten charges a violation of Section 5104(e)(2)(F) of Title 40, which applies to a defendant who "willfully and knowingly. . . (F) engage[s] in an act of physical violence in the Grounds or any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(F). The elements of that offense are:

1)     The defendant engaged in an act of physical violence;[9]

2)     The defendant did so willfully and knowingly;

3)     The defendant did so in the Grounds or any of the Capitol Buildings;

These counts are not multiplicitous. Count Six requires proof that the defendant was "without lawful authority" to be in any restricted building or grounds (element one of Count Two). Counts Four, Six, and Eight do not require proof of that fact. Count Seven, meanwhile, requires proof that the defendant engaged in "disorderly or disruptive conduct" (element 1 of Count Four), which Counts Six, Seven and Ten do not require. Count Seven also requires proof that the defendant's conduct "in fact impede[d] or disrupt[ed] the orderly conduct of government business or official functions", which Counts Six, Eight, Nine and Ten do not. Count Eight requires proof that the defendant engaged in "an act of physical violence," which Counts Six, Seven and Nine do not require. It also requires proof that the defendant "used or carried a deadly or dangerous weapon during and in relation to the offense," which Count Nine and Ten do not require. Counts    Six, Seven and Eight also each require proof that a defendant "used or carried a deadly or dangerous weapon during and in relation to the offense," which is not required to prove the violation of Count Nine or Ten. Count Nine requires an "intent to impede, disrupt, or disturb," a requirement not

---

[9] "Act of physical violence" is defined in Section 5104(a)(1) to mean "any act involving— (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property."

found in Counts Six, Seven, Eight or Ten.  And Counts Nine and Ten requires proof that the defendant acted "willfully and knowingly," a mens rea requirement distinct from Counts Six, Seven and Eight.

Additionally, Count Two, which charges the defendant Section 231(a)(3) under Title 18 with committing or attempting to commit an act to "obstruct, impede, or interfere with a law enforcement officer … lawfully engaged in the lawful performance of his official duties, incident to and during the commission of a civil disorder", is not multiplicious with other Counts in the indictment.  The elements of the offense are

1) The defendant knowingly committed an act or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;
2) At the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and
3) The civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

Aspects of all three elements of Count Two are not found in the remaining Counts, specifically the existence of a civil disorder, the intended purpose of obstructing, impeding or interfering with a law enforcement officer, and an impact on commerce or a federally protected function.

Count Five, which charges the defendant obstruction of justice under Section 1512(c)(2) under Title 18, has the four following elements:

1) The defendant did or attempted to alter, destroy, mutilate, or conceal, a record, document, or other object, and;
2) The defendant acted knowingly;
3) The defendant acted corruptly; and
4) The defendant acted with the intent to impair the object's integrity or availability for use in an official proceeding.

Count Five also has multiple elements that are not found in any of the remaining Counts, including the requirement of a corrupt act, an affected record, and the intent to impair an official proceeding.

Finally, Count One (18 U.S.C. § 111(a)(1), Count Three (18 U.S.C. 111(a)(1) and (b)) and Count Four (18 U.S.C. § 111(a)(1) and (b)) have the following elements:

1) The defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer as specified below;
2) The defendant did such acts forcibly;
3) The defendant did such acts voluntarily and intentionally;
4) The person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties, or was assisting officers of the United States who were then engaged in the performance of their official duties; and
5) In doing such acts, the defendant used a deadly or dangerous weapon or inflicted bodily injury [Counts Three and Four only].

Counts One, Three, and Four require that the specified conduct had to have been "forcibly" directed against an "officer or an employee of the United States who was then engaged in the performance of his official duties, or was assisting officers of the United States who were then engaged in the performance of their official duties." As addressed *supra*, Counts Two, Six, Seven, Eight, Nine and Ten do not share these requirements. Additionally, Counts One, Three and Four are not multiplicitous of each other as they relate to separate and distinct attacks on law enforcement by McHugh. *See United States v. Wesley,* 798 F.2d 1155 (8th Cir. 1986) (separate assault counts for the assault of different guards during a prison riot is not multiplicitous); *United States v. Hodges,* 436 F.2d 676 (10th Cir.), *cert. denied,* 403 U.S. 908, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971). Moreover, Count One, unlike Counts Three and Four, does not allege the use of a dangerous weapon or require proof of the same. *See* ECF No. 39 at 1. Count Three, however,

requires that the defendant used a "large metal sign" during an assault while Count Four requires that the Defendant used "bear spray" during an assault.  *Id*. at 2-3.

McHugh's essential complaint is that the charges all "seemingly refer to Mr. McHugh's alleged presence at the Capitol Grounds on January 6."  ECF No. 70 at 18.  But they all require proof of more than mere "alleged presence" on Capitol grounds.   And in any event, the *Blockburger* multiplicity analysis refers to the elements of the offenses, not whether a single act could violate multiple statutes.  The very premise of *Blockburger* and its progeny is that the "same act or transaction"—here, McHugh's presence and violence at the Capitol Grounds—can form the basis of multiple criminal charges so long as each Count requires proof of a fact that the others do not, because in that circumstance Congress has determined that a single act may constitute multiple crimes.  *Mahdi*, 598 F.3d at 888; *Manafort*, 313 F. Supp. 3d at 314 (counts can be "based upon the exact same set of facts and circumstances," if *Blockburger* is satisfied).  That McHugh's conduct on January 6, 2021 has led to multiple related charges is utterly ordinary in a criminal case.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that McHugh's Motion to Dismiss the Indictment be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:      /s/ *Lynnett M. Wagner*
LYNNETT M. WAGNER
Nebraska Bar No. 21606
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (402) 661-3700
Fax: (402) 661-3081
E-mail:lynnett.m.wagner@usdoj.gov


*/s/ Benjamin Kringer*
BENJAMIN E. KRINGER
Detailed to the U.S. Attorney's Office
for the District of Columbia
D.C. Bar No. 482852
601 D Street, N.W.
Washington, DC 20001
benjamin.kringer2@usdoj.gov
(202) 598-0687