UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 21-CR-453 (JDB) |
| : | |
| SEAN MICHAEL MCHUGH, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR A TEMPORARY RELEASE

This Court should deny defendant Sean Michael McHugh's Motion for Temporary Release Pursuant to 18 U.S.C. § 3142(i) ("Motion"), because he has failed to show that his release is necessary for the preparation of his defense or any other compelling reason. The factors outlined in 18 U.S.C. § 3142(g), which inform the Court's analysis, continue to weigh heavily in favor of detention. Additionally, nothing about the Defendant's detention at the Central Treatment Facility (CTF) violates due process or requires the extraordinary remedy of temporary release under § 3142(i).

## BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and

1

ensure the safety of elected officials.

During the riot on January 6, 2021, the Defendant entered the restricted area on the west side of the U.S. Capitol Building, where he repeatedly antagonized law enforcement officers attempting to establish and hold a protective police line, used a megaphone to encourage the mob, and attacked law enforcement officers with dangerous weapons—namely, a large metal sign and bear spray. Based on his actions on January 6, 2021, the Defendant was charged with violations of 18 U.S.C. § 111(a) (Assault on a Federal Officer), 18 U.S.C. § 111(a) and (b) (2 counts – Assault on a Federal Officer with a Deadly or Dangerous Weapon); 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstructing an Official Proceeding); 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) ((Entering and Remaining in Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(2) and (b)(1)(A) (Disorderly Conduct in a Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(4) and (b)(1)(A) (Physical Violence in Restricted Area with a Deadly or Dangerous Weapon); 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct on Grounds), 5104(e)(2)(F) (Physical Violence on Grounds). *See* Superseding Indictment, ECF No. 39.

**Procedural History Relating to Detention**

The Defendant was arrested on May 27, 2021, in the Eastern District of California. He appeared before Magistrate Judge Kendall J. Newman on June 1, 2021, for a detention hearing. After hearing evidence and argument, Judge Newman ordered the Defendant detained pending trial, finding that he was a flight risk and posed a significant danger to the community. *United States v. Sean Michael McHugh*, Docket 2:21-MJ-89, ECF No. 4 and 6 (E.D.C.A.). Judge Kendall specifically ruled that:

> I think that Mr. McHugh should be detained with the information I currently have as both a flight risk but especially as a danger…. This

>isn't the situation where the guy had a few beers and went out and did something stupid. He flew across the country and was involved in this incident and involving it with bear spray and firing up the crowd, et cetera. So that's a significant concern. *Id*. ECF No. 15-1 at 16-17.

On June 11, 2021, the Defendant sought pretrial release from detention and filed a Motion to Review the Magistrate Judge's Detention Decision (ECF No. 15). On June 25, 2021, Chief Judge Howell heard argument and, in an oral ruling from the bench, affirmed the Magistrate Judge's finding that pretrial detention was warranted.

The Defendant now comes before this Court and seeks pretrial release for a third time, arguing that under Section 3142(i) the conditions of his confinement at CTF outweigh the risk posed to the community from his release.

## LEGAL STANDARD

Section 3142(i) "provides a distinct mechanism for temporarily releasing a detained defendant, in a manner that has nothing to do with a revisiting of the initial detention determination." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). However, the burden of justifying temporary release pursuant to § 3142(i) lies with the defendant. *Id.* Under subsection (i), a defendant otherwise subject to pretrial detention may be granted temporary release by showing both (1) that he would be released to "the custody of a United States marshal or another appropriate person," and (2) that the temporary release is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i); *see Lee*, 451 F. Supp. 3d at 5. The standard for an "appropriate person" under § 3142(i), is the same standard applicable to third-party custodians under § 3142(c)(1)(B)(i). *United States v. Thorne*, No. 1:18-cr-389 (BAH), 2020 WL 1984262, at *2 (D.D.C. Apr. 27, 2020). To determine whether temporary release is

"necessary" or whether "another compelling reason" exists, courts "must be mindful of the factors set out in 18 U.S.C. § 3142(g)." *Id.* at *2. 18 U.S.C. § 3142(i). Indeed, the Court's consideration of the § 3l42(g) factors informs whether the purported reason for release is "compelling." *United States v. Gassaway*, No. 1:21-cr-00550-RCL, ECF No. 22 at 2 (D.D.C. Nov. 18, 2021) (citing *United States v. Otunyo,* No. 18-CR-251 (BAH), 2020 WL 2065041, at *8 (D.D.C. Apr. 28, 2020)).

Ultimately, release under § 3142(i) is granted only "sparingly" and in extraordinary circumstances, such as a where a defendant is "suffering from a terminal illness or serious injuries." *United States v. Lee*, 451 F. Supp. 3d 1, 5–6 (D.D.C. 2020) quoting *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020).

## ARGUMENT

### I. The 18 U.S.C. § 3142(g) Factors Continue to Weigh in Favor of Detention

The Defendant fails to point to any new or material changes in the § 3142(g) factors,[1] and

---

[1] Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are "the most serious' compared to other federal offenses," including crimes of violence. *See United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). For pretrial detention based on dangerousness, the government must prove "an arrestee presents an identified and articulable threat to an individual or the community . . . ." *United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021)* (quoting *Salerno*, 481 U.S. at 751). There are four factors to be considered when determining whether the appearance of the defendant and the safety of any person in the community be reasonably assured: (1) "the nature and the circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(l)-(4). The government must prove dangerousness by clear and convincing evidence and flight risk by a preponderance. *See* 18 U.S.C. § 3142(e)(1); *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Circ. 1996).

4

those factors continue to weigh in favor of detention. Nothing has changed related to the nature and circumstances of the offense since the Defendant was twice found to be a flight risk and a danger to the community.

While Defendant's conduct was described in the Government's June 17, 2021 Response to the Defendant's Motion to Review the Magistrate Judge's Detention Decision ("Response", ECF No. 16), incorporated herein by reference, the Government will briefly address why the § 3142(g) factors support continued detention as the question is before this Court for the first time.

(1) <u>The Nature and Circumstances of the Offenses Charged</u>:

When considering the nature and circumstances of the offense, there are six guideposts that assist with assessing the severity of the conduct among the hundreds of defendants who now face charges related to the events of January 6, 2021, including: (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protesters before, during, or after the riot; (5) whether the defendant played any leadership role or encouraged other rioters misconduct; and (6) the defendant's "words and movements during the riot"—e.g., whether the defendant "remained only on the grounds surrounding the Capitol", damaged property, stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." *United States v. Chrestman*, 2021 WL 765662 *8 (D.D.C. February 26, 2021) (Howell, C.J.); *see also United States v. Caldwell*, 2021 WL 2036667 (D.D.C. May 21, 2021) (Kollar-Kotelly, C.). McHugh meets all six criteria.

McHugh is charged with multiple felonies, including three separate instances of attempting

to breach a perimeter established by law enforcement, two of which involve the use of a dangerous weapon—namely, bear spray and a large metal sign. The crimes alleged are serious and carry severe penalties: up to five years' imprisonment for violation of 18 U.S.C. § 231(a)(3); 20 years' imprisonment for violation of 18 U.S.C. § 111(a)(1), (b); and ten years' imprisonment for violations of 18 U.S.C. §1752(a)(1), (2), (4) and (b)(1)(A). Violent felonies, like those charged here, weigh more heavily in favor of pretrial detention. *See* 18 U.S.C. § 3142(g)(1) (Courts are directed to consider whether a defendant has been charged with a crime of violence). Here, McHugh openly deployed dangerous weapons while assaulting, resisting, or impeding law enforcement officers who were engaged in their duties, and he conducted these assaults in full view of many officers, fellow rioters, and cameras.

In particular, the Defendant sprayed a line of law enforcement officers with a can of bear spray containing a warning label stating "Hazzard to Humans … irreversible eye damage if sprayed in the eye." *See* Response, ECF No. 16 at 7-11. The Defendant also directed and assisted rioters in using a large metal sign to ram law enforcement officers. *Id*. at 5-6. This Court, and other courts in the District, have detained Jan 6 rioters who have engaged in similar conduct. *See United States v. Padilla*, No. 1:21-cr-00214, ECF No. 24 at 12 (D.D.C. May 4, 2021) (Bates, J.) ("[Padilla] forcefully … helped to successfully knock down that barricade with a large metal sign. Those actions were violent, persistent, and created a real risk of injury to others."); *see also United States v. Caldwell*, 2021 WL 2036667 (D.D.C. May 21, 2021) (Kollar-Kotelly, C.) (chemical spray used by defendant against officers on January 6th was a dangerous weapon warranting detention); *United States v. Owens*, 1:21-cr-00286, ECF No. 26 (May 28, 2021) (Howell, C.J.) ("In addition, defendant does not appear to have come to the Capitol prepared for conflict, but instead "dressed

casually," wearing "no body armor or tactical gear," … and he brought no ***conventional dangerous weapon*** for offensive or defensive uses, such as a taser, firearm, baton, axe or ***chemical spray***.") (emphasis added); *United States v. Neefe*, 1:21-cr-00567, ECF No. 56 at 7 (D.D.C. May 4, 2021) (Lamberth, R.) (denying release where Neefe, like McHugh, helped ram law enforcement officers with the large metal sign);² *United States v. Brown*, No. 21-MJ-565 (ZMF), 2021 WL 4033079, at *5 (D.D.C. Sept. 3, 2021), aff'd, No. 21-3063, 2021 WL 5537705 (D.C. Cir. Nov. 17, 2021) ("[w]ielding pepper spray during the riot would be serious by itself; Brown's use of pepper spray against law enforcement is even more troubling").

The evidence in this case also demonstrates that the Defendant was constantly at the front of the rioters, encouraging other rioters forward and directly confronting law enforcement officers. For example, prior to the riot, the Defendant was captured in open source video using a megaphone to encourage people attending the "Stop the Steal" rally to march on the Capitol, claiming they had "power in numbers."³ Then, while on Capitol Grounds, he used the megaphone to encourage rioters to advance on police, including: "Come on! Let's go!"; "Come on you guys, come on you guys! Bring it in!" *See* Response, ECF No. 16 at 3. The Defendant also shouted directly at law enforcement officers through his megaphone, including: "You guys like protecting pedophiles?"; "You're protecting communists!"; "I'd be shaking in your little shit boots too"; "There is a second

---

² Further emphasizing the seriousness of the defendant's offenses, both Marshall Neefe and Charles Bradford Smith were sentenced to 41 months of incarceration for violations of 18 U.S.C. § 111(a) and 18 U.S.C. § 1512(k) in 21-cr-567 based on conduct very similar to that alleged against the defendant, including shoving the same billboard at the line of police officers on January 6, 2021.

³ *See* https://www.gettyimages.com/detail/video/storming-of-us-capitoltrump-supporters-at-save-america-news-footage/1296159129 at 2:03.

7

amendment behind us, what are you going to do then?"; "You ain't holding the line!" *Id*. at 3-4. The Defendant also gave rioters specific instructions as to the large metal sign that he ultimately helped push into police, screaming into his megaphone, "Yeah bitch! Put it up there! Put it up there!" *Id*. at 5. The Defendant's role in encouraging and directing other rioters on January 6 is a significant factor warranting detention. *See Chrestman*, 1:21-mj-00218, at *30 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers."). Thus, the nature and circumstances of the offense demonstrate that no conditions of release would protect the community

(2) The Weight of Evidence Against the Person:

The weight of the evidence against the Defendant is strong: McHugh's violent words and actions at the Capitol were captured on film, and his bear spray, holster, and megaphone were recovered in the search of is home. After the riot the Defendant even bragged on social media about his assaults on law enforcement, writing that he "unloaded a whole can of bear spray on a line of cops I got three of them down really really good."

(3) History and Characteristics of the Person:

The Defendant has a remarkably long and disturbing criminal history, which lists arrests for violent offenses such as home invasions, burglary, domestic violence, destruction of property, and rape offenses, as well as at least twelve convictions for offenses such as vandalism, theft, and statutory rape. For example, in 2009, McHugh was arrested and charged with "Rape: Force/Fear/Etc." and "Rape: Victim Drugged." One year later, after an arrest for failure to appear, he plead to "Sex with minor + or -3 years" and "Contribute to Delinquency of a Minor." The

8

Defendant also has at least three convictions for driving under the influence on his record, including a sentence of 180 days in jail that was issued in December 2018. Moreover, many of McHugh's offenses occurred *while* he was on probation and being supervised, including the instant offense. Prior court-ordered conditions have failed to protect the community from McHugh and have failed to dissuade him from committing further crimes. Additionally, McHugh has at least three documented prior instances of failing to appear for Court hearings including his arrest for failure to appear.

(4) <u>Nature and Seriousness of the Danger to Community</u>:

The Defendant was part of a violent riot at the U.S. Capitol in which law enforcement officers were injured and Congress's constitutional task of counting electoral college votes was disrupted. Significantly, the Defendant participated in that riot by directly assaulting law enforcement officers, which places him in the "different category of dangerousness than" rioters who merely "cheered on the violence or entered the Capitol after others cleared the way." *Munchel*, 991 F.3d at 1284. Here, the Defendant personally engaged in violent criminal conduct while in the midst of a violent mob, coordinated with and encouraged other rioters to engage in violence, and used two different dangerous weapons to attack law enforcement officers. Therefore, "[b]ecause the defendant was among the more dangerous of the January 6 participants, he is more likely to endanger the community if released pending trial." *United States v. Fairlamb*, 2021 WL 1614821, at *6 (D.D.C. Apr. 26, 2021) (Lamberth, R.).

Moreover, the type of violence McHugh employed was plainly designed to incapacitate and/or injure law enforcement. *See Padilla*, No. 1:21-cr-00214, ECF Docket No. 24 at 12; *see also United States v. Klein*, No. 1:21-cr-236, ECF no. 29 at 8 and 12 (D.D.C. April 12, 2021)

9

(Bates J.) (detention not appropriate where the government did not submit evidence that Klein intended to injure officers).

Outside the circumstances of January 6, the Defendant's predilection for violent crime and his unwillingness to be supervised establishes the real likelihood of future violence to the community and to other law enforcement officers. The Defendant's extensive criminal history and pattern of probation violations and failure to appear are the best indicator of future behavior. *See, e.g., Maryland v. King*, 569 U.S. 435, 453 (2013) ("[A]n arrestee's past conduct is essential to an assessment of the danger he poses to the public[.]"); *United States v. Tortora*, 922 F.2d 880, 888–89 (1st Cir. 1990); *Bradley R. Johnson*, Assessing the Risk of Violence, in Psychiatric Aspects of Violence 31, 32 (Carl C. Bell ed., 2000) ("The single best predictor of violence is a history of violence."). Indeed, it bears repeating that his violent offenses on January 6 were committed while on probation. While all of the January 6 rioters displayed a disregard for the rule of law, the Defendant is one of the few who also have displayed long standing contempt for the authority of the criminal justice system.[4]

The Defendant has twice been found to pose a concrete and prospective danger to the

---

[4] The Defendant has asked the Court to take notice of a list cases where Jan 6 rioters were not detained pretrial without any real comparison to the present case. *See* Motion, ECF No. 71 at 8. However, in many of the cases the Government did not request detention, and thus there was no record of continuing dangerousness or flight risk to be considered. *See, e.g.*, 1:22-CR-00148 (RCL); 1:21-CR-00483 (DLF); 1:22-CR-00034 (RBW). While in other cases defendants were released because of unique factors specific to their case. *See, e.g.*, 1:21-CR-00178 (APM) (one of the defendants (Schwartz) remains in pretrial detention (ECF No. 94) while another defendant (Brown) was granted release because he had been transferred *away* from CTF and would not have the same level of access to discovery as other detained defendants (ECF No. 107)); 1:21-CR-00292 (RCL) (granting pretrial release due to serious and well documented medical issues, including a cancer diagnosis, and finding that his "physical condition while he undergoes chemotherapy militates against the danger he would otherwise impose" (ECF No. 127 at 17)).

community. The Defendant's Motion does not seriously dispute those findings, and offers no condition or combination of conditions that could ensure the Defendant would abide by the directions of this Court and avoid future acts of violence.[5]

## II. Pretrial Release is not Necessary to Prepare a Defense

The Defendant claims that while detained he has been unable to access to discovery; however, he provides no legal support for the proposition that his own lack of access to discovery material, if true, raises constitutional concerns or supports his pretrial release.

There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 525, 846 (1977); *United States v. Celis,* 608 F.3d 818, 831 (D.C. Cir. 2010). Accordingly, the Defendant's demand is not one that implicates constitutional concerns. Moreover, his complaint does not involve allegations of any failure to produce discovery or that discovery which the government has produced to his attorney is incomplete. Discovery in this case has been voluminous, as the Defendant has acknowledged.

Instead, the Defendant's objection rests on the faulty premise that he must himself be able to review every item within the prosecution's substantial discovery production. As noted, the Defendant is represented by counsel. His assumption that he must personally review every shred

---

[5] The Defendant suggests, without discussion, that he could be released into the custody of either his life-partner or his father. *See* Motion, ECF No. 71 at 2. However, Defendant's life partner has already been considered and been found lacking by both Chief Judge Howell and the Pretrial Office. And, while the Defendant's father has not been vetted by the Pretrial Office, it is worth noting that his father was unable to prevent the Defendant from travelling to Washington D.C. and engaging in violent actions at the Capitol, or otherwise prevent the Defendant from collecting his lengthy criminal record. Additionally, the Defendant reports that his father is in "declining health' due to "multiple back and knee surgeries" and a "macular degeneration" diagnosis. The Defendant offers no explanation as to why his father would now be able to control the Defendant's actions.

of discovery material is incorrect. *See, e.g., Celis*, 608 F.3d at 840-41.  In *Celis*, the court of appeals rejected the claim that any requirement existed to translate discovery for a represented defendant who did not speak English. Because defense counsel was able to review English language discovery and discuss it with the defendant, the defendant's inability to personally review and understand the documents did not require the trial court's intervention or any order for translation.

Similarly, district courts have unanimously and explicitly rejected and have found no authority for the contention that a represented defendant must personally review all discovery. *E.g., Carillo v. United States,* 995 F.Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none"); *United States v. Ingram*, No. 3:19CR113-MCR, 2021 WL 4134828, at *3 (N.D. Fla. Sept. 10, 2021)(professional obligations of defense counsel did not mandate that defendant see every item of available discovery material and court was not aware of any such constitutional requirement); *United States v. Thompson*, No. 2:10-CR-200-DBH, 2013 WL 1809659, at *6–7 (D. Me. Apr. 29, 2013)(rejecting argument that defendant needed to personally review discovery in order to enter valid plea because Courts appoint lawyers for defendants in criminal cases so that the lawyers can do the legwork in preparing for trial and give sound advice about whether a defendant should go to trial or plead guilty), *aff'd*, 851 F.3d 129 (1st Cir. 2017); *United States v. Stork*, No. 3:10-CR-132 JD, 2014 WL 1766955, at *7 (N.D. Ind. May 1, 2014)(a defendant represented by counsel does not have a right under either the Constitution or the Federal Rules of Criminal Procedure to be provided with discovery personally)(collecting cases); *United States v. Neff*, No. 3:11-CR-0152-L, 2013 WL 30650, at *6 (N.D. Tex. Jan. 3, 2013)("Contrary to what Defendant contends, he does not have a constitutional right to a personal laptop to help his

attorney prepare his defense. Defendant is represented by counsel, who does not have any limitations on computer access or usage"), *aff'd,* 544 F. App'x 274 (5th Cir. 2013); *cf. United States v. Faulkner*, No. 3:09-CR-249-D(02), 2011 WL 3962513, at *4 (N.D. Tex. Sept. 8, 2011).

Moreover, the Government has gone above and beyond its discovery obligations in setting up a process for the sharing of all possibly relevant information with all January 6 defense counsel as well as providing access directly to incarcerated defendants. *See* February 10, 2022 Notice of Status of Discovery, ECF No. 52 (describing how 20 laptops have been furnished at CTF for the use of inmates to review discovery as well as the creation of a stand-alone instance of evidence.com which can be reviewed by inmates on tablets). The Defendant now tries to use alleged deficiencies in this extraordinary discovery program, a program to which the Defendant was not entitled in the first place, to argue for his release. Of course, the Defendant cites no authority in support of this contention. Moreover, his claims about the discovery program are without merit.[6]

First, the Defendant claims that the waitlist for a laptop to review discovery takes at least a month, and when a laptop's battery runs out the laptop has to be turned in while the Defendant returns to the end of the waitlist again. *See* Motion, ECF No. 71 at 3. However, laptops are issued to inmates at CTF on a two-week basis, and that time is not limited by the amount of charge on a laptop. Indeed, some cells are wired for electricity and it is sometimes possible for laptops to be recharged directly in the cell. In a situation where a laptop needs to be recharged out of a cell, a Department of Corrections officer will charge the laptop and immediately return it—the inmate is

---

[6] The Government proffers that it discussed the allegations presented by the Defendant with CTF personnel and has provided their description of the program below.

not placed on a waitlist if a laptop is recharged. At the end of two-week period, a laptop must be returned only if there are other inmates who have requested a laptop to review discovery. Currently, the waitlist for a laptop at CTF is approximately two weeks, which has been the case since August, 2022. Most inmates complete their review of discovery and return their laptops within five days.

Second, the Defendant claims that lockdowns that take place at CTF could prevent him from effectively utilizing Evidence.com. *Id*. However, CTF reports that there have not been frequent, long-lasting lockdowns affecting prison operations. Moreover, there is no reason why a lockdown would impact the use of Evidence.com, which is available on tablets that are available to inmates during lockdowns.

Third, the Defendant alleges that CTF does not permit timely communication with counsel, referencing pandemic era quarantine restrictions and also alleging that current counsel had some initial difficulties reaching the Defendant when he first entered his appearance in the case. *See* Motion, ECF No. 71 at 7. Of course, counsel may visit the Defendant in person almost anytime of the day. Additionally, CTF has set aside every Friday for video visits with defense counsel. CTF reports that the Defendant and counsel successfully conducted video visits every Friday during the month of September, but that the Defendant's counsel did not request a video visit once during the entire month of October. Accordingly, it is difficult to see how the Defendant's incarceration is currently preventing effective communication with counsel. Additionally, while CTF does not coordinate telephone calls, an inmate can make a free, unmonitored telephone calls during out of cell time, which occurs 5 hours a day.

While the Defendant's incarceration undoubtedly makes preparing a defense less convenient than if the Defendant were released, that does not make release "*necessary*" for McHugh to participate in his defense. *See United States v. Krol*, No. CR 22-110 (RC), 2022 WL 16948611, at *12 (D.D.C. Nov. 15, 2022) citing *United States v. Diaz Guillen*, No. 18-cr-80160, 2022 WL 4119741, at *1, *5 (S.D. Fla. Sept. 9, 2022) (denying temporary release despite difficulties with reviewing discovery due to conditions and quarantine process due to COVID-19); *United States v. Persico*, No. S 84 CR 809, 1986 WL 3793, at *2 (S.D.N.Y. Mar. 27, 1986) (denying temporary release because defendant "has had ample time to prepare his defense, even given the practical limitations on his access to telephones and the Attorney Conference Room"). Accordingly, pretrial release is not warranted under 3142(i).

### III.     Pretrial Release is not Necessitated by the Length of Detention

Although the Defendant does not specifically request release due to the length of his pretrial detention, he notes that he has already been detained for over a year and a half. *See* Motion, ECF No. 71 at 9. While this is an admittedly lengthy period of detention, nothing about it offends due process, especially in light of the fact that the Defendant has either specifically requested or joined in the requests of prior continuances in this case.[7] *United States v. Theron, 782 F.2d 1510. 1516 (10th Cir. 1986)* (delays caused by a defendant do not implicate due process); *United States v. Palega*, No. CR. 07-30010(01), 2008 WL 11449415, at *1 (D.S.D. Jan. 23, 2008) (rejecting due process claim because "the pretrial delays in the instant case, have all been with Defendant's consent"); *see also United States v. Falcon*, 930 F. Supp. 1518, 1522 (S.D. Fla. 1996) (noting no

---

[7] *See* April 20, 2021 Motion to Continue Trial, ECF No. 59 (the Defendant moved to continue trial set for June 9, 2022); August 10, 2022 Minute Entry for Court Order (granting the Defendant's oral motion to continue the trial set for October 18, 2022).

due process violation for 52-month pretrial detention which "was in large part a product of [the defendant's] own decision to seek repeated continuances of the district court's trial setting"). Indeed, when granting the Defendant's most recent request for a continuance this Court specifically addressed with the Defendant his long period of detention and that a rescheduled trial would not be until April 2023 at the earliest.

Moreover, courts have found that longer periods of pretrial detention do not violate due process. *United States v. Akinola*, No. CR 11-310, 2016 WL 3566958, at *2 (D.N.J. June 28, 2016) (pretrial detention of over five years did not violate due process); *United States v. Swinton*, 251 F. Supp. 3d 544, 555 (W.D.N.Y. 2017) (pretrial detention of over four years did not violate due process); *United States v. Newebern*, No. 15-CR-98-FPG-2, 2018 WL 1250018, at *7 (W.D.N.Y. Mar. 12, 2018) (pretrial detention of 37 months did not violate due process); *United States v. El-Hage*, 213 F.3d 74, 76 (2d Cir. 2000) (pretrial detention of 33 months did not violate due process); *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir. 1993) (pretrial detention of 31 months did not violate due process); *United States v. Zhang*, No. 12-498, 2014 WL 5285928, at *5 (E.D. Pa. Oct. 16, 2014) (pretrial detention of 30 months did not violate due process).

### IV.     Pretrial Release is not Necessitated by Conditions at CTF

The Defendant complains about miscellaneous conditions at CTF, his treatment by staff, and his general mental health. While the Government is committed to ensuring the safety all of inmates, regardless of their detention status, it is also critical to allow the issues to be properly litigated. Civil litigation is the proper venue to address complaints of mistreatment at a jail. *See United States v. Brooks*, 2020 U.S. Dist. LEXIS 230323, at *10 (D.D.C. Dec. 7, 2020) ("As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit

and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred."); *United States v. Smith*, 2020 U.S. Dist. LEXIS 213050, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases); *see also, e.g.*, *United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court"). The proper way to raise such a claim is to file a civil suit against the DOC or its warden. *See, e.g.*, *United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D.Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *Campbell v. McGruder*, 416 F. Supp. 100, 101 (D.D.C. 1975) (addressing "class action brought by unconvicted pre-trial detainees incarcerated at the District of Columbia jail").

Additionally, considering his claims, the Defendant has not carried his burden of showing concrete evidence that the conditions at CTF warrant his release. The Defendant's broader assertions about his conditions of confinement relate to the conditions at the Central Detention Facility (CDF), not CTF. As the Defendant notes, the United States Marshall's Service (USMS) conducted a surprise investigation of D.C. Department of Corrections facilities in late October 2018. *See* Exhibit 1 to Motion, ECF No. 71-1. USMS reported a wide variety of systemic failures at CDF and, in response, members of the Senate requested that "DOJ investigate potential civil and criminal violations of federal law at CDF" and make the investigation public. *See* Exhibit 2 to Motion, ECF No. 72-1. However, at the same time USMS investigated CDF, it also investigated CTF, and found the "conditions to be largely appropriate and consistent with federal prisoner detention standards." *See* Motion Exhibit 1, ECF No. 72-1 at 2. Defendant offers no credible reason to credit the findings of the USMS investigation at CDF but discount the investigation at CTF.

Additionally, on January 17, 2022, the Government submitted the declaration of Marvin Bickham in *United States v. Gieswein*, Docket No. 1:21-cr-00024 (TNM) (ECF No. 94-1) that specifically addressed the conditions at CTF and the Defendant's cell block (C2B). Mr. Bickham, a Federal Detention Monitor responsible for determining whether facilities comply with the Federal Performance-Based Detention Standards, reported that over the preceding two months he had observed no systemic issues at CTF and that the conditions at CTF appear to conform to the federal prisoner detention standards. In particular, he observed only "two remediable issues or

deficiencies" at CTF, and that both issues had been remediated. *Id*. at 2-3. Accordingly, the general conditions at CTF do not necessitate the Defendant's release from pretrial detention.[8]

The Defendant has also alleged that he has personally been mistreatment at CTF, and attached six grievances from 2021. *See* Exhibit 3 to Motion, ECF No. 71-3. However, the Defendant's attachments also indicate that his grievances were investigated. For example, the Defendant alleged that there was black mold beneath the floor tiles at CTF; however, a sample of the alleged contamination was revealed to be black mastic, not mold. *Id*. at 9. If the Defendant believes his grievances have not properly been investigated, or that he has suffered some specific mistreatment by corrections staff for filing his grievances, a civil suit to obtain redress is the proper venue for litigating those claims.

Finally, the Defendant alleges that his mental health has declined, at least in part because he is detained with other January 6 rioters at CTF. Notably the Defendant does not ask this Court to order a transfer to a different facility. Regardless, the Defendant offers no documentation to support this general allegation about his mental health, and, accordingly, cannot carry the burden of showing that release is necessary. *See United States v. Gassaway*, No. 1:21-cr-00550-RCL, ECF No. 22 at 2 (D.D.C. Nov. 18, 2021) (release under § 3142(i) is only granted "sparingly" where the Defendant has introduced specific evidence of a serious injury necessitating treatment outside the detention facility) (citing *United States v. Thomas*, 456 F. Supp. 3d 69, 71-73 (D.D.C. Apr. 20,

---

[8] The Defendant notes that one January 6 rioter was released from CTF based in part on concerns regarding the conditions at CTF. *See United States v. Worrell*, 1:21-CR-00292 (RCL), ECF No. 127 (transcript of November 3, 2021 Hearing). However, that release predated the declaration by Mr. Bickham and was largely based on the specific, documented health concerns of that defendant. *See Id.* at 17 (finding that his "physical condition while he undergoes chemotherapy militates against the danger he would otherwise impose").

2020)); *see also United States v. Krol*, No. CR 22-110 (RC), 2022 WL 16948611, at *8 (D.D.C. Nov. 15, 2022) (denying motion to revoke detention in part because the defendant did not provide "sufficient, concrete support for his claim that he should be released for this medical need").

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny the Defendant's Motion for Pretrial Release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/ *Lynnett M. Wagner*
LYNNETT M. WAGNER
Nebraska Bar No. 21606
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (402) 661-3700
Fax: (402) 661-3081
E-mail:lynnett.m.wagner@usdoj.gov

*/s/ Benjamin Kringer*
BENJAMIN E. KRINGER
Detailed to the U.S. Attorney's Office
for the District of Columbia
D.C. Bar No. 482852
601 D Street, N.W.
Washington, DC 20001
benjamin.kringer2@usdoj.gov
(202) 598-0687