**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 21-CR-453 (JDB)** |
| | : | |
| **SEAN MICHAEL MCHUGH,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR**
**DISCOVERY AND FOR AN EVIDENTIARY HEARING IN SUPPORT OF**
**DEFENDANT'S CLAIM OF SELECTIVE PROSECUTION**

Defendant Sean McHugh seeks discovery and an evidentiary hearing on his claim that the government selectively targeted him for prosecution due to his political beliefs.  *See* Motion, ECF No. 82.  The Defendant has not identified a comparable group, much less a single instance, where the government has declined to prosecute similar conduct.  Moreover, as the Defendant recognizes, this Court already rejected similar arguments raised by another January 6 defendant.  *See United States v. Brock*, No. 1:21-cr-140, 2022 WL 3910549, at *11-*12 (D.D.C. Aug. 31, 2022). Ultimately, the Defendant does not meet the evidentiary threshold required to satisfy the rigorous standard for discovery in this setting, and the motion should be denied.

**BACKGROUND**

On January 6, 2021, a Joint Session of Congress convened to certify the results of the 2020 U.S. Presidential Election.  While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building.  As a result, the Joint Session was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

For his part, the Defendant entered the restricted west side of the United States Capitol, where he repeatedly antagonized a line of law enforcement officers, used a megaphone to encourage the mob, and openly deployed dangerous weapons while assaulting, resisting, or impeding the officers.

In particular, the Defendant sprayed officers with bear spray notwithstanding a warning label stating, "Hazzard to Humans … irreversible eye damage if sprayed in the eye."   *See* Response to the Defendant's Motion to Review the Magistrate Judge's Detention Decision, ECF No. 16 at 7-11.  The Defendant also directed and assisted rioters in ramming officers with a large metal sign. *Id*. at 5-6.  Additionally, while on Capitol Grounds, the Defendant used the megaphone to encourage rioters to advance on police: "Come on! Let's go!"; "Come on you guys, come on you guys! Bring it in!"  *Id.* at 3.  The Defendant also shouted directly at officers: "You guys like protecting pedophiles?"; "You're protecting communists!"; "I'd be shaking in your little shit boots too"; "There is a second amendment behind us, what are you going to do then?"; "You ain't holding the line!"  *Id*. at 3-4.  After the riot, the Defendant bragged on social media that he "unloaded a whole can of bear spray on a line of cops" and "I got three of them down really really good."

Based on these actions, the Defendant was charged with assaulting a federal officer, in violation of 18 U.S.C. § 111(a); two counts of assaulting a federal officer with a dangerous or deadly weapon, in violation of 18 U.S.C. § 111(a) and (b); civil disorder, in violation 18 U.S.C. § 231; obstructing an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); entering and remaining in a restricted area with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); disorderly conduct in a restricted area with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); physical violence in a restricted

area with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); and two misdemeanor offenses, in violation of 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(F).  *See* Superseding Indictment, ECF No. 39.

## ARGUMENT

In a motion filled with speculations and insinuations, the Defendant alleges that the government selectively targeted him for prosecution based on his political beliefs.  In support, the Defendant describes the activities of (i) Washington D.C. climate change protestors in October 2021, (ii) Oregon federal courthouse protestors in May and June 2020, (iii) Justice Kavanaugh protestors in 2018, and (iv) two individuals on the Capitol Grounds on January 6, Ray Epps and James Knowles.

This Court and its colleagues have uniformly rejected similar selective prosecution allegations by defendants charged for their conduct on January 6.  *See Brock*, 2022 WL 3910549, at *11-*12, *see also*, *e.g.*, *United States v. Rhodes*, No. 1:22-cr-15, 2022 WL 3042200, at *4-*5 (D.D.C. Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 279 F. Supp. 3d 1, 5-9 (D.D.C. 2021) (McFadden, J.); *United States v. Miller*, No. 1:21-cr-119, ECF No. 67 (D.D.C. Dec. 21, 2021) (Nichols, J.); *United States v. Alberts*, 1:21-cr-00026, ECF No. 77 (D.D.C. Nov. 23, 2022) (Cooper, J.).  Indeed, this Court has specifically concluded that protestors in Portland and at Justice Kavanaugh's confirmation hearing are not "similarly situated" to January 6 defendants for purposes of a selective-prosecution inquiry.  *See Brock*, 2022 WL 3910549, at *11-*12.

The same outcome is warranted here.  The Defendant has not made "rigorous 'showing required to obtain discovery on a selective prosecution motion.'"  *Id*. (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).  His request should be denied.

## I.      Legal Framework

Because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *Armstrong*, 517 U.S. at 464 (internal quotation marks and citations omitted).  This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465.  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Ibid.* (citation omitted); *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is . . . at its most limited when reviewing the Executive's charging determinations" because "the Judiciary . . . generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).

This presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function." *Armstrong*, 517 U.S. at 465.  To overcome it and obtain dismissal of the criminal charges, a defendant must present "clear evidence" that the government's decision to prosecute was "based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 464-65 (citations omitted).

Concerned that selective-prosecution inquiries "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," the Supreme Court has also imposed a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468.  The defendant must initially produce "some evidence tending to show the existence of the essential elements of" selective prosecution: "discriminatory effect and discriminatory intent."

4

*Ibid.* (citation omitted).  The defendant's evidence must also be "credible"—something more than "personal conclusions based on anecdotal evidence." *Id*. at 470.  "If either part of the test is failed," the defendant cannot "subject[] the Government to discovery." *Att'y Gen. of United States v. Irish People, Inc*., 684 F.2d 928, 947 (D.C. Cir. 1982).

## II.     The Defendant fails to proffer credible evidence of selective prosecution.

The Defendant has failed to make the threshold showings under *Armstrong*.  He has adduced no evidence "that (1) [he] was singled out for prosecution from among others similarly situated and (2) that [his] prosecution was improperly motivated." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)). "[T]he standard is a demanding one." *Armstrong*, 517 U.S. at 463.

### A.     The Defendant has not made a colorable showing that the government singled him out for prosecution.

With respect to *Armstrong*'s first prong, the Defendant must identify "persons who engaged in similar conduct and were not prosecuted." *United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997).  An individual is similarly situated if he "committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *Stone*, 394 F. Supp. 3d at 31 (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced.").

The Defendant does not attempt this showing.  Instead, he claims the burden is too hard to meet.  *See* Motion, ECF No. 82 at 11 ("the quest to find a single similarly situated person and event … is so hyper-focused that there seems to be no comparisons").  In the Defendant's view, because the January 6 riot is "unique," a comparison is impossible.  But that candid acknowledgment undercuts his allegation of disparate treatment.  "[I]t is precisely because of that uniqueness that [a] Court would find it difficult to fault the Government's prosecution of him."  *Judd*, 579 F. Supp. 3d 1 at 8 (citing *Irish People*, 684 F.2d at 946) (internal citations omitted)).

None of the protestor categories identified by the Defendant involve similarly situated conduct.  This Court has already highlighted material differences between the January 6 riot and the Portland protests, observing that "the mob on January 6th endangered hundreds of federal officials in the Capitol complex, including Members of Congress and their staffs, Vice President Pence, and the United States Capitol Police" and further sought to "obstruct[] the certification of the Electoral College vote."  *Brock*, 2022 WL 3910549, at *12 (internal quotation marks omitted). "In contrast, the Portland protests happened at night, when no federal employees were in the buildings to be endangered."  *Id.*  Accordingly, "[t]he decision to file and pursue more serious charges based on the threat to government officials and employees is certainly a legitimate prosecutorial consideration."  *Id.*

This same analysis applies to the 2018 protests at Justice Kavanaugh's confirmation hearings and the 2021 climate change protests.  Those comparisons likewise fail "given the difference in violence, threat to citizen safety, and scope" of the January 6 riot and the Defendant's conduct that day.  *See Brock*, 2022 WL 3910549 at *12 (rejecting comparisons to Justice Kavanaugh's protestors and an Immigration and Customs Enforcement sit-in).

The charged conduct—the Defendant's violent assaults on law enforcement officers in a mob effort to besiege the U.S. Capitol Building and disrupt the certification of the Presidential Election—further underscores his lack of proof showing discriminatory effect.  The Defendant has not identified another individual in his comparator protestor groups who committed similarly violent assault targeting the gears and personnel of government, but who faced no prosecution.  He therefore "has not made his case" for discovery under *Armstrong*.  *Judd*, 579 F. Supp. 3d 1 at 8.

Finally, the Defendant references two individuals (Ray Epps and James Knowles) alleged to have been present on Capitol Grounds on January 6 as examples of individuals who have not faced prosecution.  *See* Motion, ECF Mo. 82 at 7-8.  But he offers no evidence that either individual assaulted law enforcement officers.  Accordingly, neither is similarly situated with the Defendant for purposes of *Armstrong*'s first prong.

As described by Chief Judge Howell, "the [D]efendant enthusiastically participated in a violent assault on the Capitol, and encouraged this lawlessness with abandon leading up to the mob's breach of the law enforcement line on the lower West Terrace of the Capitol grounds.  His conduct that day shows clear disregard for the safety of others, particularly law enforcement."  *See* ECF No. 80 at 51.  Having failed to identify another individual who engaged in similar conduct but different treatment by the Government, the Defendant's discovery request fails at the first step.

**B.     The Defendant has not made a colorable showing that the government harbored an improper motive in prosecuting him.**

Because the Defendant has also failed to adduce any credible evidence that improper motives undergird this prosecution, his discovery request fails *Armstrong*'s second step as well. *See Stone*, 394 F. Supp. 3d at 31 (a defendant must provide something more than "speculation" or "conclusions" of selective prosecution).

7

The record here contains no evidence (other than conjecture) that the Defendant's political beliefs differed from the other protestors specified in his motion.  In addition, as this Court has noted, earlier decisions whether to prosecute conduct occurring adjacent to the climate change, Portland, and Justice Kavanaugh protests were made by previously appointed U.S. Attorneys.  *See Brock*, 2022 WL 3910549 at *12 (citing *Judd*, 2021 WL 6134590, at *6 n.9).  Likewise, the previous U.S. Attorney for the District of Columbia initiated many of the January 6 cases now on this Court's docket.  *See Judd*, 2021 WL 6134590, at *6 n.9 ("DOJ began arresting January 6 defendants while still under Republican leadership.").  As this timeline shows, the Defendant's "narrative of Government malfeasance"—that "DOJ purposefully prosecuted him for his politics"—"does not fit reality."  *Id*.

The Defendant next alleges political bias across the federal government.  He cites media sources reporting federal agency influence over Twitter content-moderation decisions and a recent Republican House Judiciary Committee Staff Report cataloging numerous allegations regarding the FBI's and the Department of Justice's purported manipulation of domestic violent extremism statistics, communication with social media companies about misinformation, retaliation against agents who attended January 6 rallies, investigations into school-board cases, and the FBI's seizure of Rep. Scott Perry's cellphone.

These citations neglect the relevant inquiry.  "This second prong of the [*Armstrong*] test requires a defendant to come forward with some evidence showing that *his prosecution* was based upon an unlawful or arbitrary classification."  *Stone*, 394 F. Supp. 3d at 35 (emphasis added).  The Defendant offers no evidence that the U.S. Attorney for the District of Columbia initiated these charges in response to his political views—as opposed to the overwhelming evidence (captured on

video) documenting his violent assault on law enforcement officers.  The Defendant accordingly fails his burden on the second element.

The U.S. Attorney for the District of Columbia and the undersigned—as officers of this Court—further represents that the Defendant's political views played no role in the office's charging decisions in this case.

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that McHugh's Motion for Discovery be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Lynnett M. Wagner*
LYNNETT M. WAGNER
Nebraska Bar No. 21606
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
Tel: (402) 661-3700
Fax: (402) 661-3081
E-mail:lynnett.m.wagner@usdoj.gov


*/s/ Benjamin Kringer*
BENJAMIN E. KRINGER
Detailed to the U.S. Attorney's Office
for the District of Columbia
D.C. Bar No. 482852
601 D Street, N.W.
Washington, DC 20001
benjamin.kringer2@usdoj.gov
(202) 598-0687

*/s/ Carolina Nevin*
 CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
601 D Street, NW
Washington, DC 20530
(202) 803-1612
carolina.nevin@usdoj.gov