<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **No. 21-CR-453 (JDB)** |
| | **:** | |
| **SEAN MICHAEL MCHUGH,** | **:** | |
| | **:** | |
| Defendant. | **:** | |

<div align="center">

**UNITED STATES' MOTION *IN LIMINE* REGARDING**
**AUTHENTICATION OF PHOTO AND VIDEO EVIDENCE**

</div>

The government hereby moves *in limine* regarding the authentication of photo and video evidence under Federal Rules of Evidence 104, 901, and 902.  The government, through discovery, has provided Defendant with the photos and videos it plans to introduce at trial, and the government and Defendant have reached agreement for stipulations regarding authentication of some categories of photo and video evidence.   For the categories of evidence where the government and Defendant have *not* reached an agreement on authentication, the government seeks a pretrial ruling finding that those categories of photo and video evidence detailed herein may be properly authenticated and admitted using the methods outlined below, assuming sufficient foundation is laid at trial regarding authenticity.   Except for video evidence from the Senate Recording Studio, which is self-authenticating under Federal Rule of Evidence 902, the government does not, in this motion, seek a ruling that any particular exhibits are authentic or admissible.

<div align="center">

**BACKGROUND**

</div>

The riot at, and attack on, the United States Capitol building was an event of unparalleled size and scope. Much of the event was recorded on video: on surveillance footage captured by the U.S. Capitol Police ("USCP") cameras; on Metropolitan Police Department ("MPD") body-worn

<div align="center">

1

</div>

cameras; and on phones and cameras carried by those within the crowd that engulfed the Capitol. The government's case will rely on such evidence to explain the Defendant's specific conduct, to contextualize this conduct through other contemporaneous events, and to give the jury a sense of the riot as a whole. This memorandum outlines the types of exhibits the government plans to use and seeks a pretrial ruling on the methods of authentication outlined below.

"As a general rule, tangible evidence such as photographs must be properly identified or authenticated before being admitted into evidence at trial." *United States v. Blackwell*, 694 F.2d 1325, 1329 (D.C. Cir. 1982) (citations omitted). Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (1)   *Testimony of a Witness with Knowledge*. Testimony that an item is what it is claimed to be.
> . . .
> (3) *Comparison by an Expert Witness or the Trier of Fact.* A comparison with an authenticated specimen by an expert witness or the trier of fact.
>
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.
> . . .
> (9) *Evidence About a Process or System*. Evidence describing a process or system and showing that it produces an accurate result.

Fed. R. Evid. 901(b)(1), (3), (4), (9).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for

authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted).  Rule 901 "requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence."  *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases).  *See also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required").  Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be."  *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)).  Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury."  *Vidacek*, 553 F.3d at 349.  *See also, e.g., Belfast*, 611 F.3d at 819 ("Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.")

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient."  *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981).  *See, e.g., United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'") (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)).  The party seeking to admit evidence also need not "rule out all possibilities inconsistent with authenticity, or to prove beyond

any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)). *See, e.g., United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g., United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable juror could reach the same conclusion regarding authenticity. *See, e.g., United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 F. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to

make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated.").

## **ANALYSIS**

The government's evidence will show that all videos described herein fairly and accurately depict events at the Capitol.  The government and Defendant are in the process of finalizing stipulations to the authenticity of several types of evidence, including the following:  USCP closed circuit video and hand-held video footage, MPD body-worn camera footage, police radio communications, videos and photographs by third parties at the Washington Monument, the Ellipse, the streets between the Ellipse and the U.S. Capitol grounds, on U.S. Capitol grounds, and at the U.S. Capitol building.

The bulk of the government's argument thus focuses on authentication of videos taken by Defendant and other attendees, the distinctive events and characteristics visible in those videos, and corroboration from other pieces of evidence.  The videos presented in this motion are intended to be examples, not a comprehensive set of the videos or images the government plans to introduce at trial in any particular category.  Except for video evidence from the Senate Recording Studio, which is self-authenticating under Federal Rule of Evidence 902, the government seeks a ruling only that the following methods of authentication are permissible methods of authentication that the government may rely upon at trial; the ultimate determination of authenticity of any particular exhibit is a question for the jury after the admission of evidence at trial, as discussed below.

I.      U.S. CAPITOL POLICE VIDEO FOOTAGE

As noted above, the Defendant and government are working on a stipulation regarding the authenticity of the USCP closed circuit video and hand-held video.  Admission of footage from USCP's own systems is straightforward.  If needed, the government will present a USCP witness to testify to their surveillance system. This witness will be able to explain how the system is used, that it reliably records and depicts the areas where USCP has installed cameras, and the internal characteristics of videos—such as date and time stamps—which allow USCP to identify and retrieve segments of video. Such evidence satisfies the requirement of Fed. R. Evid. 901(b)(4), which allows authentication by way of "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." It also accords with the requirements of Rule 901(b)(9), which allows authentication by "[e]vidence describing a process or system and showing that it produces an accurate result."

The government may additionally elect to call a USCP witness who was present during the attack on the Capitol to explain that the videos used by the government here are consistent with the events that occurred, generally, on January 6, 2021.  If so, that would serve to authenticate the footage based on the officer's personal knowledge. Fed. R. 901(b)(1) (allowing authentication by "[t]estimony that an item is what it is claimed to be"). This is standard authentication for any photograph or video. *See, e.g., United States v. Patterson*, 277 F.3d 709, 713 (4th Cir. 2002) ("The necessary foundation for the introduction of a photograph is most commonly established through eyewitness testimony that the picture accurately depicts the scene in question[.]"); *United States v. Rembert*, 863 F.2d 1029, 1026 (D.C. Cir. 1988) (noting one method of authentication occurs where "a sponsoring witness (whether or not he is the photographer) who has personal knowledge of the scene depicted testifies that the photograph fairly and accurately portrays that scene").

II.   METROPOLITAN POLICE DEPARTMENT BODY-WORN CAMERA FOOTAGE

The admissibility of footage from body-worn cameras, worn by MPD officers on January 6, 2021, is likewise clear.  Either the officer who wore the camera, or any other witness to the events depicted in the video, can authenticate the video based on their personal knowledge that the video fairly and accurately depicts the events that occurred, pursuant to Rule 901(b)(1), as detailed above.

As noted above, the Defendant and government are working on a stipulation regarding the authenticity of the footage from body-worn cameras worn by MPD officers on January 6, 2021. If needed, the government will present a witness present on the West Plaza where law enforcement officers established a defensive line using bike racks to testify that the MPD body-worn camera footage fairly and accurately depicts what occurred. Fed. R. 901(b)(1). The area where Defendant's conduct occurred can also be seen from an elevated USCP surveillance camera, and a comparison of this bird's-eye view of the assault with MPD body-worn cameras makes clear that they record the same areas during the same time period. Thus, the USCP footage corroborates the events recorded on MPS body-worn camera and supports their admissibility. *See* Fed. R. Evid. 901(b)(4) (authentication by comparison with another authenticated specimen).

III.   SENATE RECORDING STUDIO VIDEO OF ELECTORAL COLLEGE CERTIFICATION PROCESS

The government intends to introduce video evidence of the Joint Session of Congress that assembled on January 6, 2021, to declare the winner of the 2020 presidential election by reviewing and certifying the Electoral College ballots.  Specifically, the United States Senate has an affiliated entity called the Senate Recording Studio that contemporaneously records Senate proceedings and distributes those recordings to the public.  The Recording Studio is comprised of Senate TV, Hearing Rooms, and a Studio function.  Senate TV is comprised of eight cameras which record

activity occurring on the Senate floor.  This footage is also broadcast through the Cable-Satellite Public Affairs Network (CSPAN).  The Senate Studio can also capture contemporaneous footage of the House of Representative proceedings, used for broadcast, when there are joint sessions of Congress.

The Senate Recording Studio recorded the proceedings relating to the Electoral College Certification on January 6, 2021, up to the point when the rioters breached the Capitol Building itself and the Senate was forced into recess.  After the rioters were cleared from the Capitol building, the Senate Recording Studio continued recording the Electoral College Certification process once the joint session resumed.  The Senate Recording Studio also recorded rioters who were present on the Senate floor during the recess.  *See* https://www.senate.gov/floor/, last accessed Nov. 7, 2022:



The Senate Recording Studio recorded at least three events relevant to this trial:  Vice President Michael Pence gaveling the session to order and reading from Senate Congressional Resolution 1 and 3 U.S.C. § 17 in conjunction with the official proceeding of the Electoral College

Certification; the Senate being gaveled into recess, and resulting evacuation of the Senate Floor Chamber, after rioters breached the building; and the Joint Session of Congress reconvening to finish the Electoral College Certification hours later, after the rioters were cleared from the U.S. Capitol. Screen captures of those events are shown below:

Electoral College certification proceedings:

 

Senate Floor when rioters breach the Capitol Building:

 

Joint Session when Congress reconvenes:



### *Self-Authentication under Rule 902*

The Congressional videos from the Senate Recording Studio are self-authenticating and should be admitted on that basis. Federal Rule of Evidence 902 governs the authentication of evidence that is "self-authenticating." Rule 902 provides, in part, that:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> . . .
>
> (11) Certified Domestic Records of a Regularly Conducted Activity. The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them. . . .
>
> (13) Certified Records Generated by an Electronic Process or System. A record generated by an electronic process or system that produces an accurate result, as

shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902. Pursuant to Rule 902, the government hereby gives notice of its intent to offer the records and submits that the videos are self-authenticating under Rule 902(11) and (13). *See* Certification of Diego Torres, attached as Exhibit 1; Certification of Douglas Massengale, attached as Exhibit 2.

The video footage is also self-authenticating under Federal Rule of Evidence 902(5). Federal Rule of Evidence 902(5) provides, in part, that:

> The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> . . .
>
> (5) Official Publications. A book, pamphlet, or other publication purporting to be issued by a public authority

Fed. R. Evid 902. The video feed from which the clips are taken are available on the Senate.gov website. *See* https://www.senate.gov/floor/, last accessed Nov. 7, 2022. Moreover, the certification of Diego Torres from the Senate Recording Studio establishes the video as official publications. It is well established that materials found on a government public website are self-authenticating under Federal Rule of Evidence 902(5). *See Williams v. Long*, 585 F. Supp. 2d 679 (D. Md. 2008). *See also Singletary v. Howard Univ.*, No. 1:17-cv-01198, 2018 U.S. Dist. LEXIS 164945, 2018 WL 4623569 (D.D.C., Sept. 26, 2018), *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486 (S.D.N.Y. 2017) (Congressional transcripts self-authenticating under Rule 902(5)).[1]

---

[1]   The government may also offer similar evidence from the House Recording Studio. *See* Certification of Douglas Massengale, attached as Exhibit 2. The government submits that the same principles would support the authentication of any such evidence.

IV.    **PHOTOS  AND  VIDEOS  OBTAINED  FROM  DEFENDANT'S  CELLPHONE  AND
FACEBOOK ACCOUNT**

On May 27, 2021, Defendant was arrested in Auburn, California, in connection with the

instant offense.  ECF No. 5.  McHugh's Motorola phones and Samsung tablet, and other items

related to his criminal conduct at the Capitol on January 6, 2021, were seized.  ECF Nos. 29, 36.

The government also sought and obtained a search warrant for the contents of McHugh's Facebook

account.   At trial, the government intends to introduce photos and videos recovered from

Defendant's phones, his tablet, and from Defendant's Facebook account.

In general, the government will likely elect to show that this evidence is authentic in that

the videos or photographs are from Defendant's phones or Facebook account.  The government

will authenticate that the photos and videos on Defendant's phones and tablet came from those

sources by introducing testimony from the FBI.  *United States v. Banks*, 43 F.4th 912, 918 (8th

Cir. 2022) ("While the officers were not present when the images and videos were first captured,

their testimony [about reviewing extraction reports] provided a rational basis to believe that the

exhibits had been created within the relevant time frame and stored on [the defendant's] cellular

phones."); *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (finding text messages on

phone authenticated by evidence tying defendant to phone, such as location from which phone was

seized and information in phone's contacts and properties sections).  Similarly, the government

will authenticate the photos and videos from Defendant's Facebook account by introducing

evidence that the records were received from Facebook with an accompanying certificate of

authenticity, which establishes their authenticity as business records under Rule 902(11), as

described above.

In some instances, the government may simply authenticate a video or photograph from

these sources just by establishing the video or photograph's contents as fair and accurate, without

12

proving that that item came from a particular source (e.g., Defendant's cell phone).  In such instances, the government can authenticate these items using any of the other methods described in Section 5 of this motion (describing methods for authenticating photographs or videos from third parties).

For example, a witness with personal knowledge of the events depicted may authenticate the item through testimony.  Photo and video obtained from Defendant's cell phones or social media may also be authenticated based on the distinctive characteristics of Defendant depicted in them, or by comparing the videos against MPD body-worn camera or USCP security footage. *United States v. Chandler*, 5 F. App'x 839, 847 (10th Cir. 2001) (unpublished) ("Authentication under Rule 901(b)(4) is proper if the appearance, contents, distinctive characteristics and circumstances of discovery of the CCA Photograph support a finding that the matter in question is what its proponent claims."); *United States v. Hoyt*, 946 F.2d 127 (D.C. Cir. 1991) ("[W]e will assume without deciding that the photograph was sufficiently authenticated by comparison with previously admitted Government Exhibit 11, which showed the door from another angle."). Government witnesses may testify to the metadata of these videos and photographs, which could establish authenticity—for example, that a video or photograph was apparently taken on January 6, 2021, and not modified thereafter.  *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 547-48 (D. Md. 2007) ("Because metadata shows the date, time and identity of the creator of an electronic record, as well as all changes made to it, metadata is a distinctive characteristic of all electronic evidence that can be used to authenticate it under Rule 901(b)(4)."); *United States v. Gilbreath*, No. 3:19-CR-127- TAV-HBG, 2020 WL 5441226, at *3 (E.D. Tenn. Sept. 10, 2020) ("Metadata . . . showed that these images were created at defendant's home and on defendant's cell phone on September 12, 2015.").  Or, finally, as to many of these photographs and videos, McHugh will

have confirmed their authenticity when he sent them to others via text message or via Facebook messages, or by posting them online.  At times, Defendant will have described the video as a depiction of what occurred on January 6, 2021.  Such a party-opponent admission of authenticity can be used to establish that the videos or photographs are authentic.  And in some cases, Defendant may have implicitly asserted the video or photograph is authentic.  If Defendant merely sent the video to another user without comment, the government may argue that the jury can conclude that is an implied assertion (to the other user) that the video or photograph accurately depicts what it shows.  For example, jurors' common experience may tell them that when a relative texts them a seemingly unaltered video from their relative, of the relative's children playing, that relative is implicitly suggesting that the video fairly and accurately shows the scene it captures, rather than being digitally altered or manipulated in a way that renders it inaccurate.  Jurors can rely on that common sense in evaluating authenticity.

V.      PHOTO AND VIDEO FROM OTHERS PRESENT AT THE CAPITOL

Finally, the government also intends to introduce photos and videos taken by others present in and around the Capitol that day.  This includes open-source video from journalists and rioters, including those charged in separate criminal cases for their conduct at the Capitol on January 6, 2021.  As noted above, the Defendant and government are working on stipulations regarding the authenticity of videos and photographs made by third parties at the Washington Monument, the Ellipse, the streets between the Ellipse and the U.S. Capitol grounds, on U.S. Capitol grounds, and at the U.S. Capitol building on January 6, 2021.

If no stipulation were reached with defendant, the government could authenticate these videos in multiple ways.  First, any witness with knowledge of the events depicted in a photograph or video can authenticate the evidence, including but not limited to the person who took the photograph or video.  *See* Fed. R. Evid. 901(b)(1).  Here, that includes any person who was present

for the events depicted in the photograph or video and has a recollection sufficient for them to recognize the scene depicted and testify that they appear to fairly and accurately show the events that took place. *See, e.g., Am. Wrecking Corp. v. Sec'y of Lab.*, 351 F.3d 1254, 1262 (D.C. Cir. 2003); *see also United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) (citing, *e.g., Simms v. Dixon*, 291 A.2d 184 (D.C. 1972); E. Cleary, McCormick on Evidence (3d ed. 1984) at 671).

Even a person who was not present for a specific event can circumstantially establish the authenticity of a photograph or video depicting that event. As explained above, the bar for establishing authenticity sufficient to admit evidence to the jury is very low: only a prima facie showing that the evidence is what the government purports it to be—namely, photographs and videos of the Capitol siege in progress. For that reason, even a witness who was not present during the events depicted can help authenticate an exhibit if they can (1) identify the location(s) depicted in the photograph or video; and (2) establish that the video is generally consistent with their knowledge of events that occurred at that location during the Capitol riot. *See, e.g., Rembert*, 863 F. 2d at 1028 ("Even if direct testimony as to foundation matters is absent . . . the contents of a photograph itself, together with such other circumstantial or indirect evidence as bears upon the issue, may serve to explain and authenticate a photograph sufficiently to justify its admission into evidence." (*quoting United Stearns*, 550 F.2d at 1171)); *Holmquist*, 36 F.3d at 169 ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); *Cf. Safavian*, 435 F. Supp. 2d at 36 (authenticating emails based on "distinctive characteristics" and citing Fed. R. Evid. 901(b)(4)); *Klayman v. Judicial Watch*, 299 F. Supp. 3d 141 (D.D.C. 2018) (admitting emails and advertisements by comparing later versions with admitted versions).

Second, authenticated video or photographs can in turn authenticate other, substantially similar videos or photographs of the same scene.  *See* Fed. R. Evid. 901(b)(3) (authentication by comparison with another authenticated specimen); *see. e.g., Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th at 1371; *Stearns*, 550 F.2d at 1171-72 (where circumstantial evidence established one photograph's authenticity, it "authenticates the other four pictures as to time"); *Diaz v. County of Ventura*, 512 F. Supp. 3d 1030, 1035 (C.D. Cal. 2021) ("Here, the videos can be authenticated through other evidence on the record—namely, other video and photographic evidence of the incident that Green provides."); *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) ("e-mails that are not clearly identifiable on their own can be authenticated under Rule 901(b)(3)," by the jury's comparison with other "emails that already have been independently authenticated").

In another January 6 trial in this district, the court found similar "open-source" evidence to be authentic by comparison under Rule 901(b)(3). *United States v. Rodean*, 1:21-cr-57-TNM, Dkt. 50 (D.D.C. Apr. 20, 2022).  In *Rodean*, the court compared screenshots of video from a known source (USCP security footage), which showed the Senate Wing Doors from the inside facing out, with screenshots of video footage taken by an unspecified rioter showing the Senate Wing Doors from the outside looking in.  *Id*. at 2.  The court noted similar objects depicted in both sets of screenshots: doors of a building flanked by windows, a crowd of rioters near the windows, and a wooden beam sticking through a shattered window.  *Id*.  The court found these similarities sufficient, and granted the government's pretrial motion to find the video taken by the unspecified rioter to be authentic.  *Id*. at 6.

Indeed, multiple video and photographic exhibits can provide circumstantial evidence of each other's authenticity, even if none of them is independently authenticated.  If testimony were to establish, for example, that multiple open-source videos each showed the same events from

different angles, and were obtained from separate sources, it would be highly unlikely that multiple different sources could have created videos or photographs depicting the same event from different angles, with the same distortion or inaccuracy repeated in each of the videos or photographs from a different angle.

Below, the government provides an example of the types of evidence it will offer.

<u>Video Evidence of Defendant Using Bear Spray on Officers on West Plaza</u>

At approximately 1:11 p.m. on January 6, 2021, Defendant deployed a can of bear spray on a line of officers on the Lower West Terrace of the U.S. Capitol.  The officers were defending as barricade of bicycle racks to prevent the violent mob from accessing the western side of the Capitol building.  At trial, the government will seek to admit video evidence showing the West Plaza of the Capitol Grounds moments before and after Defendant's assaultive conduct.   For example, the government will introduce an open-source video ("…..") that captures, among other events at the Capitol on January 6, 2021, the West Plaza crowd's violent confrontation with the line of law enforcement officers that Defendant attacked.  This video can be authenticated by comparison to footage taken by the Capitol Police hand-held cameras, who were filming the mob from slightly above, from the Lower West Terrace.

The USCP hand-held video shows defendant spraying USCP officers on the south side of the Lower West Terrace.  Figure 1 is an image from this video, showing Defendant spraying a yellow stream of gas from a can towards the officers.



*Figure 1:  DSC_0006.MOV, video time stamp 0056*

Figure 2 is a zoomed-in section of Figure 1, showing in greater detail Defendant and individuals around him.  In a closer image of this scene, Defendant has several distinguishable individuals around him.  First, there is a male subject with a yellow flag, red hood, gray jacket with blue back (within a yellow circle).  Second, an individual with a blue jacket and hood stands between the man with the yellow flag and defendant (within a green circle).  Third, a subject with black coat, black ski cap, and white or light gray hood, carrying a blue flag is shown to the right of the second subject (within a blue circle).  Finally, a subject with a gray coat and shiny black helmet is shown to the left of the subject in the blue coat (within a red circle).



*Figure 2:  DSC_0006.MOV, time stamp 00:56 on video.*

This image can be compared with an open-source video showing the same conduct, but from a different angle and with audio.  The YouTube video, entitled "Trump Supporters Storm US Capitol", at video time 1:38 (Figure 3), shows the hand of an individual deploying a white can with an orange gas towards a row of officers.  The same four individuals that are seen on the CCTV hand-held video image from time stamp 00:56 are seen in the YouTube video image.  Likewise, the YouTube video includes an image of a hand holding a white spray can and dispersing an orange aerosol towards the USCP officers.



*Figure 3, YouTube video entitled "Trump Supporters Storm US Capitol", at video time 1:38.*

Based on the visible similarities between the USCP hand-held video and the YouTube video images, include multiple individuals and the consistent spray appearance, the YouTube video may be properly authenticated by comparison under Rule 901(b)(3) and through the defendant's unique characteristics under Rule 901(b)(4). *United States v. Chandler*, 5 F. App'x 839, 847 (10th Cir. 2001) (unpublished) ("Authentication under Rule 901(b)(4) is proper if the appearance, contents, distinctive characteristics and circumstances of discovery of the CCA Photograph support a finding that the matter in question is what its proponent claims.").

## <u>CONCLUSION</u>

For the reasons stated herein, the government respectfully requests that this Court rule *in limine* that the Senate Recording Studio evidence outlined in Section III is authentic and admissible pursuant to Federal Rule of Evidence 902. For all other categories of evidence described herein, the government respectfully requests that this Court rule *in limine* that this evidence may be properly authenticated and admitted using the methods outlined herein, assuming sufficient

foundation is laid at trial regarding authenticity or as stipulated by the parties.  For the reasons set

forth above, the United States respectfully requests that this Court grant the government's motion

*in limine* regarding authentication of photo and video evidence.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

</div>

By:    /s/ *Lynnett M. Wagner*
         LYNNETT M. WAGNER
         Nebraska Bar No. 21606
         Assistant U.S. Attorney
         555 4th Street, N.W.
         Washington, D.C. 20530
         Tel: (402) 661-3700
         Fax: (402) 661-3081
         E-mail:lynnett.m.wagner@usdoj.gov


         /s/ *Benjamin Kringer*
         BENJAMIN E. KRINGER
         Detailed to the U.S. Attorney's Office
         for the District of Columbia
         D.C. Bar No. 482852
         601 D Street, N.W.
         Washington, DC 20001
         benjamin.kringer2@usdoj.gov
         (202) 598-0687


         /s/ *Carolina Nevin*
         CAROLINA NEVIN
         Assistant United States Attorney
         NY Bar No. 5226121
         601 D Street, NW
         Washington, DC 20530
         (202) 803-1612
         carolina.nevin@usdoj.gov