UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-CR-453 (JDB) |
| v. : | |
| : | |
| SEAN MICHAEL MCHUGH, : | |
| : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S OMNIBUS MOTION IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant's Omnibus Motion in Limine (ECF No. 87) to preclude the following: (1) "irrelevant" testimony of law enforcement officers, (2) visual or aural evidence that is not specifically related to the defendant and the allegations in the indictment, (3) statements of the defendant protected by the First Amendment, (4) the bear deterrent canisters seized during the execution of a search warrant and any subsequent testimony, expert or otherwise, related to said cannisters, (5) electronic evidence for which proper foundation and authentication is not laid, and (6) references to the defendant as a "rioter," "assailant," "extremist," or other "inflammatory" terms. For the reasons stated herein, the Court should deny the defendant's motions.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted

until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The defendant, who traveled to Washington, D.C., from his home in California to participate in the events of January 6, 2021, entered the restricted area on the west side of the U.S. Capitol Building, where he antagonized law enforcement officers attempting to establish and hold a protective police line, used a megaphone to encourage the mob, and attacked law enforcement officers using dangerous weapons including a large metal sign and bear spray. Based on his actions on January 6, 2021, the defendant was charged with violations of 18 U.S.C. § 111(a) (Assault on a Federal Officer), 18 U.S.C. § 111(a) and (b) (2 counts – Assault on a Federal Officer with a Deadly or Dangerous Weapon); 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstructing an Official Proceeding); 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) ((Entering and Remaining in Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(2) and (b)(1)(A) (Disorderly Conduct in a Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(4) and (b)(1)(A) (Physical Violence in Restricted Area with a Deadly or Dangerous Weapon); 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct on Grounds), 5104(e)(2)(F) (Physical Violence on Grounds). *See* Superseding Indictment, ECF No. 39.

## ARGUMENT

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, No. 18-cr-198, 2022 WL 715238, at *2 (D.D.C. Mar. 10, 2022). Additionally, Rule 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United*

*States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports the defendant's requested relief.

    **I.**    **General Evidence of the Events of January 6 and the Actions of Other Rioters at the Capitol Is Relevant.**

McHugh argues that the Court should exclude general testimony from law enforcement officers and visual and aural evidence regarding the events of January 6, 2021, unrelated to the direct and specific alleged conduct of the defendant (ECF No. 87 at 1, 3.) To convict him, the jury must find that McHugh committed each offense with which he is specifically charged. It is not enough for the government to show that McHugh was simply present near others who committed crimes across the Capitol building and grounds. McHugh's argument ignores the nature of these crimes as a collective action. It was the mob's collective action that disrupted Congress, and McHugh's knowledge of the collective riot bears on his *mens rea* for each of the charged offenses.

The government does not anticipate focusing its evidentiary presentation on areas of the Capitol where McHugh did not go. However, to show the overall riot, its effects, the context of McHugh's actions, and why the certification of the Electoral College vote was suspended, the government will need present evidence to show the actions of other rioters in other areas of the Capitol building and grounds. None of the rioters was authorized to enter the Capitol. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual. But for McHugh's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25

3

("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge McHugh based on his own actions, the context of his actions will necessarily be placed before them—that context was a riot.

The actions of other rioters at multiple areas of the Capitol could be relevant to elements of the crimes with which McHugh is charged. First, to prove Count Two, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), the government must establish that McHugh committed or attempted to commit an act that obstructed, impeded, or interfered with law enforcement in the performance of their duties during a civil disorder, and the civil disorder obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. Evidence of actions of other rioters at all locations of the Capitol building and grounds is relevant to prove that a civil disorder was occurring and that it interfered with a federally protected function.

Additionally, to prove Count Five, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, the government must establish that there was an "official proceeding" and the fact that it was disrupted. The official proceeding was the certification of the Electoral College vote, and, as with Count Two, proving this charge requires presenting evidence involving the actions of other rioters at all locations of the Capitol building and grounds. Moreover, Count Five includes the alternative theory of aiding and abetting, pursuant to 18 U.S.C. § 2. Therefore, the conduct of other rioters is extremely relevant.

Furthermore, the government's use of any potential summary witnesses or evidence to this effect would permissibly "help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial." *See*

4

*United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). Any such aspects of the government's case would need to be "accurate and nonprejudicial[,]" *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014), and require "a sufficient foundation[,]" *United States v. Mitchell*, 816 F.3d 865, 877 (D.C. Cir. 2016). McHugh cannot substantiate his contention that the government should be precluded from presenting this information.

Even if this Court found the actions of other rioters were prejudicial, a limiting instruction would be the appropriate remedy. The D.C. Circuit has consistently upheld the use of limiting instructions as a way of minimizing the residual risk of prejudice. *See, e.g.*, *United States v. Douglas,* 482 F.3d 591, 601 (D.C. Cir. 2007) (emphasizing the significance of the district court's instructions to jury on the permissible and impermissible uses of the evidence); *Pettiford*, 517 F.3d at 590 (same); *Crowder II*, 141 F.3d at 1210 (stating that mitigating instructions to jury enter into the Rule 403 balancing analysis).

Because the actions of other rioters are relevant and not unduly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.

**II.     The Defendant's Protected Speech Is Admissible at Trial.**

While McHugh correctly asserts that his social media statements are protected speech (ECF No. 87 at 5), this in no way precludes their use as evidence at trial. The government can introduce McHugh's statements into evidence even if the statements themselves are shielded from prosecution as protected speech. This should be uncontroversial; the use of speech to prove a crime is commonplace and well-established. As the Supreme Court has noted: the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). "Evidence of a defendant's

previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id.*

Courts across the country, including this Court, have allowed evidence of defendants' statements for the purposes sanctioned by *Mitchell*. In another January 6 case, Judge Lamberth noted, "even if [defendant's] statements were themselves protected, the First Amendment does not prohibit their consideration as evidence of motive or intent." *United States v. Chansley*, 525 F. Supp. 3d 151, 164 (D.D.C. 2021). In another, Judge Cooper ruled similarly:

> Nor does the Court find any First Amendment concerns in the government's use of Robertson's statements to show intent.... If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 2022 WL 969546 at *6 (D.D.C. 2022) (internal citation omitted).

Outside the January 6 context, courts have cited *Mitchell* to uphold the admission of a wide range of statements, including but not limited to rap lyrics and terrorist writings. See, e.g., *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (rap lyrics); *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) ("The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise") (internal citation omitted) (rap lyrics and tattoos); *United States v. Salameh*, 152 F.3d 88, 111-12 (2d Cir. 1998) (the defendants were not "prosecuted for possessing or reading terrorist materials. The materials seized … were used appropriately to prove the existence of the bombing conspiracy and its motive").

Such speech is particularly relevant here. McHugh's charges include several counts that require the government to prove his intent – such as obstruction of an official proceeding, which requires the government to prove, among other elements, that he intended to obstruct the

certification that day. McHugh is not being prosecuted for his speech; rather, his speech is evidence of the crimes he committed. Accordingly, this Court should not credit McHugh's argument that somehow his statements are less relevant or deserve greater evidentiary scrutiny simply for their protected nature.

### III. The Government Will Lay the Proper Foundation for the Bear Spray Cannisters Offered at Trial, and Testimony Regarding the Contents of the Cannisters Will Be Helpful to the Jury.

McHugh argues that the bear spray cannisters seized at his residence during the execution of a search warrant should be precluded because the government "has not identified the cannisters seized as the same allegedly in the Defendant's possession at the Capitol on January 6, 2021, merely noting similarity." (ECF No. 87 at 6). However, the government has not yet had an opportunity to make that factual showing. It will do so at trial through the testimony of witnesses who were present at the West Front of the Capitol grounds on January 6, video evidence, evidence of the defendant's social media statements, evidence of defendant's jail calls that were recorded at the Sacramento County Main Jail, and the testimony of FBI witnesses who recovered the cannisters and tested their contents.

McHugh also argues that testimony, expert or otherwise, regarding the cannisters and their contents is "irrelevant and immaterial" and should therefore be precluded. (ECF No. 87 at 7.) For the reasons explained below, McHugh's motion should be denied.

Federal Rules of Evidence 702, 703, and 704 establish the basic parameters for expert witness testimony. Rule 702 permits a witness who is qualified as an expert to testify in the form of an opinion if the "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible at trial, expert testimony "must be helpful to the trier of fact" and cannot serve to "merely tell the jury what result to reach." Fed. R. Evid. 704, Advisory Committee Notes.

Applying these rules, the Supreme Court has held that a trial court must act as a "gatekeeper" and exclude expert testimony if it is (1) not reliable or (2) not relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (observing that Rule 702 assigns to the trial judge the task of ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). This test ensures that each testifying expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). An expert's opinion testimony will be excluded as unreliable if the expert is unqualified to provide the opinion, if the expert did not base the opinion on sufficient facts or data or employ reliable methods and principles, or if the expert did not reasonably apply appropriate methods and principles to the facts of the case. *See* Fed. R. Evid. 702 (requiring expert testimony to meet these standards); *Kumho Tire*, 526 U.S. at 155-56 (affirming exclusion of expert testimony based upon unreliable methodology).

Expert testimony must also satisfy the basic relevancy rules set forth in Rules 401 and 403. As the Supreme Court explained, because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citations omitted).

The government intends to call two witnesses who will testify with specialized knowledge regarding the cannisters and their contents to assist the jury in understanding facts at issue – those are, what constitutes bear spray, and whether bear spray is a deadly or dangerous weapon. The government will elicit testimony from a chemist employed at the FBI who tested the contents of the Frontiersman Bear Attack Deterrent Spray cannisters recovered from McHugh's residence.

Based on his scientific training and experience, this chemist will explain to the jury the chemical components of oleoresin capsicum (OC) and capsaicinoids found in various forms of OC spray, including bear spray. He will also testify about the procedures and findings he used to test the cannisters, and his conclusions of the chemical components of capsaicin and dihydrocapsaicin that were contained in the cannisters. This testimony will assist the jury in determining whether the substance that McHugh deployed on January 6 was indeed bear spray.

The government also intends to call a witness from the Metropolitan Police Department ("MPD") who has significant training and experience with defensive sprays containing oleoresin capsicum (OC) spray and the human response to exposure of OC spray products. He is also familiar with the potency of the Frontiersman Bear Attack Deterrent Spray compared with other OC sprays with which he has experience. This witness's testimony will assist the jury in determining whether the substance that McHugh deployed was a deadly or dangerous weapon.

As such, McHugh's motion should be denied, and the government should be permitted to elicit testimony from these two witnesses.

### IV. The Government Will Lay the Proper Foundation for Electronic Evidence Offered at Trial.

The government will lay the proper foundation for the electronic evidence seized from devices inside the defendant's home and from cloud-based repositories before it offers them into evidence at trial, in accordance with Federal Rule of Evidence 901(a), which states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The government may lay the foundation based on the testimony of a witness or through certificates in accordance with Federal Rule of Evidence 902(11), which allows certified domestic records of a regularly conducted activity to be admitted into evidence with no extrinsic evidence of

authenticity, as the evidence is self-authenticating. The government further may lay the foundation based on the testimony of a witness or through certificates in accordance with Federal Rule of Evidence 902(4), Certified Copies of Public Records, and Federal Rule of Evidence 902(6), Newspapers and Periodicals.

    **V.    The Descriptors Accurately Describe the Events of January 6, and the Federal Rules of Evidence Do Not Preclude Them.**

McHugh argues that the Court should bar terms that characterize the defendant as a "rioter," "assailant," "extremist," or other terms that he describes as "inflammatory." (ECF No. 87 at 9.) Evidence or language is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 143 (quoting Fed. R. Evid. 403, advisory committee's note). By their very nature, criminal charges involve an accusation that someone has wronged another person or has wronged society. Accordingly, such charges arouse emotion—and there is nothing improper about that. Indeed, while cautioning against prosecutorial misconduct in *United States v. Berger*, the Supreme Court simultaneously recognized that "[t]he United States Attorney . . . may prosecute with earnestness and vigor—indeed, he should do so." *Berger*, 295 U.S. 78, 88 (1935). "[T]he law permits the prosecution considerable latitude to strike 'hard blows' based on the evidence and all reasonable inferences therefrom." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (*quoting United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). When a prosecutor's comments fairly characterize the offense, fairly characterize the defendant's conduct, and represent fair inferences from the evidence, they are not improper. *Cf. Rude*, 88 F.3d at 1548 (the use of words like victim, deceit, outlandish, gibberish, charlatan, and scam was not improper); *Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) ("[T]here is no rule [of evidence or ethics] requiring the prosecutor to use a euphemism for [a crime] or preface it by the word 'alleged.'").

Here, the government should not be required to dilute its language and step gingerly around McHugh's crimes. Contrary to his insinuations, what took place on January 6, 2021, was, in fact, a riot involving rioters, and an attack on the United States Capitol, the government of the United States, and American democracy. After carefully considering the facts of other January 6 cases, many members of this Court have recognized the riot as just such an attack. *See*, *e.g.*, *United States v. Mostofsky*, 1:21-cr-138 (JEB), Sent. Tr. at 40–41, May 6, 2022 (describing the riot as an "attack," describing the Capitol as "overrun," and describing Mostofsky and other rioters as engaged in "an attempt to undermine [our] system of government."); *United States v. Rubenacker*, 1:21-cr-193 (BAH), Sent. Tr. at 147–48, May 26, 2022 (describing the defendant as "part of this vanguard of people storming the Capitol Building" as part of the initial breach, and finding that his conduct "succeeded, at least for a period of time, in disrupting the proceedings of Congress to certify the 2020 presidential election"); *United States v. Languerand*, 1:21-cr-353 (JDB), Sent. Tr. at 33–34, January 26, 2022 ("[T]he effort undertaken by those who stormed the Capitol . . . involved an unprecedented and, quite frankly, deplorable attack on our democratic institutions, on the sacred ground of the United States Capitol building, and on the law enforcement officers who were bravely defending the Capitol and those democratic values against the mob of which the defendant was a part."). None of this language is hyperbole; rather, these findings used vivid and violent language because they described a visceral and violent event. So, too, will prosecutors need to use appropriate language—and not euphemisms—to describe the nature and gravity of McHugh's conduct.

For the reasons stated above, the defendant's motions should be denied.

                              Respectfully submitted,

                              Matthew M. Graves
                              United States Attorney
                              D.C. Bar No. 481052

By:    */s/ Carolina Nevin*
        CAROLINA NEVIN
        Assistant United States Attorney
        New York Bar No. 5226121
        601 D Street, NW
        Washington, DC 20001
        carolina.nevin@usdoj.gov
        (202) 803-1612

        */s/ Benjamin Kringer*
        BENJAMIN E. KRINGER
        Detailed to the U.S. Attorney's Office
        for the District of Columbia
        D.C. Bar No. 482852
        601 D Street, N.W.
        Washington, DC 20001
        benjamin.kringer2@usdoj.gov
        (202) 598-0687

        */s/ Lynnett M. Wagner*
        LYNNETT M. WAGNER
        Nebraska Bar No. 21606
        Assistant U.S. Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        Tel: (402) 661-3700
        Fax: (402) 661-3081
        E-mail:lynnett.m.wagner@usdoj.gov