UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Case No. 21-cr-453 (JDB) |
| v. | : |
| | : |
| SEAN MICHAEL MCHUGH, | : |
| | : |
| Defendant. | : |

**UNITED STATES' OPPOSITION TO DEFENDANT'S SECOND OMNIBUS MOTION IN *LIMINE***

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant's Second Omnibus Motion in *Limine* (ECF No. 97) to preclude the following: (1) co-conspirator statements and hearsay, (2) statements made by the Defendant to a government official or agent where clear and explicit evidence of the voluntariness of such statement is absent; and (3) evidence to prove the Defendant's presence and identity in Washington, D.C. on or about January 6, 2021, as moot and accumulative. For the reasons stated herein, the Court should deny the defendant's motions.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The Defendant, who traveled to Washington, D.C., from his home in California to participate in the events of January 6, 2021, entered the restricted area on the west side of the U.S.

Capitol Building, where he antagonized law enforcement officers attempting to establish and hold a protective police line, used a megaphone to encourage the mob, and attacked law enforcement officers using dangerous weapons including a large metal sign and bear spray. Based on his actions on January 6, 2021, the defendant was charged with violations of 18 U.S.C. § 111(a) (Assault on a Federal Officer), 18 U.S.C. § 111(a) and (b) (2 counts – Assault on a Federal Officer with a Deadly or Dangerous Weapon); 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstructing an Official Proceeding); 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) ((Entering and Remaining in Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(2) and (b)(1)(A) (Disorderly Conduct in a Restricted Area with a Deadly or Dangerous Weapon), 1752(a)(4) and (b)(1)(A) (Physical Violence in Restricted Area with a Deadly or Dangerous Weapon); 40 U.S.C. §§ 5104(e)(2)(D) (Disorderly Conduct on Grounds), 5104(e)(2)(F) (Physical Violence on Grounds). *See* Superseding Indictment, ECF No. 39.

## **ARGUMENT**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The general rule is that relevant evidence is admissible," *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993), a "liberal" standard, *United States v. Moore*, 590 F. Supp. 3d 277 (D.D.C. 2022). Additionally, Federal Rule of Evidence 403 does not require the government "to sanitize its case, to deflate its witnesses' testimony or to tell its story in a monotone." *United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998). Neither Rule 401 nor 403 supports the defendant's requested relief.

I.  STATEMENTS BY OTHER JANUARY 6 RIOTERS ARE RELEVANT AND ADMISSIBLE.

McHugh argues that the Court should exclude under Federal Rule of Evidence 801(d)(2)(E) any hearsay statements made by any co-conspirator, whether indicted or unindicted, which directly or indirectly refer to McHugh or would otherwise be used to incriminate him. (ECF No. at 1-2). McHugh asks the Court to determine whether such statements fall under the hearsay exception for co-conspirator statements under Rule 801 before the statements are presented to the jury. Further, McHugh seeks an order that the United States be required before trial to name all of its unindicted co-conspirators whose out-of-court statements may be used, so that McHugh may exercise his right to impeach such declarants.

As an initial matter, McHugh was indicted as a single defendant case. Further, the indictment does not include a conspiracy charge. (ECF No. 39). However, McHugh is one of a number of individuals that took action to challenge the certification of the election on January 6, 2021, at the U.S. Capitol, and the government will introduce evidence that will include statements by other rioters who were present with McHugh on January 6, 2021.

Under Federal Rule of Evidence 801(d)(2)(E), an out-of-court statement is not hearsay if it is "offered against an opposing party and … was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to admit a co-conspirator's out-of-court statement, the trial court must find by the preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant and the out-of-court declarant were involved in the conspiracy; and (3) the statement to be introduced was made in furtherance of that conspiracy. *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 186–87 (D.D.C. 2015).

McHugh has requested a pretrial notice or hearing of all co-conspirator statements that the government intends to introduce. While the D.C. Circuit has suggested that the "better practice"

3

is for the trial court to determine the admissibility of co-conspirator statements before such statements are presented to a jury, "it is impractical in many cases for a court to do so." *United States v. Bazezew*, 783 F. Supp. 2d 160, 166 (D.D.C. 2011); *Mosquera-Murillo*, 153 F. Supp. 3d at 187. The trial court has considerable discretion to proceed to trial and to admit as non-hearsay statements of co-conspirators, as they are offered, "subject to connection". This is a common practice used frequently to avoid mini-trials of the evidence in advance of the actual trial. *Id.*

To convict McHugh, the jury must find that he committed each offense with which he is specifically charged. It is not enough for the government to show that McHugh was simply present near others who committed crimes across the Capitol building and grounds. McHugh's argument ignores the nature of these crimes as a collective action. It was the mob's collective action that disrupted Congress, and statements and actions by others in the mob is evidence showing McHugh's *mens rea* for each of the charged offenses.

The government anticipates introducing evidence including statements by other rioters in the vicinity of McHugh to explain the overall riot, its effects, the context of McHugh's actions, and why the certification of the Electoral College vote was suspended. Several examples of those statements by other rioters were captured in recordings made by the Metropolitan Police Department (MPD) officers on their body-worn camera videos on January 6, 2021. For example, one of the MPD videos shows at approximately 1:28 p.m., McHugh (circled in red) is seen with a female subject (circled in yellow) (Figure 1). The female uses McHugh's bullhorn to question and distract the officers at the bike racks on the Lower West Plaza. See Notice of Filing Video

Exhibits,[1] Ex. 1, BWC DC (4), approximate time 13:28:50[2]. At the same time, other rioters confront the officers who are trying to control the crowd. Ex. 1, time 13:28:43 – 13:29:26.



*Figure 1*

The MPD body-worn camera videos were provided to McHugh's counsel in discovery in August 2021. (ECF No. 29). Several examples of the MPD body-worn camera videos showing McHugh and other rioters are being provided to the court with this response, and they are described more fully in section II(A) below.

In addition, there are several third party videos that include statements by McHugh and other rioters in McHugh's vicinity. These third party videos were provided to McHugh's counsel in discovery. (ECF No. 29, 48). On July 22, 2022, the government provided McHugh's counsel with a 45-page document containing links to multiple open source videos, with specific links and timecodes of when McHugh appeared on these videos, and he and others made statements. The government intends to introduce several of these third party videos as evidence.

---

[1] See Notice of Filing of Video Pursuant to Local Criminal Rule 49, filed concurrently with this response.
[2] The MPD body-worn camera videos contain a date and time stamp in the upper right corner of the video. References in the document to times on the MPD body-worn camera videos reference these time stamps.

As explained in the Government's Opposition to the Defense's Omnibus Motion (ECF No. 98), the government will need present evidence to show the actions and statements of other rioters in other areas of the Capitol building and grounds. None of the rioters was authorized to enter the Capitol. Law enforcement officer witnesses will explain that, in expelling rioters, they could not distinguish between those rioters who were overtly violent and those who were not; everyone had to leave. This is because law enforcement could not predict who would act violently; any member of the crowd might be a threat to them. Indeed, throughout the day, individual officers found their attention divided by the need to monitor the whole crowd, rather than focusing on a specific individual.

But for McHugh's actions alongside so many others, the riot likely would have failed to delay the certification vote. *See United States v. Mazzocco*, No. 21-cr-54, Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). While a jury will judge McHugh based on his own actions, the context of his actions will necessarily be placed before them—that context was a riot.

The actions and statements of other rioters at multiple areas of the Capitol could be relevant to elements of the crimes with which McHugh is charged. First, to prove Count Two, Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), the government must establish that McHugh committed or attempted to commit an act that obstructed, impeded, or interfered with law enforcement in the performance of their duties during a civil disorder, and the civil disorder obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. Evidence of statements by other rioters at all locations of the Capitol building and grounds is

6

relevant to prove that a civil disorder was occurring and that it interfered with a federally protected function.

Additionally, to prove Count Five, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2, the government must establish that there was an "official proceeding" and the fact that it was disrupted.  The official proceeding was the certification of the Electoral College vote, and, as with Count Two, proving this charge requires presenting evidence involving the actions of other rioters at all locations of the Capitol building and grounds. Moreover, Count Five includes the alternative theory of aiding and abetting, pursuant to 18 U.S.C. § 2.  Therefore, the actions and statements of other rioters is extremely relevant.

Because the statements and actions of other rioters are relevant and not unduly prejudicial and any prejudice can be addressed through an appropriate limiting instruction, its admission is appropriate.

II.    THE DEFENDANT'S STATEMENTS TO GOVERNMENT OFFICIALS AND AGENTS WERE VOLUNTARY AND ARE ADMISSIBLE AT TRIAL.

McHugh argues that the Court should exclude any statements made by him to any government official or agent unless it is proven that there was a voluntary and intelligent waiver of a known right. (ECF No. 97, pp. 2-4).  McHugh does not identify what statement or statements he is referring to.

    A.    Description of Statements by McHugh

McHugh was arrested on the federal arrest warrant on May 27, 2021.   (ECF No. 5).  At the time of his arrest, he declined to speak with investigators regarding the charges, and was transported to the Sacramento County Mail Jail.  As such, law enforcement did not take any statement from McHugh regarding his involvement in the January 6, 2021, riot.  A report

7

containing this information, number 089B-WF-3368293-59_AFO_0000061.pdf, was provided to McHugh's counsel in August 2021. (ECF No. 29).

McHugh's motion is rather broad and does not define what statements he is challenging. On January 6, 2021, McHugh made multiple statements to law enforcement on the lower west plaza when he was behind a barricade of bike racks.  These statements are recorded either on Metropolitan Police Department ("MPD") body-worn cameras or from third party sourced videos of January 6, 2021.  In many of these statements, McHugh is using a bullhorn to expand the reach of his statements.  A review of MPD body-worn camera videos shows McHugh making statements without any interrogation by law enforcement.  Instead, McHugh is directing his statements to the crowd and law enforcement without any prompting by law enforcement.  This shows McHugh's intent to obstruct the certification of the election and to encourage other rioters to take action against law enforcement:

1. At approximately 1:14 p.m., McHugh is recorded yelling at officers "We're coming, you can't stop us forever. . .".  *See* Notice of Filing Video Exhibits, Ex. 2, BWC DC(3), time 13:14:54; Figure 2.



*Figure 2*

2. At 1:32 p.m., McHugh says to law enforcement "Imagine if we protect our country with our Second Amendment – you guys wouldn't be standing there right now… this is a good warning to you…you better heed our warning…cause when we do protect our country, you're not going to like it, you're gonna get the f[***] out of our way…..we will be exercising our second amendment rights." .". *See* Notice of Filing Video Exhibits, Ex. 3, BWC DC(8), at approximate time 13:32:17; Figure 3.



*Figure 3*

3. At approximately 1:35 p.m., McHugh states "…There's a Second Amendment behind us … What are you gonna do when we protect [] Constitution with the Second Amendment. What are you gonna do then? . . . You aint' gonna hold the line . . .". .". *See* Notice of Filing Video Exhibits, Ex. 4, BWC DC(4), and starting at approximate time 13:35:23; Figure 4.



*Figure 4*

9

4. At approximately 1:37 p.m., McHugh yells "Come on, come on you guys" to the crowd of rioters and waving on the crowd to approach the police line. *See* Notice of Filing Video Exhibits, Ex. 4, BWC DC(4), at approximate time 13:37:58; Figure 5.



*Figure 5*

5. At 1:40 p.m., McHugh acts with other rioters to push a large metal sign towards police. While he has his hands on a portion of the sign, McHugh is recorded saying "Put it up there" as McHugh and the crowd push the sign into the officers. *See* Notice of Filing Video Exhibits, Ex. 5, BWC DC(4), at approximate time 13:40:12; Figure 6.



*Figure 6*

In addition, the government provided McHugh's counsel with open source videos, including a video from the New York Times entitled "How Trump Supporters Took the U.S. Capitol Visual Investigations.mp4" in which McHugh makes statements without any law enforcement present.

Finally, McHugh made a number of calls from the Sacramento County Jail to what are believed to be family members. These phone calls were recorded, and copies of the audio files have been provided in discovery to McHugh's counsel. At the jail, McHugh was advised the calls were being recorded. Further, at the beginning on each phone call and prior to any conversation, McHugh and the person called were advised "[t]his call will be recorded and subject to monitoring at any time." McHugh made a number of calls where specific statements regarding his conduct on January 6, 2021, including his use of bear spray on police officers, was discussed. For example:

1. June 1, 2021, call with "Mom": McHugh states: "…They can't prove what was in that canister, … even though they did pick up 2 cans of bear spray from my house … So if I can show if there's imitation bear spray…" (Reference 161878536, approximate time 8:00).

2. June 1, 2021, call with "Amy": McHugh states: "…They have to prove what was in those canisters. . . they found the canisters in the house. . . if we can show reasonable doubt that it could have been anything else that was nonharmful. . . They can't prove what was in there. . . " (Reference 161878072, approximate time 5:45).

3. June 13, 2021, call with "Amy": McHugh states: "…They still gotta prove what's inside of that canister." "Amy" says: "The spray is the problem." McHugh states: "…well go ahead and find the canister and prove what's inside of it….they've got the whole video…." (Reference 162605682, approximate time 5:35).

4. June 15, 2021, call with "Mom": McHugh states: "…We need to get online and find fart spray or imitation bear spray…paint that looks like whatever … Anything to raise a shadow of doubt as to what was in that canister...They have the burden of proof...I live in an area where there's bears…" (Reference 162744148, approximate time 17:40).

5. June 16, 2021, call with "Amy": McHugh states: "…I didn't hurt anybody…I wasn't even attempting to. It [bear spray] just went off in the air." (Reference 162836056, approximate time 11:17).

11

      6.      June 20, 2021, call with "Mom":  McHugh states "…spraying yellow spray in the air and then not hitting anybody is not assault…" (Reference 163096454, approximate time 6:40).

      7.      June 21, 2021, call with "Amanda":  McHugh states "… the picture shows the spray going up in the air … I was so far away from the police that it couldn't even be assault, it would be attempted assault at best…" (Reference 163114014, approximate time 6:40).

      B.      <u>The Defendant's Statements Were Made Voluntarily.</u>

The Supreme Court has indicated that the inquiry into whether a statement is obtained voluntarily should be determined with reference to the totality of the circumstances, and that the ultimate question is whether the suspect's "will [has been] overborne" by "coercive police activity." Colorado v. Connelly, 479 U.S. 157, 167, 178 n.2, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986).  If there is no coercive police activity, a statement is considered voluntary. *Connelly*, 479 U.S. at 167; *Baird v. United States*, 851 F.2d 376, 382 (D.C. Cir. 1988).

In this case, law enforcement did not question McHugh after his arrest.  As the footage from officers' body-worn cameras show, McHugh made numerous statements to law enforcement while at the riot at the U.S. Capitol over the course of several hours.  On January 6, 2021, officers did not question McHugh.  At the Sacramento County Jail, law enforcement did not participate in the jail calls between McHugh and those he called.  Accordingly, all of McHugh's statements are voluntary and the government should not be precluded from admitting these statements in evidence.

      C.      <u>The Defendant's Statements Did Not Violate *Miranda*.</u>

*Miranda* set forth prophylactic rules, based on the Constitution, to protect a suspect's Fifth Amendment rights. *See, e.g., Dickerson v. United States*, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000).  Essentially, Miranda requires that suspects in police custody be advised of their rights before they are subjected to interrogation, and that any statement be the product of a

knowing, intelligent, and voluntary waiver of those rights. *Id.* *Miranda* warnings are necessary only when officers place a suspect in custody. *See J.D.B. v. North Carolina*, 564 U.S. 261, 270, 131 S. Ct. 2394, 180 L. Ed. 2d 310 (2011). To determine whether an individual is in custody, courts "examine the totality of the circumstances" and determine "whether a reasonable person in those circumstances would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995)).

*Miranda* is inapplicable where the suspect is in custody but volunteers a statement in the absence of interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). "Interrogation" includes "words or actions . . . that the police should know are reasonably likely to elicit an incriminating response from the subject." *Innis*, 446 U.S. at 300-01 ("Interrogation as conceptualized . . . must reflect a measure of compulsion above and beyond that inherent in custody itself.") (internal punctuation omitted). Even express questioning will not be "interrogation" if it is not reasonably likely to elicit an incriminating response. *United States v. Bogle*, 114 F.3d 1271, 1275 (D.C. Cir. 1997).

In his motion in *limine*, McHugh has not identified any particular statement he seeks to limit. Law enforcement did not interrogate McHugh on January 6, 2021, and he was not in custody at that time. Law enforcement did not interrogate McHugh upon his arrest on May 27, 2021, nor while he was making telephone calls at the Sacramento County Jail. As such, there is no statement where *Miranda* was implicated in this case; therefore, the government should not be limited in the use of any such statements made by McHugh.

III.     EVIDENCE OF DEFENDANT'S PRESENCE AND IDENTITY IN WASHINGTON D.C. ON OR ABOUT JANUARY 6, 2021, IS ADMISSIBLE AS EVIDENCE OF THE DEFENDANT'S PLANNING AND PREPARATION.

At trial, the government will seek to introduce evidence it obtained through legal process to show McHugh's preparation and planning for his trip to Washington, D.C. for the January 6, 2021, date. This evidence includes airline, Expedia, Yotel, and credit card documents involving McHugh's travel and housing arrangements. Defendant has filed a stipulation with the Court that briefly describes his travel and hotel stay in Washington, D.C. McHugh seeks to exclude this evidence of travel and hotel arraignments stays because it is "moot and accumulative" and should be excluded under Federal Rule of Evidence 403. However, McHugh's stipulation does not address Defendant's planning and preparation for his actions on January 6, 2021.

As an initial matter, the government seeks to introduce this evidence to show the Defendant's identity in Washington, D.C. around January 6, 2021. These records show that Defendant was the individual at the U.S. Capitol grounds on January 6, 2021. "A defendant's offer to stipulate or concede an element of an office. . . does not deprive the government's evidence of relevance." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998); *see also Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 649, 136 L. Ed. 2d 574 (1997). Here, McHugh's stipulation does not limit the government's introduction of the evidence.

However, even if the Court considers this evidence of other "crimes, wrongs, or acts", this evidence is admissible to show McHugh's planning and preparation for his actions on January 6, 2021. For example, the records will show the timing of McHugh's planning for January 6, 2021, and that McHugh made arrangements to travel to D.C. with two other individuals, among other things. As such, the government should be allowed to introduce this evidence for these other purposes.

Under Federal Rule of Evidence 403, the Court should find that the probative value of McHugh's travel and hotel evidence is not substantially outweighed by potential undue prejudice to McHugh.

## CONCLUSION

For the reasons stated above, the Defendant's Second Omnibus Motion In *Limine* (ECF No. 97) should be denied.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

        */s/ Lynnett M. Wagner*
        LYNNETT M. WAGNER
        Nebraska Bar No. 21606
        Assistant U.S. Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        Tel: (402) 661-3700
        Fax: (402) 661-3081
        E-mail:lynnett.m.wagner@usdoj.gov

And:   */s/ Carolina Nevin*
       CAROLINA NEVIN
       Assistant United States Attorney
       New York Bar No. 5226121
       601 D Street, NW
       Washington, DC 20001
       carolina.nevin@usdoj.gov
       (202) 803-1612

And:   */s/ Benjamin Kringer*
       BENJAMIN E. KRINGER
       Detailed to the U.S. Attorney's Office
       for the District of Columbia
       D.C. Bar No. 482852
       601 D Street, N.W.
       Washington, DC 20001
       benjamin.kringer2@usdoj.gov
       (202) 598-0687