1               UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

2

    * * * * * * * * * * * * * * *  )
3  UNITED STATES OF AMERICA,     )   Criminal Action
                       )   No. 21-00453-1
4            Plaintiff,    )
                       )
5    vs.                 )
                       )
6  SEAN MICHAEL McHUGH,       )   Washington, D.C.
                       )   April 17, 2023
7            Defendant.    )   10:01 a.m.
                       )
8    * * * * * * * * * * * * * * *  )

9

10           TRANSCRIPT OF STIPULATED BENCH TRIAL
          BEFORE THE HONORABLE JOHN D. BATES,
11          UNITED STATES DISTRICT JUDGE

12

13  APPEARANCES:

14  FOR THE GOVERNMENT:     LYNNETT WAGNER, ESQ.
                      UNITED STATES ATTORNEY'S OFFICE
15                  1620 Dodge Street
                  Suite 1400
16                  Omaha, Nebraska 68102

17                  CAROLINA NEVIN, ESQ.
                  U.S. DEPARTMENT OF JUSTICE
18                  601 D Street, Northwest
                  Washington, D.C. 20001
19

                  BENJAMIN E. KRINGER, ESQ.
20                  UNITED STATES ATTORNEY'S OFFICE
                   FOR THE DISTRICT OF COLUMBIA
21                  555 Fourth Street, Northwest
                  Eleventh Floor
22                  Washington, D.C. 20530

23  FOR THE DEFENDANT:      JOSEPH W. ALLEN, ESQ.
    (*Appearing Remotely*)  LAW OFFICES OF JOSEPH W. ALLEN
24                  1016 State Highway 248
                  Suite I
25                  Branson, Missouri 65616

```
 1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                                Official Court Reporter
 2                              United States District Court for the
                                 District of Columbia
 3                              333 Constitution Avenue, Northwest
                                Room 6706
 4                              Washington, D.C. 20001
                                (202) 354-3269
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  Your Honor, we have

2    Criminal Action 21-453, the United States of America versus

3    Sean McHugh.

4          We have Ms. Carolina Nevin, Ms. Lynett Wagner and

5    Mr. Benjamin Kringer representing the Government; and we

6    have Mr. Joseph Allen representing Mr. McHugh.

7          Mr. McHugh is in person and his counsel,

8    Mr. Allen, is appearing by video.

9          THE COURT:  Let's start with that.

10         Mr. Allen, good morning to you.  I understand that

11   a flight has been canceled out from under you and you are

12   stuck in, what, Kansas City Airport?

13         MR. ALLEN:  That's correct, your Honor.  Thank

14   you.  It was canceled and rebooked for today.

15         THE COURT:  All right.  What I need to know, this

16   is an in-person proceeding and it needs to be an in-person

17   proceeding in my view.  But Mr. McHugh is here.  So that

18   does in my view make it an in-person proceeding as long as

19   both you and Mr. McHugh consent to that and the Government

20   sees no problem with it.

21         So let me start with you, Mr. Allen.  Do you

22   understand that Mr. McHugh does consent to proceeding with

23   you by video?

24         MR. ALLEN:  I consent to it.  I would have to

25   leave it to Mr. McHugh to speak for himself.

```
1              THE COURT:  We'll have Mr. McHugh speak for
2     himself.
3              Good morning, Mr. McHugh.
4              THE DEFENDANT:  Good morning, your Honor.
5              THE COURT:  So Mr. Allen has been stuck in an
6     airport.  He's going to get here late today, I think,
7     although he has another proceeding tomorrow.
8              But the question for you is whether you're
9     prepared to proceed with this stipulated trial this morning
10    with Mr. Allen not sitting by your side in the courtroom,
11    but instead participating remotely by video.
12             THE DEFENDANT:  My only concern is if I have to
13    object or tell him anything, I don't know how I'm going to
14    do it.
15             THE COURT:  We don't either.  But I know this:  If
16    you do want to discuss anything with Mr. Allen, either we'll
17    accommodate that and Mr. Bradley can probably accommodate
18    it.  It'll take a little time, but he can accommodate it.
19    Or if we can't, then we're going to have to continue the
20    matter and postpone it, because I'm not going to deprive you
21    of any opportunity that you need to discuss anything with
22    your counsel.
23             THE DEFENDANT:  As long as we can cut out or work
24    around, making something available for me.
25             THE COURT:  Yes.  That would be a private
```

1    conversation.  That's what I mean.  We would have to

2    accommodate it so you can discuss it with Mr. Allen

3    privately.

4              THE DEFENDANT:  Yes, your Honor.  That's fine.

5              THE COURT:  With that understanding, the

6    Defendant, Mr. McHugh, is prepared to go forward.

7              And I'll ask the Government -- who's going to

8    speak for the Government this morning?

9              MS. WAGNER:  I will, your Honor.

10             THE COURT:  And does the Government see any

11   problem with participating -- with Mr. Allen participating

12   by video and us proceeding in this fashion?

13             MS. WAGNER:  The Government has no objection.

14             THE COURT:  So let's move forward; and then if we

15   need to stop the proceedings at any time, we'll do so.

16             I do have a lot of questions that I'm going to be

17   asking you, Mr. McHugh, so that's the major thing that we'll

18   be doing for the next half an hour, 45 minutes.

19             So the understanding is that at sentencing, I

20   believe, the Government would be dismissing Counts 1, 2, 3,

21   6, 7, 8, 9 and 10.  Is that correct?

22             MS. WAGNER:  Yes, your Honor.  That's the

23   Government's understanding, at the time of sentencing.

24             THE COURT:  And there's no estimate that's been

25   provided with respect to a sentencing guideline calculation

1     and there is none that either the Government or you,

2     Mr. Allen, believes needs to be provided to Mr. McHugh in

3     the context of this proceeding?

4              MS. WAGNER:  That's correct, your Honor.

5              THE COURT:  Mr. Allen, do you agree with that?

6              MR. ALLEN:  I do agree with that, your Honor.

7              THE COURT:  I'll be asking Mr. McHugh one or two

8     questions relating to the sentencing guidelines, but not me

9     going through any estimate under the guidelines.

10             THE DEFENDANT:  Your Honor?  If I may, I would ask

11    that those counts be dismissed with prejudice at the time of

12    sentencing.

13             THE COURT:  Well, they would be dismissed

14    effectively with prejudice.  That's how it occurs.  But you

15    can discuss that with Mr. Allen so you're sure to have a

16    correct understanding of what happens.

17             So we're here this morning for a stipulated trial.

18    That means that you, Mr. McHugh, have agreed to certain

19    facts; and if I find that those facts are proven beyond a

20    reasonable doubt, then those facts would be sufficient to

21    sustain convictions on Counts 4 and 5 of the superseding

22    indictment.

23             In order for me to accept your factual admissions,

24    I do need to ask you a series of questions.  They're

25    designed to satisfy me that you understand the terms of this

1    stipulated trial as well as the rights that you're giving up

2    by proceeding through a stipulated trial.  If you don't

3    understand any question that I ask you, please feel free to

4    ask me to explain it or repeat it or clarify it, whatever is

5    necessary.  And if you wish to speak with counsel before you

6    answer a question, feel free to indicate that; and that's

7    where we'll have to arrange for you to have a private

8    conversation with Mr. Allen.

9              So we're going to start by asking Mr. Bradley, the

10   deputy clerk, to administer the oath to Mr. McHugh.

11             Mr. McHugh, if you would stand for a moment.

12             Mr. Bradley.

13             (Whereupon, the Defendant was duly sworn.)

14             THE COURTROOM DEPUTY:  Please be seated.  Thank

15   you.

16             THE DEFENDANT:  Thank you.

17             THE COURT:  Mr. McHugh, do you understand that

18   you're now under oath?

19             THE DEFENDANT:  Yes, I do, your Honor.

20             THE COURT:  And do you understand that your

21   answers may later be used against you in this or another

22   proceeding?

23             THE DEFENDANT:  Yes.  I'm aware, your Honor.

24             THE COURT:  And that if you do not answer my

25   questions truthfully, you could be prosecuted for perjury or

```
 1        for making a false statement?

 2                THE DEFENDANT:  Yes, your Honor.

 3                THE COURT:  For the record, would you state your

 4        full name, please.

 5                THE DEFENDANT:  Sean Michael McHugh.

 6                THE COURT:  And, Mr. McHugh, how old are you?

 7                THE DEFENDANT:  35 years old.

 8                THE COURT:  And you can read and write the English

 9        language; is that correct?

10                THE DEFENDANT:  Yes.

11                THE COURT:  And how far did you go in school?

12                THE DEFENDANT:  Junior in college, your Honor.

13                THE COURT:  And where were you born?

14                THE DEFENDANT:  Auburn, California.

15                THE COURT:  Now, a few personal questions:  Have

16        you ever been treated for any type of mental illness or any

17        psychological or emotional problems?

18                THE DEFENDANT:  No, your Honor.

19                THE COURT:  Have you ever been treated for any

20        addiction to narcotic drugs or alcohol?

21                THE DEFENDANT:  Yes.  Alcohol, your Honor.

22                THE COURT:  And how recently was that?

23                THE DEFENDANT:  I was attending Alcoholics

24        Anonymous at the time of January 6.  I was running one of my

25        own classes in Alcoholics Anonymous.
```

1          THE COURT:  Are you today addicted to any drug or

2     alcohol?

3          THE DEFENDANT:  No.

4          THE COURT:  Are you sick in any way that could

5     prevent you from understanding what is happening here today?

6          THE DEFENDANT:  No.

7          THE COURT:  Are you on any kind of medication that

8     would interfere with your ability to understand what's

9     happening?

10          THE DEFENDANT:  No.

11          THE COURT:  And are you presently under the

12     influence of any drug or alcohol?

13          THE DEFENDANT:  No.

14          THE COURT:  Mr. Allen, do you have any question as

15     to the Defendant's competency at this time?

16          MR. ALLEN:  I do not, your Honor.

17          THE COURT:  Mr. McHugh, have you had sufficient

18     time to consult with your attorney about this case?

19          THE DEFENDANT:  Well, there's been a lot of

20     complications at CTF; and leading up to this trial here, I

21     have not been able to speak with my lawyer privately on

22     multiple occasions.

23          There are a couple questions that I do have that I

24     assume that I am going to speak with him here shortly.

25     So...

1            THE COURT:  So you feel that you do have some

2      questions that you'd like to discuss with Mr. Allen?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Then I think that what we should do

5      is -- well, maybe let's keep going until you have your first

6      question so that we have made some progress.  But we'll be

7      mindful of the fact that you do have some things you're

8      going to want to discuss with Mr. Allen.

9            And, Mr. Bradley, we're going to have to arrange

10     that at some point.

11           I'm going to reserve questions about the

12     assistance of counsel until after we've had those further

13     conversations -- you've had those further conversations with

14     him.

15           But I'll ask you, Mr. Allen, whether in your

16     view -- have you had sufficient time to review and

17     investigate the law and the facts in this matter with

18     Mr. McHugh?

19           MR. ALLEN:  I do, your Honor, except I'll qualify

20     that answer with if Mr. McHugh has new questions, then I

21     would like to give him the opportunity to discuss those with

22     me.

23           THE COURT:  And we absolutely will.

24           In your opinion, does Mr. McHugh understand the

25     nature of the charges pending against him, reserving any

1    possible questions that he may have for you?

2              MR. ALLEN:  Yes.  I certainly believe that he

3    understands the charges against him.

4              THE COURT:  So, Mr. McHugh, I understand that

5    instead of wishing to go to trial, you are prepared to

6    proceed with a stipulated trial that would have you

7    admitting to the facts relevant to Counts 4 and 5 of the

8    indictment.  Is that correct?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Now, you have the right to plead not

11   guilty to any offense charged against you.

12             Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  You would have a right to challenge

15   the Government's case against you by seeking to have the

16   charges dismissed or to have the evidence against you

17   suppressed or thrown out.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Under the Constitution and laws of the

21   United States, you have the right to have a jury trial in

22   this case.  That means that 12 citizens that would be from

23   the District of Columbia would sit as a jury and determine

24   whether you are guilty or not guilty based upon evidence

25   presented in the courtroom.

1          Do you understand your right to a jury trial?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  If you choose to go to a full,

4  nonstipulated trial before a jury, you would have a right to

5  be represented by your lawyer at that trial.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  At trial, you would have the right

9  through your lawyer to confront and cross-examine any

10  witnesses against you.

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You would also have the right to

14  present your own witnesses and you would have the right to

15  subpoena them to require them to testify in your defense at

16  a full, nonstipulated trial.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  And at that full, nonstipulated trial,

20  you would have the right to testify yourself and to present

21  evidence on your behalf if you wanted to; but you would not

22  have to testify or present any evidence if you did not want

23  to because you cannot be forced to incriminate yourself;

24  that is, to present evidence of your own guilt.

25          Do you understand that?

1    THE DEFENDANT:  Yes.

2          THE COURT:  If you chose not to testify or to put

3    on any evidence at trial, those choices could not be used

4    against you to suggest or infer that you are guilty.

5          Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Unless and until you are found guilty

8    at this stipulated trial or otherwise, you are presumed by

9    the law to be innocent because it is the Government's burden

10   through competent evidence to prove your guilt beyond a

11   reasonable doubt; and until it does, you cannot be convicted

12   at trial.

13         Do you understand that?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you understand that if you went to

16   a full, nonstipulated trial and you were convicted, you

17   would have the right to appeal your conviction to the Court

18   of Appeals and to have a lawyer help you prepare that

19   appeal?  Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Now, you're preserving some appellate

22   rights.  Specifically, you can appeal the Court's decision

23   denying your motion to dismiss Count 5, which charges a

24   violation of Title 18 of the U.S. Code, Section 1512(c)(2).

25         Do you understand that you retain your right to

1    appeal on that issue?

2              THE DEFENDANT:  Is that the only issue?

3              THE COURT:  Not necessarily.  There are other

4    issues that you could raise with respect to other legal

5    matters that might have been decided in this case.  And if

6    there's a contention that the Court has operated

7    inconsistent with the law, then you probably can take an

8    appeal on that basis.

9              And then finally, you also have the right to

10   appeal any sentence that I impose at sentencing in this

11   matter.

12             THE DEFENDANT:  So I cannot appeal on Count 4?

13             THE COURT:  You can't appeal on the facts with

14   respect to -- you would not be able to appeal on the facts

15   with respect to Count 4 and whether those facts are

16   sufficient to show violation of Count 4, of the statute

17   that's involved in Count 4.

18             Do you understand that?

19             THE DEFENDANT:  (No response.)

20             THE COURT:  So what the stipulated trial is doing

21   is you're agreeing to certain facts which are all set out in

22   the stipulation of facts that I think you've read over and

23   signed.

24             In addition to stipulating to the truth of those

25   facts, you're also stipulating that those facts in total are

1   sufficient to establish a violation on Count 4; that is, a

2   violation of the statute that is at issue in Count 4.

3            THE DEFENDANT:  Right.  So then I couldn't

4   raise -- I couldn't raise a question to that issue anymore,

5   is what you're saying?

6            THE COURT:  Other than -- I mean --

7            THE DEFENDANT:  Could I appeal that it's a deadly

8   and dangerous?

9            THE COURT:  Say that again.

10           THE DEFENDANT:  Could I appeal that it's a deadly

11   and dangerous?

12           THE COURT:  Yes.  The facts do make --

13   stipulate -- do stipulate to facts relating to that.  I

14   think at this point it's probably going to make sense for

15   you and Mr. Allen to start your discussion --

16           THE DEFENDANT:  Yeah.

17           THE COURT:  -- because I think you need to talk

18   that through with Mr. Allen.  The stipulation of facts has

19   certain facts that you're agreeing to with respect to that

20   question of whether it's, as put, a deadly and dangerous

21   weapon.

22           Can someone refer us to the particular paragraph

23   number in the stipulation of facts?

24           MS. WAGNER:  One moment, your Honor.

25           Your Honor, in Paragraph 25 of the statement of

1    stipulated facts, the second sentence, Mr. McHugh agrees

2    that his use of bear spray on the officers constituted a

3    deadly or dangerous weapon.

4        THE COURT:  So do you have a copy of the statement

5    of facts in front of you?

6        THE DEFENDANT:  No.

7        MS. WAGNER:  (Tenders document to the witness.)

8        THE COURT:  Paragraph 25 says the following:

9    Following the riot, McHugh posted on his Facebook account

10   that, quote, "I unloaded a whole can of bear spay on a line

11   of cops.  I got three of them down really, really good."

12       McHugh agrees -- this is at the top of Page 9 on

13   Paragraph 25:  McHugh agrees that his use of bear spray on

14   the officers constituted a deadly or dangerous weapon.

15       THE DEFENDANT:  Uh-huh.  Yeah.  I would just like

16   to speak to my lawyer, please.

17       THE COURT:  All right.  So let's -- Mr. Bradley,

18   you need to arrange for that conversation.  And we're going

19   to adjourn.  I'm going to leave the bench, and I think

20   everyone has to leave the courtroom.  I think we have to

21   clear the courtroom so that conversation can go forward.

22       You take all the time you need, Mr. McHugh.

23       THE DEFENDANT:  Yes.

24       THE COURT:  Take all the time you need.  If it

25   does take too much time, we may have to postpone this

1    proceeding because I understand Mr. Allen is going to have

2    to get on a plane --

3                THE DEFENDANT:  Right.

4                THE COURT:  -- before too long.  But you take all

5    the time you need because what's most important is that

6    you're comfortable and that your rights have been protected

7    and to the extent that you're waiving those rights, that

8    you're doing so knowingly and voluntarily.  So take the time

9    that you need.

10               All right.

11               (Thereupon a recess was taken, after which the

12   following proceedings were had:)

13               THE COURT:  Let me start by turning to you,

14   Mr. Allen.  In your view, are we ready to go forward or do

15   we need a different course?

16               MR. ALLEN:  No, your Honor.  We can move forward.

17   Thank you.

18               THE COURT:  Mr. McHugh, are you ready to move

19   forward?

20               THE DEFENDANT:  Yes.

21               THE COURT:  Let me pick it up where we were, then,

22   if I can find the spot where we were.  I didn't mark it.

23               So we were talking about your appeal rights, the

24   preservation of your appeal rights.

25               THE DEFENDANT:  Yes.

```
 1              THE COURT:  So we went over that you would have --
 2    you would retain the ability to appeal with respect to
 3    Count 5 based on the motion that you had filed that I had
 4    denied.  And I explained a few other things with respect to
 5    your continuing right to appeal, including your right to
 6    appeal the sentence or any sentence that I impose at
 7    sentencing.
 8              So my question generally to you is, having
 9    discussed what is preserved for appeal with Mr. Allen, do
10    you understand that you have some appeal rights that you
11    would continue to preserve but some appeal rights that would
12    no longer exist?
13              THE DEFENDANT:  Yes.  I understand now.
14              THE COURT:  And you're prepared to go forward on
15    that basis?
16              THE DEFENDANT:  Yes, I am.
17              THE COURT:  And we do have a signed waiver of the
18    right to a jury trial.  Has it been signed by Mr. McHugh?
19              THE DEFENDANT:  No.
20              THE COURT:  Mr. Bradley, if you could take care of
21    that.  You'll probably have to give him a pen to do so.
22              THE COURTROOM DEPUTY:  (Tenders document to the
23    Defendant.)
24              THE DEFENDANT:  (Signs document.)
25              THE COURT:  Mr. Allen, you have not yet signed it?
```

```
 1              MR. ALLEN:  No, your Honor.

 2              THE COURT:  That means that when you get here this

 3    afternoon or tomorrow morning, you need to get in touch with

 4    Mr. Bradley and you need to -- you'll be in the courthouse.

 5    Right?

 6              MR. ALLEN:  Yes, your Honor.

 7              THE COURT:  And you need to execute that so that

 8    that is fully executed.

 9              MR. ALLEN:  Yes, sir.

10              THE COURT:  Is there a space for the Government?

11              THE COURTROOM DEPUTY:  No; or defense counsel.

12    But we'll fix that.

13              THE COURT:  There's no space for defense counsel

14    either?

15              THE COURTROOM DEPUTY:  I can fix that, though.

16              THE COURT:  You can add it.  I think we need a

17    signature line for defense counsel on it as well.

18              Usually, the Court signs it, but this is -- in a

19    plea context, the Court signs it.  But in this context, I'm

20    not sure that I need to.  But if I decide that I do need to,

21    I will affix a signature line for myself and sign it also.

22              Mr. Allen, is there any reason that the Defendant

23    should not waive a jury trial and his right against

24    self-incrimination, given his agreement to the stipulated

25    trial?
```

```
 1              MR. ALLEN:  No, your Honor.

 2              THE COURT:  I find that that waiver by Mr. McHugh

 3     of his right to a jury trial is knowingly and voluntarily

 4     made and that it is accepted; and the signed waiver will be

 5     filed.

 6              Now, Count 4 charges you with assaulting,

 7     resisting or impeding certain officers with a deadly or

 8     dangerous weapon in violation of Title 18 of the U.S. Code,

 9     Sections 111(a)(1) and (b).

10              You understand that charge?

11              THE DEFENDANT:  Yes.

12              THE COURT:  And then Count 5 charges you with

13     obstruction of an official proceeding and aiding and

14     abetting in violation of Title 18 of the U.S. Code, Section

15     1512(c)(2) and Section 2.

16              Do you understand that?

17              THE DEFENDANT:  Yes.

18              THE COURT:  And you understand that both Counts

19     4 -- Count 4 and Count 5 charge you with felonies; is that

20     correct?

21              THE DEFENDANT:  Yeah.  I understand.

22              THE COURT:  So let's turn to the statement of

23     facts.  I'm going to go through portions of it.  And that is

24     the statement of facts that you have admitted to.  You've

25     read and had this -- or had the document read to you.  Is
```

1      that correct?

2                  THE DEFENDANT:  Yes.  I've read it before.

3                  THE COURT:  And on Pages 3 through 11, those are

4      the facts that you have admitted are true and accurate.

5                  Do you understand that?

6                  THE DEFENDANT:  Yes.

7                  THE COURT:  Do you agree that those facts fairly

8      and accurately describe the conduct that is the basis for

9      the stipulated trial here today?

10                 THE DEFENDANT:  I believe that -- those things

11     happened.  I think the context is a little taken out of

12     character, but it happened.

13                 THE COURT:  I understand that.  And it may be that

14     you through your counsel and your own comments would be

15     willing -- would be able to present some of that context in

16     a sentencing hearing.

17                 But for purposes of the stipulated trial, the

18     facts set out in the statement of facts are the facts that

19     the Court will be relying on as I determine based on your

20     agreement to the statement of facts, including the paragraph

21     we talked about a few moments ago, that's what I will be

22     using to determine whether beyond a reasonable doubt you are

23     guilty of Counts 4 and 5.

24                 Do you understand that?

25                 THE DEFENDANT:  Yes, I do, your Honor.

1              THE COURT:  Now, on Page 12 of the statement of

2      facts, you agree that if the Court finds the existence of

3      these facts beyond a reasonable doubt, you stipulate that

4      this evidence would establish each and every element of

5      Counts 4 and 5 of the superseding indictment.

6              Is that correct?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Counsel, do you agree that these

9      facts -- I will start with you, Mr. Allen -- that these

10     facts would establish each and every element of Counts 4 and

11     5 of the superseding indictment?

12             MR. ALLEN:  Yes, your Honor.

13             THE COURT:  And there's no other evidence that you

14     wish to present or believe is necessary to support a

15     conviction on these two charges.  Is that correct,

16     Mr. Allen?

17             MR. ALLEN:  That's correct, your Honor.

18             THE COURT:  And to the Government, those same two

19     questions:  Do you agree that these facts would establish

20     each and every element of Counts 4 and 5 of the superseding

21     indictment?

22             MS. WAGNER:  Your Honor, these facts and the

23     stipulation plus the exhibits that have been provided to the

24     Court.

25             THE COURT:  I include the exhibits as part of the

1    statement of facts because they were specifically referenced

2    in the statement of facts.

3              And there is no other evidence that you wish to

4    present or believe is necessary to support a conviction on

5    these two charges.  Is that correct?

6              MS. WAGNER:  Correct, your Honor.

7              THE COURT:  So looking at Paragraph 13,

8    Mr. McHugh, on Page 6, I believe, of the statement of facts,

9    I'm going to go through some of this.

10             Do you agree on January 6th, 2021, while on the

11   National Mall, you spoke to the crowd using a megaphone

12   urging them to go to the Capitol, including stating, quote,

13   "We have the power and numbers.  March on Congress directly

14   after Trump's speech"?

15             THE DEFENDANT:  Yes.

16             THE COURT:  The next paragraph states that you

17   took videos on your walk to the Capitol, including one where

18   you stated, and I quote, "We're storming the Capitol, going

19   to Congress.  Let them know we don't want them to accept

20   Electoral College votes" and another where you stated,

21   quote, "This is our country.  We are not going to let this

22   happen," closed quote.

23             Do you agree that you made those statements?

24             THE DEFENDANT:  Yeah.  Not in consecutive order,

25   but I made those statements.  Correct.

```
 1                    THE COURT:  I appreciate that.  And thank you for
 2      that clarification.
 3                    THE DEFENDANT:  Yes.
 4                    THE COURT:  You reached the Capitol grounds by
 5      12:50 p.m., then followed the crowd to the west plaza
 6      barricade.  And that's in Paragraph 15.
 7                    Do you agree with that description of your
 8      movements?
 9                    THE DEFENDANT:  Paragraph 15?  Yes.  I followed
10      some people.  I was -- I was -- let me just read it real
11      quick one second.
12                    THE COURT:  I think to the extent that you have a
13      "yes" or "no" answer --
14                    THE DEFENDANT:  Yes.  Yes.  I agree.  Yeah.
15                    THE COURT:  Because there may be things,
16      Mr. McHugh, that aren't stated in here that happened.
17                    THE DEFENDANT:  Right.
18                    THE COURT:  If you think they're important, I'm
19      not going to stop you from saying them --
20                    THE DEFENDANT:  Okay.
21                    THE COURT:  -- but only those that you think are
22      important.
23                    THE DEFENDANT:  Yeah.  I'm not gonna ramble on,
24      your Honor.
25                    THE COURT:  Paragraph 16:  Do you agree that you
```

1    led other rioters in chants of, "Whose House?  Our House,"

2    using your megaphone, waved rioters towards the police

3    barricade and shouted, quote, "Come on.  Let's go"?

4            THE DEFENDANT:  Yes.

5            THE COURT:  And do you agree that you were one of

6    the first rioters, not the first, but one of the first

7    rioters, to push past the police line at the west plaza

8    barricade at approximately 12:58 p.m.?

9            THE DEFENDANT:  I don't remember past -- pushing

10   past a police line.  I never thought I went past a police

11   line.  But I know that I was one of the first rioters there.

12   Yes.

13           THE COURT:  Paragraph 18 describes an altercation

14   with a police officer around 1:00 p.m. that is shown in

15   Exhibit 6, which is a video.

16           And do you agree with the content of that

17   paragraph and the description of the altercation?

18           THE DEFENDANT:  Which paragraph, your Honor?

19           THE COURT:  18.

20           THE DEFENDANT:  18.  Thank you.

21           Yes, your Honor.

22           THE COURT:  Then from 1:00 to 1:11 p.m., you're at

23   the southern side of the west plaza; and that's in Paragraph

24   19.  You shouted in your megaphone at officers.  And during

25   this time, rioters attempted to push through the defensive

1    lines by pushing, throwing things and deploying various

2    sprays.

3              Do you agree with that description of the activity

4    from 1:00 to 1:11 p.m.?

5              THE DEFENDANT:  Yes.  Yes.  It says "rioters."  It

6    doesn't -- I wasn't trying to push past police.

7              THE COURT:  It doesn't say you.  That's correct.

8              THE DEFENDANT:  Yes.  Yes.

9              THE COURT:  The next paragraph, Paragraph 20,

10   states that you pulled a can of bear spray out of the

11   holster on your belt and fired two long continuous bursts

12   towards the line of law enforcement officers.

13             Did you do that?

14             THE DEFENDANT:  Yes.  It was one continuous burst.

15   It just cut out.  I never -- so for what it's worth.

16             THE COURT:  I appreciate that clarification as

17   well.

18             You hit officers with the spray, including one

19   officer who was temporarily blinded and prevented from

20   performing his official duties for a period of time.  That's

21   in Paragraph 21.  And after the riot, you posted on

22   Facebook, quote, "I unloaded a whole can of bear spray on a

23   line of cops.  I got three of them down really, really

24   good."

25             Is that correct?  That's in Paragraph 25.

 1            THE DEFENDANT:  I never posted it on Facebook.  I

 2    believe it was in a message, text message.  Facebook

 3    Messenger, to be exact.  I didn't brag on Facebook like

 4    that.

 5            THE COURT:  Rather than posting on your Facebook

 6    account, you think it was in Facebook Messenger?

 7            THE DEFENDANT:  Yes.

 8            THE COURT:  All right.  The statement of facts has

 9    information on the specific spray that was used.  And that's

10    in Paragraphs 22 and 24.  The spray used was Sabre,

11    S-A-B-R-E, Frontiersman Bear Attack Deterrent Spray, which

12    is hazardous to humans and capable of causing irreversible

13    eye damage.  In fact, this spray is 50 percent stronger than

14    police pepper spray.

15            Do those paragraphs -- that's Paragraphs 22

16    through 24 -- accurately describe the spray you used on

17    officers on January 6th?

18            THE DEFENDANT:  Well, I'm agreeing to those

19    statement of facts.  Bear spray is the lowest type of spray

20    there is on the market.  And comparatively to what they were

21    using that day, that day, is much different than what this

22    statement of facts says.  Now, what police officers use on

23    the line of duty and every day, it might be -- it might be

24    stronger.  Yes, your Honor.  I do agree to that.

25            THE COURT:  So you agree that what's stated in the

1    statement of facts that you've signed and agreed to is

2    accurate?

3              THE DEFENDANT:  Yes.  Yeah.

4              THE COURT:  All right.

5              THE DEFENDANT:  Thanks.

6              THE COURT:  I'll ask you the question again.  Do

7    you agree that your use of the bear spray on officers

8    constituted the use of a deadly or dangerous weapon?

9              THE DEFENDANT:  I agree to it.  Yes, your Honor.

10             THE COURT:  And then from 1:11 to 1:40 p.m., you

11   stayed in the west plaza shouting encouragement to the

12   rioters attempting to breach the police line.  And Paragraph

13   26 includes a list of things that you yelled at the police,

14   including, "I have a job to do, and it's defend the

15   Constitution," calling them pedophiles, crooks and

16   communists and yelling at them that the Second Amendment is

17   behind us.

18             Is all of that true and correct?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And in Paragraphs 28 and 29, there's a

21   description of a billboard that you and others grabbed onto

22   and helped rioters push into the line of police as a kind of

23   battering ram.  And Exhibit 12, referenced in those

24   paragraphs, is a video of that.

25             The metal billboard was 10 to 15 feed wide.  It

1    had sharp edges and large wheels that were facing the

2    officers, and a law enforcement officer could have been

3    knocked unconscious or suffered lacerations if hit in the

4    head by it when you and others were helping to ram it

5    forward into the line of police.

6            Do you agree with that description as it's set out

7    in Paragraphs 28 and 29?

8            THE DEFENDANT:  With respect that I'm not -- this

9    is not one of my counts, your Honor, I do believe this is

10   important.  And I would urge you to watch the video.

11           THE COURT:  I have watched the video.

12           THE DEFENDANT:  Okay.  I am agreeing to these

13   statement of facts.  I'm going to agree with it.  But I

14   would like to say that I was not trying to push that sign

15   into officers that day.  My body language does show it.

16           My mom had gotten knocked over.  I seen the sign

17   and I was happy to see Trump on the sign.  I said, Yes, this

18   is Trump country.  I said, Put it up there.  I thought they

19   were going to flip it up so that they could see that we

20   wanted Trump.

21           I never intended to push it into officers.  In

22   fact, my body language was much different than Ray Epps's

23   body language that day, who was actively pushing that sign

24   into officers.  I did not want to do that.  So -- but I will

25   agree to this, but I just really want you to know that, your

1    Honor.

2              THE COURT:  All right.  Let me continue forward.

3              This is Paragraph 31 that describes Facebook

4    messages that you posted following the riot on January 6th.

5              So are those as listed in Paragraph 31 correct and

6    accurate?

7              THE DEFENDANT:  Yes.  That was the messages.  Yes.

8              THE COURT:  To prove Count 4, which charges you

9    with assaulting, resisting or impeding certain officers with

10   a deadly or dangerous weapon, in violation of Sections

11   111(a)(1) and (b) of Title 18, the Government has to prove

12   beyond a reasonable doubt that you assaulted, resisted,

13   opposed, impeded, intimidated or interfered with any officer

14   or employee of the United States or of any agency in a

15   branch of the United States government; that you did so with

16   some use of force; that you did such acts voluntarily and

17   intentionally, not by mistake or accident; that you did so

18   while the officer was engaged in the performance of his or

19   her official duties; and that in doing such acts, you used a

20   deadly or dangerous weapon or inflicted bodily injury.

21             Do you agree that those are the elements of the

22   offense charged -- that you are charged with in Count 4?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Now, do you agree that, based on the

25   facts that we have just reviewed and that are in your signed

1    statement of facts, those facts support a conviction beyond

2    a reasonable doubt on Count 4?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And to prove Count 5, which charges

5    you with obstruction of an official proceeding and aiding

6    and abetting in violation of Title 18 of the U.S. Code,

7    Section 1512(c)(2) and Section 2, the Government must prove

8    either the crime itself or aiding and abetting beyond a

9    reasonable doubt.

10             To prove a violation of 1512(c)(2), the Government

11   must prove beyond a reasonable doubt that you attempted to

12   or did obstruct or impede an official proceeding; that you

13   intended to obstruct or impede the official proceeding; that

14   you acted knowingly with awareness that the natural and

15   probable effect of your conduct would be to obstruct or

16   impede the official proceeding; and that you acted

17   corruptly.

18             To prove that you aided and abetted others in

19   committing this offense, the Government must prove beyond a

20   reasonable doubt that others committed obstruction of an

21   official proceeding by committing each of the elements that

22   I just went through; that you knew that obstruction of an

23   official proceeding was going to be committed or was being

24   committed by others; that you performed an act or acts in

25   furtherance of the offense; that you knowingly performed

1   that act or acts for the purpose of aiding, assisting,

2   soliciting, facilitating or encouraging others in committing

3   the offense of obstruction of an official proceeding; and

4   that you did that act or acts with the intent that others

5   commit the offense of on obstruction of an official

6   proceeding.

7          So now I'm going to ask you:  Do you agree that

8   the facts that you've agreed to support a conviction beyond

9   a reasonable doubt on this count, Count 5?  Understanding

10  that you have a legal objection that you raised in this case

11  and that you've preserved for purposes of appeal.

12         THE DEFENDANT:  Yes, your Honor.  Yes.

13         THE COURT:  Do you understand now -- I'm going to

14  go over some sentencing concerns.

15         Do you understand that if you are found guilty of

16  Counts 4 or 5, you could receive a maximum sentence of 20

17  years of imprisonment?

18         THE DEFENDANT:  Yes, I do, your Honor.

19         THE COURT:  You're subject to a fine of up to

20  $250,000.

21         Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  You are subject to supervised release

24  for a term not to exceed three years.

25         Do you understand that?

 1              THE DEFENDANT:  Yes.

 2              THE COURT:  And that means that -- part of what

 3     that means is that if you're sent to prison that, upon your

 4     release, you would be on supervision under certain

 5     conditions and rules with which you would have to comply

 6     and, if you violated those conditions and rules, you could

 7     be sent back to prison for an additional period of time.

 8              Do you understand that's what supervised release

 9     entails?

10              THE DEFENDANT:  Yes.

11              THE COURT:  You're subject as well to a special

12     assessment of $100 for each felony offense as required by

13     statute.

14              Do you understand that?

15              THE DEFENDANT:  Yes.

16              THE COURT:  If you're found guilty on either

17     count, you could receive a fine sufficient to pay the

18     Government the cost of any imprisonment, term of supervised

19     release or period of probation.

20              Do you understand that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  You're subject to an order or you

23     could receive an order to make restitution; that is, to pay

24     some money back to any victim who may have sustained a loss,

25     unless the Court explains on the record why I'm not ordering

1    you to do so.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  You have an obligation to pay any

5    applicable interest or penalties on fines or restitution not

6    timely made.

7              Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And if you were found to have two or

10   more convictions for a crime of violence or a felony drug

11   offense -- and I'm not saying you are -- but if you were

12   found to have that, you could be subject to higher penalties

13   provided for in the career offender statutes and the

14   sentencing guidelines.

15             Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And you understand all those possible

18   consequences of proceeding with a stipulated trial and a

19   finding of guilt?

20             THE DEFENDANT:  Yes, I do, your Honor.

21             THE COURT:  So I'm just going to review briefly

22   something that I'm sure you've had some discussions with

23   counsel about.

24             The case does fall under the Sentencing Reform Act

25   of 1984, by which the United States created the United

1    States Sentencing Commission.  And that commission has

2    issued detailed guidelines for judges to consider in

3    determining the sentence in a criminal case.

4         There are sentencing ranges for specific offenses,

5    and they're all contained in a guidelines manual.  But those

6    guidelines are not mandatory; they are instead advisory,

7    although they must be consulted by the Court in determining

8    the appropriate sentence in a case.

9         And I will do that here.  I will assess and

10   determine the proper sentence if you are found guilty by

11   referring to and considering the sentencing guidelines in

12   the first instance.  And while all of us, myself, the

13   prosecutors, your counsel, Mr. Allen, and you through

14   conversations with your counsel, they have a pretty good

15   idea based on any past criminal history and the nature of

16   this offense what your sentencing range may be, nothing will

17   be certain until the probation officer submits a presentence

18   report.

19        That comes to me.  It also goes to the attorneys.

20   And they will have a chance to make changes in it or object

21   to portions of it.  And your attorney would go over it with

22   you.

23        Now, I'll note at this time that there was a

24   preliminary criminal history assessment done by the

25   probation office, and it's in the record on the docket at

1          ECF No. 66.  And that calculation, which is not final and

2          not binding -- the probation officer will look at it

3          further -- but that resulted in an estimated criminal

4          history score of 5, which would place you in Criminal

5          History Category III.  I just want to make sure you remember

6          that occurred earlier in this case.

7                   But all of that, including a criminal history

8          assessment, would come to me through the presentence report;

9          and it also goes to the attorneys, and they would have a

10         chance to make changes in it or object to portions of it.

11         And your attorney presumably would go over it with you.

12                  And at the time of sentencing, I will hear from

13         both attorneys and I'll make a determination what your

14         advisory sentencing guideline range is.  Once I do that in

15         accordance with the sentencing guidelines, I am still

16         permitted nonetheless to impose a sentence outside of that

17         sentencing range.  It could be lower; it could be higher.

18                  What I can't do is sentence you to more than that

19         statutory maximum period that I mentioned a few moments ago,

20         that 20-year maximum period.

21                  THE DEFENDANT:  That's good.

22                  THE COURT:  So have you and your attorney talked

23         about the sentencing guidelines and how they might apply to

24         your case?

25                  THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Have you discussed the base offense

2    level for each conviction and any enhancements that could

3    apply?

4          THE DEFENDANT:  Yeah.  Yes, your Honor.

5          THE COURT:  There are a couple -- I'll just

6    mention a couple.  On Count 4, there's a possibility of an

7    increase to your offense level if I find that a victim of

8    your assault sustained some bodily injury.  And on Count 5,

9    your offense level could increase if I find that your

10   obstruction involved causing or threatening to cause

11   physical injury to someone.  Those are possible enhancements

12   that I can't decide now, but I will decide based on input

13   from the probation office, from your counsel and from the

14   Government.

15          Have you discussed any possible increases to the

16   base offense level and any possible reductions to the

17   offense level such as for acceptance of responsibility that

18   may apply here?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And do you understand that I can't

21   determine what the sentence would be under the guidelines

22   until I've received that presentence report from the

23   probation office and both the Government and your attorney

24   have had the opportunity to challenge the facts reported by

25   the probation office?

 1                THE DEFENDANT:  Yes.

 2                THE COURT:  And do you understand that after I've

 3     decided what guideline applies to your case, I still have

 4     the authority in my discretion to impose a sentence that is

 5     more severe or less severe than the sentence called for by

 6     the guidelines?

 7                THE DEFENDANT:  Yes.  I understand.

 8                THE COURT:  You also understand that parole has

 9     been abolished for federal charges such as this and that, if

10     you are sentenced to prison, you would serve the sentence I

11     impose with a possible modest reduction for good-time

12     credit, but you would not be released early on parole as

13     used to be the case.

14                Do you understand that?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Do you understand that the offenses to

17     which you are proposing to proceed to a stipulated trial --

18     let me repeat that, because I messed up the language.

19                Do you understand that the offenses to which you

20     are proposing to proceed to a stipulated trial on are both

21     felony offenses and that, if you are found guilty of either

22     offense, then depending upon the jurisdiction involved and

23     other specific circumstances, that finding could deprive you

24     of some valuable civil rights also?  In some places, it

25     would mean you're deprived of the right to vote, the right

1    to hold public office, to serve on a jury, to possess a

2    firearm.

3              Do you understand those possible collateral civil

4    consequences of a finding of guilty on these felony

5    offenses?

6              THE DEFENDANT:  Yeah.  Yes, your Honor.  I

7    understand that.

8              THE COURT:  Do you also understand that under some

9    circumstances, not only you, but also the Government, may

10   have the right to appeal any sentence that I impose, with

11   the limitations that I mentioned, if you or the Government

12   believes that the sentence is improper or unlawful?  Do you

13   understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that if the proper

16   guideline range that I determine is higher than you

17   expected -- and I'm just warning you that's a possibility; I

18   have no idea; I haven't looked at it yet -- or the sentence

19   I impose is more severe than you expected, you will still be

20   bound by your decision to proceed with the stipulated trial?

21   Do you understand that?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Do you understand that if I do not

24   accept any sentencing recommendation made by the lawyers at

25   sentencing or requested by you, you will still be bound by

 1      your determination of guilt made at the stipulated trial?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  So I'm going to repeat:  Do you

 4      understand that under the law I must consider and take into

 5      account the sentencing guidelines, along with all other

 6      relevant factors, that those guidelines are advisory,

 7      they're not binding on me, and ultimately the appropriate

 8      sentence will be determined in my discretion considering the

 9      sentencing guidelines and all other relevant factors under

10      Title 18 of the U.S. Code, Section 3553(a)?

11              THE DEFENDANT:  Yes, I do.

12              THE COURT:  We're nearing the end.  Let me ask you

13      a few other questions, though.

14              Has anyone, including your attorney, the police,

15      the prosecutor or any other person you've come in contact

16      with, promised or suggested to you that merely because you

17      are proceeding by stipulated trial, that means I am going to

18      give you a lighter sentence?

19              THE DEFENDANT:  No.  Just the possibility of the

20      acceptance of responsibility.

21              THE COURT:  That's fair and accurate.  Thank you.

22              Has anyone made any promises to you as to what

23      sentence I will impose in this case if I find you guilty at

24      the stipulated trial?

25              THE DEFENDANT:  No.

```
 1              THE COURT:  Do you understand that at this time I
 2    do not know what sentence I will impose in your case since I
 3    have not yet heard from the lawyers, from you or from the
 4    probation officer?
 5              THE DEFENDANT:  Yes, I do, your Honor.
 6              THE COURT:  Has anyone made any promises to you in
 7    connection with your decision to proceed with a stipulated
 8    trial other than those that are contained in the statement
 9    of facts or that have been stated here in open court today?
10              THE DEFENDANT:  No, your Honor.
11              THE COURT:  Has anyone forced, threatened or
12    coerced you in any way, Mr. McHugh, into this decision to
13    proceed with the stipulated trial?
14              THE DEFENDANT:  No.  Just my own will to move to
15    the next stage of this.
16              THE COURT:  Is there anything else that you don't
17    understand about this proceeding or about a stipulated trial
18    or that you wish to ask me about or talk to your lawyer
19    about before you make a decision whether to proceed by this
20    stipulated trial?
21              THE DEFENDANT:  No, your Honor.  No.  We'll be
22    able to go over the context, you said, during sentencing.
23    So...
24              THE COURT:  You and your counsel will be able to
25    put that context before me to consider in sentencing.
```

1          THE DEFENDANT:  Okay, then.  Fair enough.

2          THE COURT:  By agreeing to proceed by stipulated

3   trial, you are waiving your right to testify in your own

4   defense or present any other evidence that is not included

5   in the stipulated facts.

6          So are you making the decision not to testify in

7   your own defense voluntarily, knowingly, intelligently and

8   with the advice of counsel?

9          THE DEFENDANT:  Yeah.  Yeah.

10          THE COURT:  Mr. Allen, is there anything else we

11   need to cover before proceeding with this stipulated trial?

12          MR. ALLEN:  No, your Honor.

13          THE COURT:  Government counsel?

14          MS. WAGNER:  Your Honor, just -- because I haven't

15   done one of these before.  Do we offer into evidence the

16   statement of stipulated -- statement of facts for the

17   stipulated trial and the exhibits that are contained within?

18          THE COURT:  Yes.  It should be offered into

19   evidence.  And you could do that, since it is the

20   Government's burden.

21          MS. WAGNER:  I would so move, then, to offer the

22   statement of facts for stipulated trial and the associated

23   15 exhibits that are referenced in that statement.

24          THE COURT:  And that is a proposal and a statement

25   of facts and the accompanying exhibits that is agreed to by

```
1    defense.  Is that correct, Mr. Allen?
2              MR. ALLEN:  That's correct, your Honor.  And I
3    have no objection.
4              THE COURT:  Mr. McHugh, are you now ready to make
5    a decision about whether you wish to proceed by stipulated
6    trial or whether instead you want to go to a full trial?
7    Are you ready to make that decision?
8              THE DEFENDANT:  Yeah.  I just -- I'm just -- I
9    would really just want you to know about the bear spray
10   incident and when my mom was being shot with rubber bullets.
11   I just want to put that on the record, your Honor.  My
12   mother was --
13             THE COURT:  I will allow you to do that for
14   sentencing purposes.
15             THE DEFENDANT:  Okay.  Yeah.  Let's go.  Let's do
16   it.
17             THE COURT:  So you're prepared to proceed by
18   stipulated trial; is that correct?
19             THE DEFENDANT:  Yes, your Honor.
20             THE COURT:  And you're making that decision
21   voluntarily and of your own free will?
22             THE DEFENDANT:  Yes.
23             THE COURT:  And, Mr. Allen, do you know of any
24   reason why the Defendant should not proceed on a stipulated
25   trial with respect to these two charges in Counts 4 and 5?
```

1          MR. ALLEN:  No, your Honor, I don't.

2          THE COURT:  I am satisfied that Mr. McHugh has

3     thoughtfully and knowingly and intelligently waived his

4     right to a jury trial and that he has agreed to the

5     stipulated facts knowingly and intelligently.

6          And I find that the facts in the stipulated

7     statement of facts that we've gone over here today and that

8     I have read over carefully and some of the exhibits -- not

9     all, but some of the exhibits I have already reviewed.  I

10    will continue to review them.  But I find that the facts in

11    the stipulated statement of facts have been proven beyond a

12    reasonable doubt and that they are sufficient to find

13    Mr. McHugh guilty on both Counts 4 and 5 of the superseding

14    indictment.

15         Let me just explain briefly.  As to Count 4,

16    Mr. McHugh based on the statement of facts assaulted,

17    resisted, opposed, intimidated and interfered with law

18    enforcement officers on the southern side of the west plaza

19    on the afternoon of January 6th, 2021.  He did so with the

20    use of force and used a deadly or dangerous weapon,

21    specifically that bear spray.

22         The weapon did in fact inflict bodily injury on at

23    least one officer, the officer known as DK.  The officers

24    that were attacked were engaged in the performance of their

25    official duties at the time.

1          And finally, I find that Mr. McHugh did so

2    voluntarily and intentionally.  His conduct throughout the

3    afternoon, yelling at officers, encouraging others to break

4    through the police line and so forth, makes clear that he

5    intended when he did it to spray the officers.

6          I thus find Mr. McHugh guilty on Count 4.

7          Count 5 charges obstruction of an official

8    proceeding.  I find that Mr. McHugh attempted to and did

9    obstruct and impede an official proceeding.  That's

10   Congress's certification of the Electoral College vote.

11         The Facebook messages as well as statements and

12   conduct during the riot prove beyond a reasonable doubt that

13   Mr. McHugh intended to obstruct the proceeding.  For

14   example, leading up to January 6th, he wrote, "If this

15   doesn't make you want to get up and storm Congress and rip

16   people out of office, then you need to move to China."

17         On the way to the Capitol, Mr. McHugh recorded

18   himself saying, "We're storming the Capitol.  And "This is

19   our country.  We are not going to let this happen."

20         These messages, combined with Mr. McHugh's

21   admission that the facts here are sufficient to prove his

22   intent, convince the Court that this element is met.

23         Similarly, these messages and Mr. McHugh's actions

24   are sufficient to show that he acted knowingly and with

25   awareness that the probable effect of his conduct would be

1    to obstruct and impede the certification.

2           And finally, I find that Mr. McHugh acted

3    corruptly.  The D.C. Circuit has not clearly defined

4    "corruptly" as used in Section 1512(c)(2), but the facts and

5    evidence prove that Mr. McHugh so acted under practically

6    any definition of the word.

7           He used unlawful means, including attacking police

8    officers, to achieve an unlawful purpose, to force delay of

9    the vote certification.  And reference to the recent Court

10   of Appeals decision in *United States v. Fischer* is relevant

11   here, and specifically the quote at Page 7 of the Westlaw

12   version of that opinion.

13          And I quote:  "Under all those formulations,

14   corrupt intent exists at least when an obstructive action is

15   independently unlawful and assaulting law enforcement

16   officers while participating in the Capitol riot clearly

17   meets the test of independently unlawful conduct."

18          And the reference could also be made to the

19   concurring opinion of Judge Walker at Page 26, where he

20   said:  It might be enough for the Government to prove that a

21   defendant used illegal means, like assaulting police

22   officers, with the intent to procure a benefit, the

23   presidency, for another person, Donald Trump.

24          Accordingly, I find that the Government has proven

25   each element of Counts 4 and 5 beyond a reasonable doubt and

1    I find Mr. McHugh guilty on both counts.

2            Now, let me return momentarily to what we were

3    discussing earlier.  And let me make sure that I go over

4    this with you now.

5            Mr. McHugh, have you had sufficient time to

6    consult with your attorney about this case, including the

7    consultation here this morning?

8            THE DEFENDANT:  There's been significant --

9    there's been significant interference by the CTF with

10   contacting my lawyer.  But I have to say after today,

11   including today, I understand what I'm doing.  Yes.

12           THE COURT:  And you've had the opportunity,

13   including today, to discuss with your attorney the charges

14   against you and whether or not you should agree to this

15   stipulated trial?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  So as I have explained,

18   now that I have found that the Government has proven each

19   element of Counts 4 and 5 beyond a reasonable doubt and I've

20   found you guilty on both counts, a presentence investigation

21   will be conducted and a report prepared by the probation

22   office to assist me in sentencing.  You'll be interviewed by

23   the probation office, and you're required to give truthful

24   information for the report.  Your attorney may be present

25   with you if you wish.  I recommend that's generally a good

1   idea.

2          You and your attorney will be permitted to read

3   the presentence report before the sentencing hearing and

4   make any objections to errors that you believe are in the

5   report.  And then at the sentencing hearing, you and your

6   attorney will be given the opportunity to speak on your

7   behalf, including the kinds of concerns that you have

8   expressed here today.

9          Do we have any reason to defer sentencing beyond

10  the normal period of time that our probation office needs to

11  prepare the paperwork for sentencing?  Government?

12          MS. WAGNER:  No, your Honor.

13          THE COURT:  Mr. Allen?

14          MR. ALLEN:  No, your Honor, we don't.

15          THE COURT:  So we'll set a sentencing hearing.  I

16  think the earliest that we can set that sentencing hearing

17  is 90 days from now.

18          And, Mr. Bradley, when would that put us?  This is

19  April.  That's in the middle of July.

20          THE COURTROOM DEPUTY:  I got August for some

21  reason.

22          THE COURT:  That's because you can't count --

23          THE COURTROOM DEPUTY:  That's probably true.

24          THE COURT:  -- or you don't know your months.

25  Pick a day that I have something else scheduled in July.

1          THE COURTROOM DEPUTY:  My apology, your Honor,

2     first of all.

3          You have hearings on the 19th, which is a

4     Wednesday, July 19th.  You have a sentencing and motions

5     hearing that day.

6          THE COURT:  What case is the motions hearing in?

7          THE COURTROOM DEPUTY:  *White*.

8          THE COURT:  When is the -- the Government wants to

9     say something?

10          MS. WAGNER:  I apologize, your Honor.

11          We've been talking a little bit about schedules

12     internally.  If it is possible to set sentencing the week of

13     August 14th.  I know this is late, but on the week of

14     September 1st through the 10th, if there's a date within

15     that week of August 14th or September 1st through the 10th.

16          THE COURT:  My guess is Mr. McHugh is looking for

17     a sentencing date on the earlier rather than the later end.

18     Is that correct, Mr. Allen?

19          MR. ALLEN:  Yes, your Honor.

20          THE COURT:  And I assume that's correct,

21     Mr. McHugh?  Is that true?

22          THE DEFENDANT:  Your Honor, if that works for the

23     Government, that works for me.

24          THE COURT:  Well, that's very accommodating of

25     you.

```
 1                 Do I have a trial in that first period in
 2      September?
 3                 THE COURTROOM DEPUTY:  Let's see here.
 4                 You have Ms. White on the 18th, but nothing the
 5      first two weeks.
 6                 THE COURT:  When is the 1st of September?  What
 7      day of the week?
 8                 THE COURTROOM DEPUTY:  September 1st is on a
 9      Friday.
10                 THE COURT:  So we'd have to do -- what's the
11      following Wednesday?
12                 THE COURTROOM DEPUTY:  September 6th, but you have
13      two hearings on that day.
14                 THE COURT:  How about the 7th?
15                 THE COURTROOM DEPUTY:  You have no hearings.
16                 THE COURT:  Let's do it September 7th, then.
17                 MS. WAGNER:  Yes.
18                 THE COURT:  Mr. Allen, will that work for you?
19                 MR. ALLEN:  (No audible response.)
20                 THE COURT:  You were muted, but I think that was a
21      yes.  I'm looking right now at my calendar, if I could have
22      just a moment.
23                 MS. WAGNER:  Certainly.
24                 MR. ALLEN:  September 7th.  Correct?
25                 THE COURT:  Yes.
```

1          MR. ALLEN:  Okay.  And the Government also

2    mentioned the possibility of the week of August 14th.

3          THE COURT:  I don't think that week is available

4    for me.

5          MR. ALLEN:  Okay.  I understand.  Give me just a

6    moment, your Honor, and I'll check my calendar.

7          Yes, your Honor.  September 7th will work.

8          THE COURT:  It's an in-person proceeding.

9    Mr. McHugh will be here in the courtroom.  You will be here

10   in the courtroom, Mr. Allen, as well as the Government.

11         And, Mr. Allen, I am urging you to make time

12   available to discuss the matters with Mr. McHugh before we

13   have the sentencing hearing.  He may have some views on

14   things that should be said on his behalf, and I want to make

15   sure that he has proper advice and coordination with

16   counsel.  And so please ensure that that happens, and then

17   we'll have the sentencing hearing at 11:00 a.m. on September

18   7th.

19         And at that 11:00 a.m. time, we'll also perhaps

20   provide the opportunity if you can't talk to him before -- I

21   don't want to put this on the marshals, but sometimes we can

22   make some time before the hearing starts for you to have a

23   conversation with your client.  But that has to take place

24   in the cell block and it has to be coordinated in advance

25   with the marshals.  So don't just count on it without proper

1    coordination.

2              Mr. McHugh will be brought here in all likelihood

3    early in the morning, but you need to make sure that you

4    give him the time that he needs prior to that sentencing,

5    whether it be that morning or more likely in the time before

6    that date.  But that's sentencing on September 7th at 11:00

7    a.m.  I will need the sentencing memos from each side.  We

8    said the 1st was a Friday.  Let's make it by August 31st.

9    So August 31st for the memos.

10             And with that, I think we're done.  There's no

11   request to change Mr. McHugh's status pending sentencing.

12   Is that correct from the Government?

13             MS. WAGNER:  Yes, your Honor.  No change.

14             THE COURT:  And, Mr. Allen, no request, given the

15   finding of guilt on Counts 4 and 5?

16             MR. ALLEN:  No, your Honor.

17             THE COURT:  All right.  So we'll proceed with

18   sentencing on September 7th at 11:00 a.m.

19             Just to make sure for the record that the

20   Government's offer of the stipulated facts as evidence,

21   which was not objected to by the defense, that exhibit, the

22   stipulated facts, is admitted; and we'll call it the first

23   and only exhibit at trial, but it incorporates many other

24   exhibits as listed in the statement of facts.

25             (Whereupon, Government's Exhibit No. 1 was entered

1     into evidence.)

2               THE COURT:  With that, anything further from the

3     defense, Mr. Allen?

4               THE DEFENDANT:  I would just like to --

5               MR. ALLEN:  No, your Honor.

6               THE DEFENDANT:  -- clarify that the exhibits are

7     going to be public record.  Correct?

8               THE COURT:  Yes.

9               THE DEFENDANT:  Thank you.

10              THE COURT:  Anything else, Mr. Allen?  I'm sorry.

11    Mr. McHugh was speaking, so I didn't hear you.

12              MR. ALLEN:  Nothing further, your Honor.  Thank

13    you.

14              THE COURT:  Anything further from the Government?

15              MS. WAGNER:  No, your Honor.  Thank you.

16              THE COURT:  That completes this proceeding.  We'll

17    see you on September 7th.

18              I will note before we leave that I believe

19    Mr. McHugh has some family members or friends who are here

20    today.  And I welcome them.  I think your continued support

21    for Mr. McHugh is important, as it's been throughout this

22    more than two years now.  And you are of course not only

23    welcome, but you are appreciated in terms of these

24    proceedings.

25              Thank you all.

1            THE DEFENDANT:  Thank you.

2            MS. WAGNER:  Thank you, your Honor.

3            (Proceedings concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          __CERTIFICATE__

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                   Dated this 29th day of April, 2023.

11

12            /s/ Lisa Edwards, RDR, CRR
              Official Court Reporter
13            United States District Court for the
                District of Columbia
14            333 Constitution Avenue, Northwest
              Washington, D.C. 20001
15            (202) 354-3269

16

17

18

19

20

21

22

23

24

25