UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 21-CR-453 (JDB) |
| | ) |
| SEAN MICHAEL MCHUGH, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

**COMES NOW** Defendant, Sean McHugh (Mr. McHugh), by and through his attorney of record, and for his Sentencing Memorandum states as follows:

  I.  **Introduction**

Mr. McHugh was one of participants in the protest that occurred on January 6, 2021. This protest has been cast in the light of a riot and insurrection, a threat to democracy and other such terms. To speak of those events in this manner particularly when discussing an individual defendant is unjust and misleading. Mr. McHugh is not a rioter nor is he an insurrectionist. He is an American citizen who, like any of us could, found himself caught up in the emotion of the events of a day which began lawfully and peacefully, then dominoed into the situation in which he finds himself now. Mr. McHugh has maintained and continues to maintain that his actions for which he stands before this Court were not planned, nor did he engage in the January 6 protest with any ill intent or malice.

*United States v. McHugh,* Case No. 21-CR-453
<u>DEFENDANT'S SENTENCING MEMORANDUM</u>
2

## II. Facts and Background

The facts of this case are simple. Mr. McHugh traveled to Washington D.C. to protest what he believed to be an unlawful and corrupt election result. He did so fully within his rights under the First Amendment of the Constitution to petition for a redress of grievances and under the lawfully obtained permits for the protests which had been previously acquired[1]. Mr. McHugh participated in the protest, moving with the crowd, which became more and more agitated. Mr. McHugh, in an unfortunate cascade of events, found himself echoing the agitation of the crowd, expressing the growing sentiments directly to the police officers who were present to keep order. These sentiments did not come from a place of reason or from a clear and calculating mental state. Rather they were the product of that phenomenon commonly referred to as mob mentality.

Mr. McHugh then found himself swept with the crowd that had breached the barriers. It is again important to note that Mr. McHugh himself did not participate in the destruction of the barriers, merely followed the crowd once the deed was done. While there is stipulated evidence to the fact that Mr. McHugh tugged on a portion of one of the many barriers, it must be clear to this Court that this was not at the time of the breach that saw the crowd enter the West Plaza, nor did Mr. McHugh actually pull said barrier down.

It was in the area of the West Plaza that Mr. McHugh, in a culmination of the effects of the emotional frenzy of the crowd and the sleep deprivation that he had undergone as he traveled to be present in D.C., which at that time of 1:00 PM, found Mr. McHugh awake for nearly 48 hours, caused an exceedingly poor exercise of judgment when Mr. McHugh deployed a cannister

---

[1] The Metro PD released their report detailing the various demonstrations and protests which they had prepared for, listing these protests as being permitted events.
https://drive.google.com/file/d/1H3mHiUZCz9jyfDFTTpYw7VuYCgMtuLWW/view

of chemical irritant. Mr. McHugh has maintained and continues to maintain that such deployment was a reaction to the riot tactics being employed by law enforcement which resulted in Mr. McHugh seeing his mother get hit with projectiles. Mr. McHugh avers that his deployment of the chemical irritant was a spontaneous reaction and not a reasoned action. He had no intent to harm law enforcement or anyone else, and as can be seen from the evidence stipulated to at trial, Mr. McHugh is so far away from where the police line was that the officer who was affected was more a fluke of the wind conditions than from any accuracy or directed intent by Mr. McHugh. This is consistent with the substance of Mr. McHugh's interview as set forth in the Pre-Sentencing Report submitted to this Court (ECF 109 at 37-38). Within minutes after this escalation, Mr. McHugh withdrew from the area. .

### III.     Addressing the Government's Position

In presenting his own memorandum regarding sentencing, Mr. McHugh must preemptively address certain points which the Government will no doubt raise.

The statements made by Mr. McHugh are undeniably such as would cause your average person in a reasonable mental state to raise an eyebrow. It is nigh guaranteed that the Government will make use of Mr. McHugh's statements in a manner most calculated to outrage this Court in an effort to secure the most extreme sentence. However, it has been held that,

"the First Amendment protects even offensive and inflammatory speech. First Amendment jurisprudence is, of course, replete with cases in which speech even more offensive than that engaged in here was found protected under the First Amendment despite the effects of the speech on the listener." *Gray v. Sobin,* 2014 D.C. Super. LEXIS 1, *24.

And so, while there remains responsibility retained by Mr. McHugh in the fact of what he did say, let this Court consider the circumstances surrounding such statements and the Constitutional protections afforded to all American Citizens, even Lady Liberty's more wayward sons.

It is not denied by Mr. McHugh that his rhetoric, which he has stipulated to having uttered, was aggressive. Mr. McHugh does not seek to excuse what he said as he recognizes in retrospect the excessive nature of his comments. Mr. McHugh humbly asserts that the combination of emotional fervor and exhaustion[2] inhibited his common sense and contributed to his lack of judgment.

Secondly, the Government will no doubt argue that Mr. McHugh's assertion as to the events which led up to him deploying chemical irritant are made suspect by the fact that he possessed the cannister in the first place. Mr. McHugh, like a vast majority of his fellow protestors, went into the protest on January 6 convinced that ANTIFA would be present to incite violence. ANTIFA has an extensively documented history of countering events where supporters of Donald Trump were gathered[3]. ANTIFA also has a well-documented history of engaging in acts of physical violence[4]. Mr. McHugh carried the chemical irritant as a lawful[5] means of self-

---

[2] Mr. McHugh had been awake for over 48 hours by the time he engaged in the behaviors at issue here. This lack of sleep has been found by the CDC and the NIOSH to have similar impairment effect as intoxication. At 24 hours and greater, this impairment is similar to a BAC of 0.10%.
https://www.cdc.gov/niosh/emres/longhourstraining/impaired.html#:~:text=Being%20awake%20for%2017%20hours,drunk%20driving%20level%20of%200.08

[3] https://www.nytimes.com/article/what-antifa-trump.html
https://www.youtube.com/watch?v=X8SIVkfEO0g

[4] https://www.washingtonpost.com/news/morning-mix/wp/2017/08/28/black-clad-antifa-attack-right-wing-demonstrators-in-berkeley/
https://www.youtube.com/watch?v=fU9IWM_IbgM

[5] The carrying of pepper spray or chemical irritant is not prohibited on the Capitol Grounds, only inside the Capitol itself which Mr. McHugh did not enter. https://www.uscp.gov/visiting-capitol-hill/regulations-prohibitions/prohibited-items#:~:text=Prohibited%20Items%20in%20the%20House%20and%20Senate%20Galleries&text=device%2C%20and%20fireworks.-,Mace%20and%20pepper,Aerosol%20containers.

defense should ANTIFA have been encountered. When the aforementioned series of events led to Mr. McHugh's mother being caught in the crossfire of the riot tactics of the police, Mr. McHugh, undoubtedly exercising poor judgment, utilized the means at his disposal reactively to what he had observed his mother suffering.

The Government will undoubtedly seek to draw inference, if not make direct assertion, that Mr. McHugh was party to a larger conspiracy that resulted in the events of January 6. The failure of logic here is the question of the many and the one. Mr. McHugh does not stand here with any other co-defendants, merely himself and his actions, which he has accepted responsibility for. It is a dangerous line to assert universal culpability for the entirety of the events of January 6 and impugn the same to each individual defendant. This, by necessity, implies and invokes a grand, undefined and ambiguous conspiracy linking all January 6 Defendants. This poses an insurmountable obstacle as the Courts have, on numerous occasions defined a conspiracy as actions which lay forth a specific crime, the intent and forethought to commit said crime, and the assisting of others in the same intended crime. *See* United States v. Childress, 313 U.S. App. D.C. 133, 58 F.3d 693, 700 (1995), United States v. Ali, 870 F. Supp. 2d 10, 19 (D.D.C. 2012), United States v. Borda, 786 F. Supp. 2d 25, 42 (D.D.C. 2011), United States v. Eiland, 525 F. Supp. 2d 37, 41 (D.D.C. 2007), United States v. Thomas, 525 F. Supp. 2d 17, 22 (D.D.C. 2007), and United States v. Farrell, No. 03-311-1 (RWR), 2005 U.S. Dist. LEXIS 14021, at *12 (D.D.C. July 8, 2005).

Neither law enforcement, nor the Government can produce any evidence of this grand conspiracy as defined by the law which links all January 6 Defendants so as to make all equally

*United States v. McHugh,* Case No. 21-CR-453
**DEFENDANT'S SENTENCING MEMORANDUM**
6

culpable. Indeed, there is no evidence, charge, or direct assertion that Mr. McHugh engaged in any conspiracy, nor that he had any intent to do other than protest against what he believed at the time to be a genuine grievance. The cascade of events which occurred were not planned and did not arise from some sinister prior plot. Thus, in considering what sentence to impose which would reflect the seriousness of the offense, this Court should look no further than the details of the actual offense itself. By the same token, in considering how the sentence will promote respect for the law, any sentence at all will do so. A sentence imposes some inescapable consequence and therefore will achieve the end of imposing respect for its power.

The Government will also no doubt argue for the maximum imposition of sentence by a deviation upward from the guidelines citing to the need for general deterrence and specific deterrence when imposing sentence. The Government will also no doubt argue that this Court must give the greatest consideration to, in short, making an example out of Mr. McHugh to present a warning to potential future rioters. This argument falls somewhat flat in the face of the nigh universal conviction rate for all January 6 Defendants, regardless of their sentence. If ever there was a deterrence, the universal findings of guilt is it. If that alone is not sufficient, the vilification of all January 6 defendants in the mass media for the past two years accompanied by the stigmatization and anecdotal warning that they have become is more than sufficient to produce the desired effect. The use of a deviation upward in sentencing to make an example out of Mr. McHugh evinces images of the Romans crucifying petty thieves by the side of the public roads. Were Mr. McHugh guilty of some other, more severe and serious action, such as breaching the Capitol Building or engaging in physical combat with law enforcement, then a more drastic example might be appropriate. However, Mr. McHugh is but one of the many everyday citizens who made a regrettable decision on January 6, 2021. As has been stated again

and again, Mr. McHugh had neither design nor plan to commit any unlawful act, merely making spontaneous choices for which he has accepted responsibility. Let such Judicial vengeance as the Government will no doubt suggest be carried out on those who are found guilty and yet refuse to acknowledge their guilt or accept responsibility, not on Mr. McHugh.

Specific to this case, the Government will not doubt point to Mr. McHugh's posturing and rhetoric, as well as his use of a chemical irritant in support of their argument for a deviation upward from the maximum sentence possible. As previously stated, Mr. McHugh's regrettable lapse in judgment which resulted in his rhetoric, posturing, and reactionary deployment of a chemical irritant does not reflect his ordinary character. He is not, by nature a violent or emotional man. He was swept up in the political mania that infected the nation in 2020 and felt so strongly about his duty as a citizen to participate in the electoral process that he broke from his normal routine and traveled to Washington D.C. to participate in a protest. By the time Mr. McHugh arrived at the protest, he had been without sleep for over 48 hours and had the mental function similar to someone with a 0.10% blood alcohol content. His behavior and lack of judgment from this point can be seen to be a series of compounding external forces, not the innate character of Mr. McHugh.

### IV. Character of the Defendant

Mr. McHugh is a loving father who has gone to great lengths to be a part of his son's life. He is also a hardworking man who contributes to his community by his gainful employment. While Mr. McHugh does have a colorful past, some of which has been the subject of contention during the pendency of this case, up until he became engrossed in the political fury that swept the nation during the 2020 presidential election, he had been doing very well in setting his life on a

United States v. McHugh, Case No. 21-CR-453
**DEFENDANT'S SENTENCING MEMORANDUM**
8

constructive course for himself and his other relationships. Mr. McHugh provided for not only his significant other, her child, and his son, but also for his father and grandmother, both of whom suffer from various medical ailments and therefore relied on Mr. McHugh's financial and personal contributions, not to mention the relational bonds that exist within family.

As stated, Mr. McHugh was doing well with getting his life on track in a productive manner when he became a byproduct of the militarization of politics that has become the new norm, with even what should be impartial and balanced news outlets drawing their lines in the sand and raising the banners for one side or the other. With this in mind, it is important to note that at any other time, Mr. McHugh's involvement in something so fundamentally American as politics would have been viewed as a healthy and civic minded outlet for a responsible member of society. Removing the political party association, what is it that Mr. McHugh did?

1. He became personally invested in the fate of his country.
2. He identified his own values and found the party that best articulated those same values.
3. He engaged with others in debate.
4. He attempted to educate himself to the best of his knowledge on the facts of national importance.
5. He went to the effort of putting out money and time to attend a protest of what he believed was a travesty of justice.

It was not until January 6 itself that the zeal Mr. McHugh had cultivated was applied in a most regrettable manner. The events of January 6, 2021, aside, it is clear that Mr. McHugh did, in

spite of his criminal past, find a constructive outlet of civic mindedness to apply himself to, an outlet which, under any other circumstances would have been applauded.

### V.    Sentencing Considerations

Sentencing under 18 U.S.C. § 3553(a) carries four considerations:

1. The need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law;
2. The need for the sentence to afford adequate deterrence;
3. The need to avoid unwarranted sentencing disparities; and
4. Be sufficient, but not greater than necessary.

**The Sentences Available and the Avoidance of Disparity**

Mr. McHugh has been convicted of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon 18 USC §§ 111(a)(1) and (b) and Obstruction of an Official Proceeding and Aiding and Abetting, 18 USC §§1512(c)(2) and 2. In reviewing the Government's objections and the amended presentencing report, Mr. McHugh would make an argument for a deviation downward from the recommendation. Mr. McHugh would respectfully argue that, while this Court must consider all four corners of the considerations for sentencing, a deviation downward from the sentencing guidelines is warranted:

1. The first mitigating consideration is the fact that Mr. McHugh has been incarcerated already for 27 months, having been arrested on 05/27/2021 (ECF at 5). He has already experienced the loss of his freedom and this prior to ever having been convicted.

2. The second mitigating consideration is the familial attachments of Mr. McHugh, chief of which is Mr. McHugh's son. His son is in his mid-teens, the age at which a child needs his father in his life, arguably the most[6].

3. The third mitigating factor is the consideration of the effects of prolonged incarceration on Mr. McHugh. These are strange times, unprecedented in American history. A time of such deep divisions in the social fabric of this nation that we cannot honestly call ourselves unified any longer. The average citizen feels disenfranchised, unrepresented, and unheard by those that are supposedly elected to represent their interests. Mr. McHugh is no exception and if anything, his actions on January 6 are glaring proof of this. Should this Court exercise its sentencing power to make an example of Mr. McHugh or to crush him for his actions, what will the end result be? While it is always hoped that the effects of the judicial process will result in rehabilitation, there exists here a very real danger that it will have the opposite effect. This nation has a history of underestimating and misunderstanding ideologies. The entire Middle Eastern theater from 1990 to the present is cautionary tale of what happens when you try to defeat an ideology by force or undermine the beliefs of others you do not agree with. In this case, again while wishing to believe the best of Mr. McHugh and his own desire and commitment to put this chapter of his life behind him, this Court must consider the very real danger that exists to one who became swept up in an ideology and who, based on the severity of the sentence of

---

[6] Yogman, M.W. and Eppel, A.M., 2022. The role of fathers in child and family health. *Engaged Fatherhood for Men, Families and Gender Equality: Healthcare, Social Policy, and Work Perspectives*, pp.15-30.

Lei, Z. and Lundberg, S., 2020. Vulnerable Boys: Short-term and Long-term Gender Differences in the Impacts of Adolescent Disadvantage. *Journal of economic behavior & organization*, *178*, pp.424-448.

East, L., Hutchinson, M., Power, T. and Jackson, D., 2020. "Being a father": constructions of fatherhood by men with absent fathers. *Journal of Family Studies*, *26*(3), pp.477-487.

this Court, could easily fall back into those patterns of thought when faced with a prolonged period of incarceration, separated from his loved ones, watching as life passes him by.

These mitigating considerations aside, Counsel for the Defendant, like officer Willett, was unable to locate any cases which carried the same balance of factors whereby to seek guidance for the avoidance of sentencing disparities. However, there are cases which have convictions for both §1512 and §111 and these are suggestive for this Court's consideration:

1:21-CR-00075-RDM: 33 months' incarceration, 24 months' supervised release
1:21-CR-00567-RCL: 41 months' incarceration, 36 months' supervised release
1:21-CR-00088-DLF: 63 months' incarceration, 36 months' supervised release
1:21-CR-00040-TNM: 32 months' incarceration, 24 month's supervised release
1:21-CR-00120-RCL: 41 months' incarceration, 36 months' supervised release
1:21-CR-00345-RCL: 51 months' incarceration, 36 months' supervised release

### VI. Fines and Restitution

While 18 USC § 3571(b)(3) provides that the maximum fine for each count is $250,000 with a mandatory fine of $100 for each count pursuant to 18 USC § 3013 in addition to the consideration of the fines that can be imposed under USSG §5E1.2(c)(3), the Court should take into consideration the economic situation of Mr. McHugh, the fact that incarceration prevents and will prevent him from gainful employment, and those upon whom the burden of such fines would fall, namely his family who are not part or party to the offenses for which Mr. McHugh stands before this Court. The same is true of the restitution amount in this case pursuant to 18 USC § 3663(a)(3). Therefore, Mr. McHugh would seek a ruling of this Court ordering the lowest possible fine(s) and restitution based on the foregoing considerations.

**VII.    Conclusion**

Mr. McHugh has accepted responsibility for his actions on January 6 and regrets the lapses in judgment he exhibited. He now asks this Court to consider his time served, his son who he has not seen for over two years, his loving life partner who has been his constant support, and the rest of his family who all love him and have felt his absence deeply. Mr. McHugh does not dispute that some sentence must be imposed, he acknowledges his wrongdoing. However, the power of the Court is not only in its ability to pass judgment, but also to balance that judgment with mercy. This Court has the opportunity to demonstrate that while the events of January 6 were unacceptable, these so-called January 6 defendants are not the enemy. They are our fellow citizens, neighbors, and friends. That ideology has so torn us apart is not the fault of Mr. McHugh, no that blame lies elsewhere. In this case, a sentence of 24 months' incarceration and 36 month's supervised release with a combined total for fines and restitution in the amount of $2,500.00 will be sufficient, but not greater than is necessary to address the actions of Mr. McHugh and should permit him to rejoin society in time for his son's high school graduation.

Respectfully submitted,

/s/ Gall

_____
Joseph W. Allen, MO BAR #57669
1015 W. State Hwy. 248 Ste. I
Branson, MO 65616
Telephone:  417/334-6818
Facsimile:  417/612-7081
joe@mybransonattorney.com
**Attorney for Defendant**

*United States v. McHugh,* Case No. 21-CR-453
**DEFENDANT'S SENTENCING MEMORANDUM**
13

# CERTIFICATE OF SERVICE

    I hereby certify that on the 31st day of August 2023, I filed the foregoing Sentencing Memorandum by the Court's CM/ECF system. All case registered parties will be served by CM/ECF.

_____
Joseph W. Allen